SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
RICHARD J. SIMMONS, Cal. Bar No. 72666
rsimmons@sheppardmullin.com
JASON W. KEARNAGHAN, Cal. Bar No. 207707
jkearnaghan@sheppardmullin.com
BRYANNE J. LEWIS, Cal Bar No. 311763
blewis@sheppardmullin.com
IAN A. MICHALAK, Cal. Bar No. 335425
imichalak@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213-620-1780
Facsimile: 213-620-1398

MELANIE M. HAMILTON, Cal. Bar No. 268037
mhamilton@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

Attorneys for Defendants
HCA HEALTHCARE, INC., HEALTHTRUST WORKFORCE SOLUTIONS, LLC, and LOS ROBLES REGIONAL MEDICAL CENTER

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

JACQUI RUM, on behalf of herself and all others similarly situated

PLAINTIFF,

v.

HCA HEALTHCARE, INC., a Delaware Corporation; HEALTHTRUST WORKFORCE SOLUTIONS, LLC, a Tennessee Limited Liability Company; LOS ROBLES REGIONAL MEDICAL CENTER, a California Corporation; and DOES 1 through 100, inclusive

DEFENDANTS.

Case No. 2:23-cv-05142-JFW-BFM
Hon. John F. Walter, Courtroom 7A

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

[*Filed concurrently with Declarations of Davita Carpenter, Dorita Sondereker, and Ian A. Michalak; Request for Judicial Notice; Objections to Evidence; and [Proposed] Order re Objections to Evidence*]

Date: October 16, 2023
Place: Courtroom 7A
Time: 1:30 p.m.

Complaint Filed; April 19, 2023
FAC Filed: May 10, 2023
Trial Date: October 29, 2024

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 2
  A. The Defendants ..... 2
  B. Plaintiff Jacqui Rum ..... 3
  C. The StaRN Program ..... 4
  D. Relevant Procedural History ..... 7
  E. Meet And Confer Efforts For This Motion ..... 7
III. ARGUMENT ..... 8
  A. The Applicable Legal Standard ..... 8
  B. Plaintiff Does Not Have Standing To Seek This Preliminary Injunction ..... 10
    1. Plaintiff Has Not Suffered An Injury ..... 10
    2. Plaintiff's "Unsettled Feelings" Are Insufficient To Establish Injury ..... 11
    3. As A Former Employee, Plaintiff Does Not Have Standing ..... 11
  C. Plaintiff Is Unlikely To Succeed On The Merits ..... 12
    1. Plaintiff Has No Viable Claim Because She Has Not Incurred A Necessary Business Expense ..... 12
    2. The StaRN Repayment Agreements Do Not Violate Labor Code Section 2802.1 ..... 13
    3. Plaintiff Has Not Met Her High Burden Of Establishing That A Notice Should Be Sent To The Proposed TRAP Debt Class ..... 16
    4. Plaintiff's Proposed Injunction Is Overbroad Because No Class Has Been Certified And Individual Issues Predominate ..... 17
  D. Plaintiff Has Not Established Irreparable Harm Will Result ..... 19
    1. Preliminary Injunctions Are Disfavored In Cases Where Monetary Remedies Are Available ..... 19

2. Plaintiff's Allegations Of Irreparable Harm Are Purely Speculative .......... 19

3. Irreparable Harm Cannot Be Established Because Plaintiff's Motion Is Moot .......... 20

4. Plaintiff Is Required To Prove Irreparable Harm .......... 21

E. The Balance Of Equities Favor Denying The Preliminary Injunction .......... 22

F. A Preliminary Injunction Is Not In The Public's Interest In This Case .......... 23

G. A Bond Should Be Required .......... 23

IV. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*Adoma v. Univ. of Phx., Inc.*
2010 U.S. Dist. LEXIS 114503 (E.D. Cal. Oct. 14, 2010) ................................ 22

*American Passage Media Corporation v. Cass Commc'ns , Inc.*
750 F.2d 1470 (9th Cir. 1985) ................................ 18, 20, 23

*Bayer v. Neiman Marcus Grp.*
861 F.3d 853 (9th Cir. 2017) ................................ 20

*Brown v. Electrolux Home Prods.*
817 F.3d 1225 (11th Cir. 2016) ................................ 17

*Butler v. WinCo Foods, LLC*
613 F. App'x 584 (9th Cir. 2015) ................................ 21

*Calmar, Inc. v. Emson Research*
838 F. Supp. 453 (C.D. Cal. 1993) ................................ 22

*Caribbean Marine Services Co., Inc. v. Baldrige*
844 F.2d 668 (9th Cir. 1988) ................................ 19

*Comcast Corp. v. Behrend*
569 U.S. 27 (2013) ................................ 17

*Ctr. for Biological Diversity v. Mattis*
868 F.3d 803 (9th Cir. 2017) ................................ 10

*Deakins v. Monaghan*
484 U.S. 193 (1988) ................................ 10

*Dotster, Inc. v. Internet Corp.*
296 F. Supp. 2d 1159 (C.D. Cal. 2003) ................................ 11, 23

*Dreamer Enters. V. Hankook Trading, Inc.*
No. CV 14-4704-JFW (Ex), 2014 U.S. Dist. LEXIS 194690 (C.D. Cal. Aug. 20, 2014) ................................ 19

*Garcia v. Google, Inc.*
786 F.3d 733 (9th Cir. 2015) ................................ 9, 16

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*
334 F.R.D. 234 (E.D. Cal. 2019) .......... 11

*Idaho v. Coeur D'Alene Tribe*
794 F.3d 1039 (9th Cir. 2015) .......... 19

*J.L. v. Cissna*
341 F. Supp. 3d 1048 (N.D. Cal. 2018) .......... 17

*Kutzman v. Derrel's Mini Storage, Inc.*
354 F. Supp. 3d 1149 .......... 22

*Los Angeles Memorial Coliseum Commission v. National Football League*
634 F.2d 1197 (9th Cir. 1980) .......... 19

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) .......... 10

*Mazurek v. Armstrong*
520 U.S. 968 (1997) .......... 9

*Munaf v. Geren*
553 U.S. 674 (2008) .......... 9

*Nak Kim Chhoeun v. Marin*
306 F. Supp. 3d 1147 (C.D. Cal. 2018) .......... 17

*O'Connor v. Uber Techs., Inc.*
2013 U.S. Dist. LEXIS 172477 (N.D. Cal 2013) .......... 23

*Sammartano v. First Judicial Court, IN*
303 F.3d 959 (9th Cir. 2002) .......... 23

*Sampson v. Murray*
415 U.S. 61 (1974) .......... 19

*In re School Asbestos Litigation*
842 F.2d 671 (3rd Cir. 1988) .......... 16

*Spencer v. Kemna*
523 U.S. 1 (1998) .......... 10

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) .......... 10

*Sprint Nextel Corp. v. Ezcom, Inc.*
No. CV 12-00222-JFW, 2012 U.S. Dist. LEXIS 195897 (C.D. Cal. Feb. 13, 2012) .......... 20

*Stromberg v. Qualcomm Inc.*
14 F.4th 1059 (9th Cir. 2021) .......... 17

*Stuart v. Radioshack Corporation*
641 F.Supp.2d 901 (1999) .......... 13

*Sullivan v. Vallejo City Unified Sch. Dist.*
731 F. Supp. 947 (E.D. Cal. 1990) .......... 9, 22

*Summers v. Earth Island Inst.*
555 U.S. 488 (2009) .......... 10

*Talavera v. Leprino Foods Co.*
2016 U.S. Dist. LEXIS 29633 (E.D. Cal. Mar. 8, 2016) .......... 22

*Towery v. Brewer*
672 F.3d 650 (9th Cir. 2012) .......... 9

*Trailer Train Co. v. State Bd. of Equalization*
697 F.2d 860 (9th Cir. 1983) .......... 21

*United States v. White*
893 F. Supp. 1423 (C.D. Cal. 1995) .......... 21

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) .......... 12, 17

*Wang v. Chinese Daily News, Inc.*
623 F.3d 743 (9th Cir. 2010) *cert. granted, judgment vacated on other grounds*, 565 U.S. 801 (2011) .......... 16

*Winter v. Natural Res. Def. Council, Inc.*
555 U.S. 7 (2008) .......... 9

<u>State Cases</u>

*In re Acknowledgment Cases*
239 Cal. App. 4th 1498 (2015) .......... 14, 15

*Cassady v. Morgan, Lewis & Bockius LLP*
145 Cal. App. 4th 220 (2006) .......... 13

*Gallano v. Burlington Coat Factory of Cal., LLC*
67 Cal. App. 5th 953 (2021) .......... 13

*Thai v. Int'l Bus. Machs. Corp.*
93 Cal. App. 5th 364 (2023) .......... 12, 13

<u>Federal: Statutes, Rules, Regulations, Constitutional Provisions</u>

Fair Labor Standards Act .......... 7

Federal Rules of Civil Procedure
Rule 11 .......... 8
Rule 23 .......... 12, 17
Rule 23(a) .......... 17
Rule 23(b) .......... 17
Rule 65 .......... 8, 9, 22
Rule 65(b) .......... 8
Rule 65(c) .......... 23

Local Rule
Rule 7-3 .......... 7, 8

United States Constitution
Article III, § 2 .......... 10

<u>State: Statutes, Rules, Regulations, Constitutional Provisions</u>

16 C.C.R.
§ 1414(c) .......... 14
§ 1451 .......... 14

22 C.C.R.
§ 100259(e)(5)(B) .......... 14

California Business and Professions Code
§ 17200 .......... 7

Labor Code
§ 2802 ........................................................ passim
§ 2802(a) ........................................................ 12
§ 2802.1 ........................................................ 2, 9, 12
§ 2802.1(a)(2)(A) ........................................................ 13
§ 2802.1(d) ........................................................ 7, 9

# I. INTRODUCTION

Plaintiff Jacqui Rum seeks to enjoin Defendants from pursuing StaRN Program repayments and affirmative injunctive relief requiring notice to former StaRN Program participants that Defendants will not seek repayment during the pendency of this litigation. Her Motion should be denied in its entirety because Defendants have provided nearly all of the relief she seeks and she fails to meet her high burden of proving: (1) likely success on the merits; and (2) that irreparable harm will result without the requested injunction. Denial is also necessary because Plaintiff lacks standing to bring this Motion as she is no longer employed by Los Robles Regional Medical Center ("Los Robles"), has submitted no evidence that she paid or repaid any cost associated with the StaRN Program, and has not "incurred" a "necessary expenditure or loss" as required by Labor Code section 2802.

In addition, Plaintiff's failure to pay or repay any costs she claims to owe also precludes her from establishing the element of immediacy needed to obtain an injunction, particularly when: (1) as of April 2023, Defendants directed that all repayment recovery efforts related to the StaRN Program cease and Defendants will not make any such efforts; (2) Defendants no longer request a two-year commitment; (3) Defendants no longer send repayment letters (or direct third parties to do so); (4) Defendants will not assign any debt; and (5) Defendants will not accrue any interest or penalties related to the StaRN Program costs. Given the Defendants' actions, Plaintiff has already achieved virtually all of the relief she seeks. There is no conduct for the Court enjoin and no notice to provide. Plaintiff's Motion is moot.

Independently, and under the high burden of proof, Plaintiff is unlikely to succeed on the merits of her Labor Code section 2802 claim because the StaRN Program advances licensure (via state-mandated certification credit) for nurses and

Plaintiff has failed to establish that it is an "employer-required" reimbursement under Labor Code section 2802.1. In addition, the Motion is overbroad in that it seeks a preliminary injunction on behalf of the entire proposed TRAP Debt Class that will likely not be certified. Indeed, individualized inquiries predominate and Plaintiff cannot prove either that her claims are typical, the proposed class is ascertainable, that she is an adequate class representative, or that commonality exists, especially since she has not paid, repaid, or "incurred" any necessary expenditure.

Finally, neither Plaintiff nor the proposed class will suffer irreparable injury without an injunction. Notably, Section 2802 does not create a claim for lost "wages" and the remedy for Plaintiff's claims is purely monetary. Thus, Plaintiff and the proposed class have an adequate remedy at law. Moreover, Plaintiff has failed to submit evidence of any irreparable injury, relying instead on the fatally vague and unsupported claim that she feels "unsettled" about receiving collection letters that ceased as of March 2023. Feeling "unsettled" without making any expenditure or payment and without monetary injury is entirely insufficient to meet Plaintiff's burden of showing irreparable harm.

As set forth herein, Plaintiff's Motion should be denied in its entirety.[1]

## II. STATEMENT OF FACTS

### A. The Defendants

Los Robles is an acute care facility located in Thousand Oaks. Declaration of Davita Carpenter ("Carpenter Decl."), ¶ 3. It is a Level II Trauma Center, STEMI-designated heart attack center, and certified Primary Stroke Center. Id.

---

[1] Plaintiff originally noticed her Motion for a hearing on September 25, 2023. [Dkt. 26.] On September 1, 2023, the Court granted the Parties Stipulation to continue the hearing, and related briefing deadlines, to October 16, 2023. [Dkt. 31.]

HealthTrust Workforce Solutions, LLC ("HealthTrust") is an indirect subsidiary of HCA Healthcare, Inc. Id., at ¶ 4. HealthTrust manages the curriculum for the StaRN Program. Declaration of Dorita Sondereker ("Sondereker Decl."), ¶ 2. Until approximately January 2023, HealthTrust assisted with the onboarding of StaRN participants. Id. Since January 2023, individual facilities onboard new StaRN participants directly. Id.; Carpenter Decl., ¶ 4.

HCA Healthcare, Inc. is the indirect parent of Los Robles and HealthTrust. Carpenter Decl., ¶ 5. HCA Healthcare, Inc. has never employed any individual in Plaintiff's proposed TRAP Debt Class. Id.

## B. Plaintiff Jacqui Rum

On August 30, 2021, Plaintiff was hired as a registered nurse ("RN") in the StaRN training program and assigned to work via HealthTrust at the Los Robles facility. Carpenter Decl., ¶ 6. On approximately October 3, 2021, Plaintiff transitioned to a Los Robles employee. Id. Plaintiff did not submit an application for an RN position outside of the StaRN program. Id.

As part of the StaRN Program, Plaintiff agreed to remain at her assigned facility (Los Robles) for two years (the "StaRN Agreement"). Rum Decl., Ex. I-2 [Dkt. 26-11.] In the StaRN Agreement, Plaintiff further agreed to repay the training costs associated with the StaRN Program, including the costs of tuition, books, and supplies, a prorated amount of up to $4,000 if she did not complete the two-year commitment (24-month term). Id. The StaRN Agreement specified that the amount of any repayment due for an incomplete term would be reduced on a pro rata basis for the portion of commitment completed. Id. Plaintiff also signed a Promissory Note agreeing to such repayment terms. Rum Decl., Ex. I-3 [Dkt. 26-12.]

On October 1, 2022, Plaintiff separated from Los Robles. Carpenter Decl., ¶ 7. At that point, Plaintiff had completed approximately one year of her two-year

commitment. Id. Therefore, pursuant to Plaintiff's StaRN Agreement and Promissory Note, Plaintiff agreed to repay $2,000 for the costs incurred for her training. Id. Plaintiff was thereafter sent letters from third party collection agency Benefit Recovery Group ("BRG") requesting repayment, until such requests ended in or about the March 2023 timeframe. Id. To date, Plaintiff has not made any payments or "incurred" any expenditures and the recovery efforts have ceased. Id.

Even though it is undisputed that she has not paid any sum for a "necessary expenditure or loss incurred," Plaintiff's declaration claims "Because I consistently receive these charging letters from Defendants, I felt and continue to feel unsettled by the threat of legal action from Defendants and concerned about adverse effects to my credit, credit score and finances." Rum Decl., ¶ 25 [Dkt. 26-1.] Plaintiff provides no evidence supporting why she feels "concerned" about her credit or finance. Regardless, Plaintiff's "feelings" have been rendered moot as the evidence she submitted shows that she stopped receiving letters in March 2023 and was advised that, as of April 2023, all recovery efforts have ceased.[2] Rum Decl., Ex. R [Dkt. 26-21.]; [Dkt. 25, p. 6.] Plaintiff submits no evidence of changes to her credit score or "finances" as a result of BRG's efforts. Notably, no collection letter has been sent to Plaintiff since March 8, 2023, and Defendants have not initiated any litigation against her seeking repayment. Carpenter Decl., ¶ 7.

**C. The StaRN Program**

The StaRN Program is primarily designed to bridge the skills gap between

---

[2] Plaintiff admits that she is aware that the repayments have ceased citing to a news report and claiming "Defendants only ceased its 'active debt collection practices' after Plaintiff revealed Defendants unlawful TRAP contracts – i.e. the StaRN Program – to NBC News.." Motion at 18:12-14 [Dkt. 26.] Plaintiff provides no authority or explaining the relevance of Defendants' motivations (or evidence regarding same) in ending repayment. Nonetheless, this admission confirms that the Motion is moot because the practices Plaintiff seeks to enjoin have ceased, no matter Defendants' alleged motivations.

new graduates from nursing school and experienced nurses through a combination of classroom and hands-on specialty training. Sondereker Decl., ¶ 3. Each training class lasts approximately 10 to 22 weeks depending on specialty, during which StaRN instructors act as mentors and educators to newly licensed registered nurses. Id. During the program, depending on each nurse's specialty, nurses learn critical developmental skills, participate in simulation training, and earn valuable certifications. Id. The StaRN Program includes both a didactic training portion that may take place in classrooms or simulation training facilities, as well as a preceptorship that involves on-site training at an HCA hospital. Id. Graduates from nursing school often do not have extensive on-the-job experience, and the StaRN Program offers new RNs the opportunity to obtain continuing education credit that satisfies licensure requirements through coursework and working closely with an experienced RN (the "preceptorship").[3] Id.

Many StaRN participants are not fully licensed registered nurses upon their hire and RNs must satisfy continuing education requirements. Sondereker Decl., ¶ 4. Some participants of the program have an interim permit which allowed them to work under the supervision of an RN while awaiting the result of their National Council Licensure Examination ("NCLEX").[4] Id. Through the StaRN Program, participants can receive certifications such as Advanced Life Support ("ALS") training, and other training, that can count towards the California Board of

---

[3] Los Robles has hired RNs with less than one year of experience outside of the StaRN Program in instances where RNs have completed StaRN-equivalent training at another (unrelated) facility. Carpenter Decl., ¶ 8.

[4] Plaintiff argues "the employee must first be legally licensed to practice as an RN in California before participating in Defendants' employer based training." Mot. at 13:9-10 [Dkt. 26.] This is incorrect. Los Robles' StaRN Program regularly accepts individuals into the program who have an interim permit before they attain full licensure. Carpenter Decl., ¶ 8. Further, California law requires all RNs to satisfy continuing education rules to retain their licensure.

Registered Nursing (the "Board") continuing education requirements. Id. Depending on the specialty in which they enrolled, StaRN participants can also receive specialty certifications such as Pediatric Advanced Life Support ("PALS") and Certified Emergency Nurse certifications, that likewise can be used for continuing education credit. Id.

The first 6-8 weeks of the StaRN Program (the "didactic" portion) involve classroom training with simulations that mimic medical situations that are generally applicable and not limited to a specific facility. Sondereker Decl., ¶ 5. This training either occurs in simulation centers owned and paid for by HCA Healthcare, Inc. or in hotels or other spaces that require rental costs. Id. The simulation trainings also include other costs such as mannequins and medical supplies. Id. The StaRN participants are also provided hard copy books and an online course curriculum, along with a set of other program materials. Id. The Repayment Agreement and Promissory Note are designed, in part, to recover a portion of these costs if a nurse does not complete their commitment. Id.

StaRN participants then generally precept in their assigned unit for the remainder of the program. Id., at ¶ 6. The units vary from facility to facility, but may include MedSurge, Telemetry, Critical Care, Behavioral Health, Emergency Department, Perioperative, Mom & Baby, Labor & Delivery, PICU, and NICU, among others. Id. The job responsibilities of StaRN participants also vary based on their specific preceptor and unit. Id.

The StaRN offer letters, agreements, and promissory notes were varied for StaRN participants from April 19, 2019 to the present. Carpenter Decl., ¶ 9. For example, earlier this year, the two-year commitment and repayment obligations were removed from the StaRN onboarding documents. Id. Further, the amounts owed by StaRN participants, if any, varied for each individual based on the facts and circumstances of their respective term. Id. And important, as of April 2023,

Defendants directed that all collection efforts related to the StaRN Program be discontinued. Id.

**D. Relevant Procedural History**

On April 19, 2023, Plaintiff filed her complaint in Ventura County Superior Court, alleging proposed class claims for: (1) failure to indemnify business expenses under Labor Code section 2802; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to pay all wages due upon separation from employment; (5) failure to provide accurate itemized wage statements; and (6) violation of California Business and Professions Code section 17200 ("Unfair Competition"). [Dkt. 1-1.] On May 10, 2023, Plaintiff filed an amended complaint adding a proposed collective action claim under the Fair Labor Standards Act ("FLSA"). [Dkt. 1-4.] Defendants answered the First Amended Complaint on June 27, 2023. [Dkt. 1-5.] On June 28, 2023, Defendants removed the matter to this Court. [Dkt. 1.]

Plaintiff's Labor Code section 2802 claim is based on the allegations that the StaRN "repayments" constitute business expenses. [See Dkt. 1-4, ¶ 56.] Plaintiff does not dispute that she never paid or repaid any amount under the StaRN Program and never "incurred" any actual cost for a "necessary expenditure." Furthermore, Section 2802 does not create a cause of action to recover "wages." It only permits recovery of expenditures previously "incurred." Plaintiff asserts injunctive relief in her Motion based solely on a Labor Code section 2802/2802.1(d) claim. Mot. at 3:4-6 [Dkt. 26.]

**E. Meet And Confer Efforts For This Motion**

The Parties met and conferred regarding Plaintiff's Motion via videoconference on August 2, August 3, and August 14, 2023. [Dkt. 25.] The Parties filed their Local Rule 7-3 Joint Report on August 17, 2023. Id.

Defendants have unequivocally denied the veracity of Plaintiff's Section 2802 claim, and the factual allegations in support thereof, in both their Answer through a general denial and in two specific affirmative defenses. [Dkt. 1-5.] The Parties' Rule 26 Joint Report also indicates Defendants' denial that Plaintiff or the putative class are entitled to reimbursement of business expenditures and the factual allegations in support thereof. [Dkt. 19.]

In an effort to improperly bolster the deficiencies in the injunctive relief request, and ignoring the above-referenced denials, Plaintiff asserts that unverified factual allegations not specifically disputed in the Local Rule 7-3 Joint Report are deemed admitted under Federal Rule of Civil Procedure 11. See Mot. at 12:28-13:2; 14:14-17 [Dkt. 26.] Rule 11 has no bearing whatsoever on Local Rule 7-3 reports. Rule 11 simply regulates representations made by counsel to the Court. Further, Plaintiff provides no authority that the details of all issues must be discussed in the Joint Report. Otherwise, the joint report would itself serve as the motion.[5] Further, Plaintiff's argument regarding an implied admission is disingenuous, as Plaintiff did not discuss her request for injunction Numbers 3 and 5 in the Local Rule 7-3 Joint Report (transferring, selling, or assigning the StaRN debt, nor does it discuss accrual of interest and penalties on the StaRN debt), amongst other various cited authorities she failed to mention. [See Dkt. 25, p. 2:23-3:3.]

## III. ARGUMENT

### A. The Applicable Legal Standard

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction only to prevent "immediate and irreparable injury." Fed. R.

[5] The Court's Standing Order only requires the Rule 7-3 report to include the "issues discussed and resolved during the conference and the issues remaining." [Dkt. 11, p. 9:21-22.]

Civ. P. 65(b).[6] The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Because a "preliminary injunction is an 'extraordinary and drastic remedy,'" Munaf v. Geren, 553 U.S. 674, 689 (2008), the party seeking the injunction must present evidence sufficient to clearly carry his burden of persuasion on each requirement. Towery v. Brewer, 672 F.3d 650, 657 (9th Cir. 2012) (citations omitted); see also Winter, 555 U.S. at 22 (explaining that a preliminary injunction can issue only on "a clear showing that the plaintiff is entitled to such relief"); Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

Accordingly, Plaintiff is incorrect in claiming she merely needs to "establish evidence demonstrating a reasonable cause to believe that Labor Code §§ 2802 and 2802.1 have been violated or about to be violated" or that she can meet her burden by a "preponderance of the evidence." Motion at 1:18-20; 17:5 [Dkt. 26.] Plaintiff must present a clear showing that she can obtain the relief requested.

Plaintiff faces an even higher burden of proof regarding requested relief Number 6 because she seeks a "mandatory" injunction that would require *affirmative* conduct by Defendants to send a notice to the proposed TRAP Debt Class. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) ("Because [plaintiff] seeks a mandatory injunction, she must establish that the law and facts

---

[6] Plaintiff asserts that "Labor Code §2802.1(d) expressly provides for injunctive relief which eliminates the irreparable harm standard," but that is nonsensical because state law cannot abrogate Federal Rule of Civil Procedure 65 for preliminary injunctions. Sullivan v. Vallejo City Unified Sch. Dist., 731 F. Supp. 947, 957 (E.D. Cal. 1990) ("it appears to this court that federal law provides the standards governing plaintiff's motion for preliminary injunctive relief with respect to both her federal and state law claims.") Therefore, the federal rules apply to Plaintiff's Motion.

*clearly favor* her position, not simply that she is likely to succeed… As we have cautioned, a mandatory injunction 'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.'" (emphasis in original). As set forth below, Plaintiff has not met this high burden.

**B. Plaintiff Does Not Have Standing To Seek This Preliminary Injunction**[7]

The "'irreducible constitutional minimum' of Article III standing consists of three elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. at 560-61; Ctr. for Biological Diversity v. Mattis, 868 F.3d 803, 816 (9th Cir. 2017). Under Article III, § 2 of the United States Constitution, federal courts are barred from hearing matters in the absence of a live case or controversy. See, e.g., Spencer v. Kemna, 523 U.S. 1, 7 (1998); Deakins v. Monaghan, 484 U.S. 193, 199 (1988).

**1. Plaintiff Has Not Suffered An Injury**

Plaintiff lacks standing because she has never in fact repaid any training costs, Defendants directed the discontinuation of collection efforts as of April 2023, and the last letter Plaintiff cites requesting repayment was sent on March 8, 2023. Rum Decl., Ex. R [Dkt. 26-21.]; Carpenter Decl., ¶¶ 7, 9. Simply stated, she has not actually "incurred" any expense or suffered an "injury in fact." See Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of

---

[7] See Section III.C.1, below that details why Plaintiff will not succeed on the merits because she does not have a viable Section 2802 claim.

the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."). In the absence of a suffered injury, Plaintiff has failed to meet her burden and there is simply no "reasonably certain basis for concluding [Plaintiff] has some personal need for prospective relief." Mot. at 17:28-18:2 [Dkt 26.]

**2. <u>Plaintiff's "Unsettled Feelings" Are Insufficient To Establish Injury</u>**

Plaintiff's declaration fails to allege that she has paid or repaid any costs. Lacking the statutory basis to prevail under Section 2802, Plaintiff merely alleges she "felt and continue[s] to feel unsettled by the threat of legal action from Defendants and concerned about the adverse effects to my credit, credit score and finances." Rum Decl., ¶ 25 [Dkt. 26-1.] Plaintiff does not submit any evidence of effects to her credit or finances, nor could she because she has not repaid any costs and Defendants did not report her StaRN debt to credit reporting agencies. Carpenter Decl., ¶ 7. Also, Defendants have not instituted litigation against Plaintiff to recover repayment. <u>Id.</u> Indeed, Plaintiff's claim she feels "unsettled," particularly following the cessation of any efforts to seek repayment, falls far short of meeting her burden. <u>See</u> <u>Dotster, Inc. v. Internet Corp.</u>, 296 F. Supp. 2d 1159, 1164 (C.D. Cal. 2003) ("Plaintiffs also argue that they will suffer irreparable injury as a result of damage to their goodwill and reputation. However, Plaintiffs' present no specific or admissible evidence as to dilution of goodwill or harm to reputation.").

**3. <u>As A Former Employee, Plaintiff Does Not Have Standing</u>**

Plaintiff is a *former* employee without a cognizable interest in a prospective change to Defendants' employment practices. <u>See</u> <u>Gomez v. J. Jacobo Farm Labor Contractor, Inc.</u>, 334 F.R.D. 234, 255 (E.D. Cal. 2019) ("This means that a former employee does not have standing to bring prospective injunctive relief against its

former employer for employment violations.") (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 364 (2011)). [Dkt. 19.] Moreover, there is no employment practice to change as repayments are no longer sought. Carpenter Decl., ¶ 7. Thus, there is nothing to achieve via the requested preliminary injunction. Further, while Plaintiff creates an artifice by claiming "Plaintiff's status as a *former* employee actually establishes her standing to seek injunctive relief," this is untrue. Plaintiff fails to establish an interest in seeking an injunction against Defendants on behalf of the entire proposed TRAP Debt Class of former employees for which she has provided no showing of ascertainability. See FRCP 23; Mot. at 17:16-17 [Dkt. 26.]

### C. Plaintiff Is Unlikely To Succeed On The Merits

#### 1. Plaintiff Has No Viable Claim Because She Has Not Incurred A Necessary Business Expense

Plaintiff alleges she is likely to prevail on the merits because the StaRN repayment agreements violate Labor Code section 2802.1, which defines the bounds of training costs that are reimbursable under Section 2802. Plaintiff is unlikely to succeed on the merits under that theory.

Indeed, Plaintiff cannot pursue a claim under Section 2802 because she has not "incurred" any expenditure or loss (*e.g.*, paying for the training costs out of pocket and then seeking reimbursement thereafter or making an actual repayment).[8] Thai v. Int'l Bus. Machs. Corp., 93 Cal. App. 5th 364, 371 (2023). "The elements of a [section 2802(a)] cause of action, as delineated by the statutory language, are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's

---

[8] Labor Code section 2802(a) requires that an "employer shall indemnify his or her employee for all **necessary expenditures or losses incurred** by the employee in direct consequence of the discharge of his or her duties. . ." (emphasis added.)

discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary. Id. (citing Gallano v. Burlington Coat Factory of Cal., LLC, 67 Cal. App. 5th 953, 960 (2021)); See also Cassady v. Morgan, Lewis & Bockius LLP, 145 Cal. App. 4th 220, 230 (2006); Stuart v. Radioshack Corporation, 641 F.Supp.2d 901, 904 (1999) ("For purposes of § 2802, before an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred an expense.").

Here, Plaintiff cannot meet the first Section 2802 element by proving she actually made expenditures or incurred losses. Indeed, Plaintiff has not paid a single penny for her StaRN costs. Carpenter Decl., ¶ 7. The California Legislature clearly utilized the past tense in Section 2802, rendering Plaintiff's Promissory Note irrelevant (a promise to incur) and a mere request for repayment insufficient. Here, any repayment obligation for Plaintiff (and any other StaRN Program participant) has ended. Carpenter Decl., ¶ 9. In the absence of an incurred expense, Plaintiff has no viable Section 2802 claim.

**2. The StaRN Repayment Agreements Do Not Violate Labor Code Section 2802.1**

Section 2802.1(a)(2)(A) makes clear that training costs are not required to be reimbursed under Section 2802 for trainings pertaining to "requirements for a license, registration, or certification necessary to legally practice in a specific employee classification to provide direct patient care." Assuming *arguendo* that Plaintiff can pursue a Section 2802 claim even though she has not incurred any expense whatsoever under the StaRN Program, Plaintiff ignores the fact that she and other StaRN participants may receive training eligible for state-required

continuing education credit (*e.g.*, ALS and other specialty training).[9] Sondereker Decl., ¶ 4. The Board requires all nurses to complete 30 hours of continuing education that ALS training satisfies. See 16 C.C.R. section 1451; Request for Judicial Notice, Ex. A. Plaintiff's submitted Emergency Department Residency Schedule indicates ALS and PALS trainings were scheduled for September 7-10, 2021. Rum Decl., Ex. H [Dkt. 26-9.] Further, the preceptorship portion of the StaRN Program for participants with interim permits allows a provisionally licensed nurse to practice under the supervision of a preceptor while they await the results of their NCLEX test, which is mandated by the Board for nurses with interim permits. See 16 C.C.R. § 1414(c). Plaintiff conveniently ignores these regulations in her brief, curiously citing to regulations regarding high school education requirements. Mot. at 13:15-20 [Dkt. 26.]

As set forth above, Plaintiff does not attempt to refute the simple fact that the StaRN Program directly enables RNs to meet state-mandated licensure requirements imposed to provide patient care. The fact that the StaRN training satisfies certain licensure rules for RNs imposed by the Board distinguishes this case from In re Acknowledgment Cases, 239 Cal. App. 4th 1498 (2015), where the court held that training costs were reimbursable when the training at issue was not required by law or qualified for licensure. The court in Acknowledgement Cases recognized the distinction between employer-mandated trainings and trainings an employee needed to be licensed in their profession:

> There is generally no requirement that an employer pay for training leading to licensure or the cost of licensure for an employee. While the license may be a requirement of the employment, it is not the type of

---

[9] Los Robles is a Level II Trauma Center. Carpenter Decl., ¶ 2. Trauma center designations are determined by regulation and include evaluation of the continuing education in trauma care for registered nurses. See 22 C.C.R. 100259(e)(5)(B).

> cost encompassed by Labor Code [section] 2802. The most important aspect of licensure is that it is required by the state or locality as a result of public policy. It is the employee who must be licensed and unless there is a specific statute which requires the employer to assume part of the cost, the cost of licensing must be borne by the employee.

Id. at 1506 (citing Dept. of Industrial Relations, DLSE Opn. Letter No. 1994.11.17 (Nov. 17, 1994) p. 1, fn. omitted.)

In an ill-fated attempt to argue the StaRN Program is employer-specific training, Plaintiff submits orientation slides that discuss Los Robles' general employment policies and procedures. Rum Decl., Ex. J [Dkt. 26-13.] However, this orientation comprises only a miniscule portion of the StaRN Program and ignores other aspects of the training that may satisfy state licensure rules (*e.g.*, ALS and PALS training). In fact, the schedule Plaintiff submits with her declaration shows that a mere four days of orientation were part of Plaintiff's two-year training program. Rum Decl., Exs. G-H [Dkt. 26-8, 26-9.] This directly undercuts her theory that the StaRN Program was solely comprised of employer-specific training that did not pertain to licensure. Id.; See Mot. at 11:15-12:19 [Dkt. 26.]

Plaintiff also argues that Los Robles "hired Plaintiff for the position of RN – Surgical Unit Day Shift that first required Plaintiff to be hired by HCA and [HealthTrust] and participation in and completion of the five-week didactic part of the StaRN program." Mot. at 14:7-10 [Dkt. 26.] This is also inaccurate and unavailing. Plaintiff never applied for a RN position outside of the StaRN Program. Carpenter Decl., ¶ 6. Los Robles has hired nurses in the Surgical Unit outside of the StaRN Program. Id., at ¶ 8.

### 3. <u>Plaintiff Has Not Met Her High Burden Of Establishing That A Notice Should Be Sent To The Proposed TRAP Debt Class</u>

Plaintiff's burden is even higher with regards to the requested notice to the proposed TRAP Debt Class. <u>Garcia v. Google, Inc.</u>, 786 F.3d 733, 740 (9th Cir. 2015). As outlined above, Plaintiff is not likely to succeed on the merits of her claims because she never sought reimbursement for StaRN training. <u>See</u> Section III.C.1. Further, even if StaRN repayments had been made (which did not occur), they do not qualify as reimbursable business expenses under Labor Code section 2802. Sending a notice regarding abeyance of StaRN repayments would also unnecessarily change the status quo and be unduly prejudicial as there has been no adjudication on the merits.

Additionally, Plaintiff's draft notice to the proposed TRAP Debt Class is inappropriate because it does not notify the proposed TRAP Debt Class of Plaintiff's specific claims in this case and fails to provide Defendants' counsel's contact information. [Dkt. 26-22.] Plaintiff's request for notice to be sent to the proposed TRAP Debt Class is an attempt to poison the well by influencing the opinions of the proposed class before certification. <u>Wang v. Chinese Daily News, Inc.</u>, 623 F.3d 743, 756 (9th Cir. 2010) *cert. granted, judgment vacated on other grounds*, 565 U.S. 801 (2011) ("[m]isleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally.") (quoting <u>In re School Asbestos Litigation</u>, 842 F.2d 671 (3rd Cir. 1988)). Simply stated, Plaintiff has not met her difficult burden in proving a notice should be sent.

**4. Plaintiff's Proposed Injunction Is Overbroad Because No Class Has Been Certified And Individual Issues Predominate[10]**

Plaintiff is unlikely to succeed in certifying a proposed Section 2802 class action in this case. This renders the requested preliminary injunction completely overbroad.[11] "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quotations omitted). The party seeking certification must first satisfy Rule 23(a)'s threshold requirements: numerosity, commonality, typicality, and adequacy. Stromberg v. Qualcomm Inc., 14 F.4th 1059, 1066 (9th Cir. 2021). That party must also satisfy at least one of the Rule 23(b) provisions "through evidentiary proof." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). A "court that has doubts about whether [the Rule 23 factors] have been met" after undertaking the required rigorous analysis "should refuse certification[.]" Brown v. Electrolux Home Prods., 817 F.3d 1225, 1233-34 (11th Cir. 2016).

Here, Plaintiff faces multiple hurdles in certifying a proposed class action for her Section 2802 claim (of which only a few are discussed herein). First, as set

---

[10] It is notable that the deadline for the Parties to file motions related to class certification is October 26, 2023. [Dkt. 11, ¶ 5(i).] Therefore, Plaintiff's claim that immediacy exists to seek the preliminary injunction is unsupportable considering the issues related to class certification will soon be decided and potentially narrow the issues or the proposed Section 2802 class.

[11] Plaintiff's cited authorities are inapposite. For example, the preliminary injunctions issued in Nak Kim Chhoeun v. Marin, 306 F. Supp. 3d 1147 (C.D. Cal. 2018) and J.L. v. Cissna, 341 F. Supp. 3d 1048 (N.D. Cal. 2018) were for putative classes of immigrants seeking to enjoin deportation proceedings. Motion at 19:7-26 [Dkt. 26.] The facts of this case are a far cry from the circumstances in Nak Kim and Cissna, because here, the putative class members are not facing eviction from the United States and (as detailed below) have an adequate monetary remedy available.

forth above, Plaintiff cannot establish a viable Section 2802 claim. Second, Plaintiff cannot establish commonality to certify a class, as the StaRN agreements are not uniform and have changed since April 19, 2019. Carpenter Decl., ¶ 9. For example, earlier this year, the two-year commitment and repayment obligations were removed completely. Id. In addition, the amount of money that had previously been sought (before all attempts to seek repayment stopped) varied based on each situation. Id.

Second, the job duties and training received by RNs, as well as the continuing education requirements applicable to each RN, varied greatly based on numerous facts, including among others, each RN's assigned unit, shift, preceptor, facility, and other factors. Sondereker Decl., ¶ 6. It must be noted that Plaintiff only submits evidence of her personal employment documents without submitting any evidence concerning similarities or dissimilarities with the proposed TRAP Debt Class members she seeks to represent. See generally [Dkt. 26-1.] Plaintiff's conclusory declaration fails to support any assertion that common issues predominate. American Passage Media Corporation v. Cass Commc'ns , Inc., 750 F.2d 1470, 1473 (9th Cir. 1985) (declarations of plaintiffs detailing the disruptive effect of defendant's exclusive contracts on plaintiffs business could not support the issuance of a preliminary injunction because they were "conclusory and without sufficient support in facts.").

Third, Plaintiff's claims are also not typical of the claims of proposed TRAP Debt Class members who may have ignored any letter, submitted repayment, or negotiated some other resolution. Significantly, Plaintiff has not repaid any amount allegedly owed under her Repayment Agreement and any prior recovery efforts ceased long ago. Carpenter Decl., ¶ 7.

**D. <u>Plaintiff Has Not Established Irreparable Harm Will Result</u>**

**1. <u>Preliminary Injunctions Are Disfavored In Cases Where Monetary Remedies Are Available</u>**

Preliminary injunctions are disfavored when adequate compensatory damages will ultimately be available in the course of litigation. <u>Idaho v. Coeur D'Alene Tribe</u>, 794 F.3d 1039, 1046 (9th Cir. 2015) ("Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation."); <u>Los Angeles Memorial Coliseum Commission v. National Football League</u>, 634 F.2d 1197, 1202 (9th Cir. 1980) (quoting <u>Sampson v. Murray</u>, 415 U.S. 61, 90, 94 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.")); <u>Dreamer Enters. V. Hankook Trading, Inc.</u>, No. CV 14-4704-JFW (Ex), 2014 U.S. Dist. LEXIS 194690, at *3-4 (C.D. Cal. Aug. 20, 2014).

Here, if Plaintiff is successful in certifying a proposed Section 2802 class and ultimately succeeds on the merits thereafter (which Defendants dispute), the remedy will be purely monetary.

**2. <u>Plaintiff's Allegations Of Irreparable Harm Are Purely Speculative</u>**

Plaintiff's speculative claims of irreparable harm utterly fail. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm . . .; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." <u>Caribbean Marine Services Co., Inc. v. Baldrige</u>, 844 F.2d 668, 674 (9th Cir. 1988); <u>Dreamer Enters. v. Hankook Trading, Inc.</u>, No. CV 14-4704-JFW (Ex), 2014 U.S. Dist. LEXIS 194690, at *4

(C.D. Cal. Aug. 20, 2014); American Passage Media Corporation, 750 F.2d 1470, 1473 (9th Cir. 1985) (declarations of plaintiffs detailing the disruptive effect of defendant's exclusive contracts on plaintiffs' business could not support the issuance of a preliminary injunction because they were "conclusory and without sufficient support in facts").

Plaintiff's declaration claims "Because I consistently receive these charging letters from Defendants, I felt and continue to feel unsettled by the threat of legal action from Defendants and concerned about adverse effects to my credit, credit score and finances." Rum Decl., ¶ 25 [Dkt. 26-1.] However, Plaintiff fails to provide any evidence supporting any basis to feel "concerned" about her credit or finance. Nor could she because - by her own admission - no letter has been sent since March 2023, she never incurred paid or repaid any sum, and Defendants did not report Plaintiff's StaRN amounts to credit reporting agencies. Carpenter Decl., ¶ 7. Plaintiff's speculation is not sufficient to prove irreparable injury.

**3. Irreparable Harm Cannot Be Established Because Plaintiff's Motion Is Moot**

Plaintiff's contemplated injunction has been rendered moot because Defendants have directed the cessation of attempts to collect debts arising from the StaRN program since approximately April 2023. Carpenter Decl., ¶ 9. Bayer v. Neiman Marcus Grp., 861 F.3d 853, 864 (9th Cir. 2017) ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin.") (citations omitted); see also Sprint Nextel Corp. v. Ezcom, Inc., No. CV 12-00222-JFW (VBKx), 2012 U.S. Dist. LEXIS 195897, at *3 (C.D. Cal. Feb. 13, 2012) ("Plaintiffs seek the issuance of a preliminary injunction based only on a 'possibility' of irreparable harm rather than a likelihood of irreparable harm absent a preliminary injunction."). Also, as of approximately March 2023, the two-year

commitment and repayment obligations were removed from the StaRN onboarding documents completely. Carpenter Decl., ¶ 9.

Plaintiff claims that Defendants' "voluntary cessation" – which is undisputed - does not moot the issues and cites Butler v. WinCo Foods, LLC, 613 F. App'x 584 (9th Cir. 2015). In Butler, the plaintiff brought an ADA claim against a grocery store for having a policy of prohibiting service animals from riding in its grocery carts. Id. at 585. There, the store made an exception to its policy for only the Plaintiff - not all potentially impacted individuals. Id. Importantly, as discussed above in Section III.D.1, Plaintiff here seeks a monetary remedy which is distinguishable from Butler which challenged a service dog policy. The court concluded the requested injunction was not moot because the conduct was reasonably expected to reoccur because the policy could be easily reinstated against the single plaintiff. Id. at 585. Here, unlike in Butler, Defendants have uniformly ceased collection efforts against the proposed class in its entirety and Plaintiff has presented no evidence of an intent to reinstate. Carpenter Decl., ¶ 9.

Simply stated, there is no conduct for the Court to enjoin as to Plaintiff or the putative class.

**4. Plaintiff Is Required To Prove Irreparable Harm**

Plaintiff obfuscates the relevant authorities in arguing she does not have to prove irreparable harm. Mot. at 16:17-17:10 [Dkt. 26.] The requirement of proving irreparable harm may be dispensed only if there is a federal statute being enforced by the government. United States v. White, 893 F. Supp. 1423, 1430 (C.D. Cal. 1995) ("In statute enforcement actions by the government, 'irreparable injury' is generally presumed where a statutory violation is clearly shown." (citations omitted); Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir. 1983) ("The standard requirements for equitable relief need not be

satisfied when an injunction is sought to prevent the violation of a *federal* statute which specifically provides for injunctive relief.") (emphasis added).

In this case, Plaintiff pursues her Motion pursuant to the California Labor Code, so she must prove the absence of an injunction will result in irreparable harm pursuant to Federal Rule of Civil Procedure 65. See also Sullivan v. Vallejo City Unified Sch. Dist., 731 F. Supp. 947, 957 (E.D. Cal. 1990) (federal law applies to preliminary injunctions for state law claims). Plaintiff also ignores the second factor of the standard that there is an "absence of an adequate remedy at law" to dispense the irreparable harm factor. Motion at 16:25-28 [Dkt. 26]; Calmar, Inc. v. Emson Research, 838 F. Supp. 453, 455 (C.D. Cal. 1993). Here, there is an adequate remedy at law. See Section III.D.1.

**E. The Balance Of Equities Favor Denying The Preliminary Injunction**

The balance of equities and hardships weighs in favor of denying the Motion. Specifically, a notice to the proposed TRAP class regarding an injunction against Defendants would unfairly influence proposed class members and prejudice Defendants before any proposed class action is certified. See Kutzman v. Derrel's Mini Storage, Inc., 354 F. Supp. 3d 1149, 1154 ("Whether a communication [to putative class members] is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication.") (quoting Talavera v. Leprino Foods Co., 2016 U.S. Dist. LEXIS 29633, *14-15 (E.D. Cal. Mar. 8, 2016)); Adoma v. Univ. of Phx., Inc., 2010 U.S. Dist. LEXIS 114503 (E.D. Cal. Oct. 14, 2010) ("This court agrees that some changes to plaintiff's proposed class notice are necessary to meet the clear, concise, and neutral standards required by law.") A court may limit communications to putative class members before class certification, particularly if there is "potential interference" with the rights of parties in a class action, even without willful

misconduct. O'Connor v. Uber Techs., Inc., 2013 U.S. Dist. LEXIS 172477, at *14 (N.D. Cal 2013). Sending a notice will also impose undue costs on the Parties regarding collection practices that have already ceased as of approximately April 2023. Carpenter Decl., ¶ 9.

Plaintiff makes the bald assertion, without accounting for attorneys' fees and other costs to be necessarily incurred in negotiating and drafting an unbiased notice, that the balance of equities tips in her favor because "the cost of sending the notice is estimated to be equivalent to approximately 1-2 TRAP Debt Class members' repayment amount ($2,000 to $4,000)." Mot. at 22:14-16 [Dkt. 26.] Nonetheless, Plaintiff submits no evidence to support her assertion that the cost of notice would be $2,000 to $4,000. Dotster, 296 F. Supp. 2d at 1164; American Passage, 750 F.2d at 1473 (9th Cir. 1985).

**F. A Preliminary Injunction Is Not In The Public's Interest In This Case**

Plaintiff's Motion does not invoke public interests. Plaintiff's general citations to Labor Code section 2802 and cases containing its interpretation are insufficient to establish a public interest. Motion at 22:20-23:13 [Dkt. 26.] "The public interest inquiry primarily addresses impact on non-parties rather than parties." Dotster, 296 F. Supp. 2d at 1166 (citing Sammartano v. First Judicial Court, IN, 303 F.3d 959, 1166 (9th Cir. 2002)). Here, Plaintiff's preliminary injunction relates exclusively to private agreements regarding the StaRN Program. There is no public benefit from a preliminary injunction.

**G. A Bond Should Be Required**

Federal Rule of Civil Procedure 65(c) provides in relevant part: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Here, if the Court grants Plaintiff's Motion with respect to requiring a

notice be sent to the proposed class, Plaintiff should be required to post a bond to cover the cost of the notice and any potential damages that may be sustained by Defendants.

## IV. CONCLUSION

Defendants respectfully request the Court deny Plaintiff's Motion in its entirety.

Dated: September 25, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ Ian A. Michalak

RICHARD J. SIMMONS
JASON W. KEARNAGHAN
MELANIE M. HAMILTON
BRYANNE J. LEWIS
IAN A. MICHALAK

Attorneys for Defendants
HCA HEALTHCARE, INC., HEALTHTRUST WORKFORCE SOLUTIONS, LLC, and LOS ROBLES REGIONAL MEDICAL CENTER

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants HCA Healthcare, Inc., Healthtrust Workforce Solutions, LLC, and Los Robles Regional Medical Center, certifies that this brief contains 7,086 words (including headings, footnotes, and quotations but excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and indices and exhibits) within 25 pages, which complies with the page limit set by the Court's standing order dated June 30, 2023 [Dkt. 11.]

Dated: September 25, 2023

/s/ Ian A. Michalak