David P. Myers (SBN 206137)
dmyers@myerslawgroup.com
Jason Hatcher (SBN 285481)
jhatcher@myerslawgroup.com
Andriana N. Bravo (SBN 349191)
abravo@myerslawgroup.com
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Plaintiff JACQUI RUM, and all others similarly situated.

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACQUI RUM, on behalf of herself and all others similarly situated<br><br>PLAINTIFF,<br><br>v.<br><br>HCA HEALTHCARE, INC., a Delaware Corporation; HEALTHTRUST WORKFORCE SOLUTIONS, LLC, a Tennessee Limited Liability Company; LOS ROBLES REGIONAL MEDICAL CENTER, a California Corporation; and DOES 1 through 100, inclusive<br><br>DEFENDANTS. | Case No. 2:23-CV-05142-JFW(BFMx)<br><br>CLASS ACTION<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65 [DKT. 26]**<br><br>Date: October 16, 2023<br>Time: 1:30 p.m.<br>Courtroom: 7A<br><br>*The Hon. John F. Walter*<br><br>Trial Date: October 29, 2024<br>Complaint: April 19, 2023<br>FAC: May 10, 2023 |

# TABLE OF CONTENTS


INTRODUCTION AND SUMMARY ........................................................ 1

I. ARGUMENT ........................................................ 2

A. Plaintiff Has Standing ........................................................ 2

1. Executing the Promissory Note Incurs Economic Loss ........................ 2

2. Plaintiff Has Standing as a Former Employee ........................ 3

B. Highly Likely to Succeed on the Merits of Section 2802 Claim ................ 5

1. Executing the Promissory Note Incurs Economic Loss ........................ 5

2. The StaRN Program Debt Violates Section 2802.1 ........................ 5

a) Section 2802.1(a)(1) Covers StaRN Program ........................ 5

b) Section 2802.1(a)(2)(A) and (B) Exceptions Do Not Apply ............ 8

3. Proposed Injunction is Narrowly Tailored ........................ 10

4. No Predominance Element Required for Rule 23(b) ........................ 10

C. Labor Code §2802.1(d) Mandates Injunctive Relief ........................ 10

D. Balance of Equities Favors Notice to the TRAP Debt Class ................ 12

E. A Preliminary Injunction is in the Public's Interest ........................ 12

F. A Bond Should Not Be Required ........................ 12

II. CONCLUSION ........................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Campbell*
(D. Idaho Feb. 25, 2021) 2021 U.S.Dist.LEXIS 36597, at *27 .........................13

*Bayer v. Neiman Marcus Grp.*
(9th Cir. 2017) 861 F.3d 853 .........................................................................4

*BNSF Ry. Co. v. Cty. of Alameda*
(9th Cir. 2021) 7 F.4th 874 ........................................................................ 12, 14

*Butler v. WinCo Foods, LLC*
(9th Cir. 2015) 613 F.App'x 584 ....................................................................5

*Eagle Investors v. Bank of Am.*
(9th Cir. 2014) 585 F.App'x 742 ............................................................... 2, 13

*Engility Corp. v. Daniels*
(D.Colo. Dec. 2, 2016) 2016 U.S.Dist.LEXIS 166737, at *33 ..........................13

*First Western Capital Mgmt. Co. v. Malamed*
(10th Cir. 2017) 874 F.3d 1136 ...................................................................13

*FTC v. Consumer Def., LLC*
(9th Cir. 2019) 926 F.3d 1208 ....................................................................14

*Gallano v. Burlington Coat Factory of Cal.*,
67 Cal.App.5th 953 (2021) ....................................................................... passim

*In re Acknowledgment Cases,*
239 Cal.App.4th at 1507 ............................................................................10

*Lucas R. v. Azar*
(C.D. Cal. Dec. 27, 2018) 2018 U.S.Dist.LEXIS 220971, at *47......................12

**Statutes**

Cal. Code Regs., tit. 16 § 1414 .....................................................................11

Cal. Code Regs., tit. 22, § 70016.1 ..............................................................2, 7

Cal. Code Regs., tit. 22, § 70213 ....................................................................9
Cal. Code Regs., tit. 22, § 70214 ............................................................ passim
Cal. Code Regs., tit. 22, § 70217 ....................................................................7
Cal. Code Regs., tit. 22, § 70455 .......................................................... 2, 7, 9
Cal. Code Regs., tit. 22, § 70539 ........................................................ 2, 7, 10
Labor Code § 2802 .................................................................................. passim
Labor Code § 2802.1 .............................................................................. passim
Labor Code § 2804 .........................................................................................14
Labor Code § 450 ...........................................................................................11

**Rules**

Federal Rule of Civil Procedure 23(b)(2)......................................................12

**Other Authorities**

*www.aacn.org/education/free-continuing-education-nurse-courses* ....................11
*www.incrediblehealth.com/ceu/california/*.........................................................11

## INTRODUCTION AND SUMMARY

First, Defendants HCA Healthcare, Inc.; Healthtrust Workforce Solutions, LLC; and Los Robles Regional Medical Center ("Defendants") have failed to provide any evidence that the "Holder" of the StaRN Promissory Notes have waived Plaintiff's and the TRAP Debt Class' (as defined in Plaintiff's Motion) debt and repayment obligations for the same. [Dkt. 26-12 at ECF p. 10] ("No waiver of any term or provision hereof shall be valid against Holder unless such waiver is in writing executed by Holder."); *See all* [Dkt. 32]. The debt still exists.

Second, Notice has not been provided to the TRAP Debt Class that Defendants have ceased in debt collection efforts. [Dkt. 32 at ECF p. 9:16-21]. Defendants' only real Opposition to Plaintiff's Motion is a Notice to the debtors that the debt collection efforts ceased.

Here, Defendants' Opposition offers no logical, sensical, or reasonable basis to hide or keep this a secret from the debtors (TRAP Debt Class). Especially since Defendants previously threatened the TRAP Debt Class that a lack of repayment "may result in HCA Healthcare, Inc. pursuing any and all legal rights it has against [TRAP Debt Class members], including filing legal actions" or potentially "seek[ing] to recover interest and all costs and attorneys' fees incurred in connection with its efforts to collect on amounts due and owing." [Dkts. 26-14; 26-15; 26-16; 26-17; 26-18; 26-19; 26-20; 26-21] (Debt collection letters from Benefits Recovery). A threat that is now untrue and false given Defendants' representations.

Thus, it lacks reason to argue "mootness" because the creditor voluntarily ceased debt collection efforts (that it could voluntarily resume at a later date) when there is no Notice of the same to the debtor. Hence, Plaintiff offered to stipulate to Notice and Defendants refused. [Dkt. 25 at ECF p. 6:16-18]. Without Notice, the TRAP Debt Class is making decisions regarding finances (credit cards, car purchases, home purchases, etc.) based on untrue or false threats of civil actions. Notice is required to clarify this new status quo. Plus, the debt still has not been

waived and there is no judgment that the debt is null and void.

Third, Plaintiff has demonstrated the requirements for Granting a Motion for Preliminary Injunction. The StaRN Promissory Note constitutes a loss under Labor Code §2802(a) even without repayment. *See Gallano v. Burlington Coat Factory of Cal.*, 67 Cal.App.5th 953, 960-964 (2021). Standing exists because (i) the debt still legally exists and (ii) notice has not been provided of the debt collection effort cessation. *Id.* at 964. A mandatory injunction is required pursuant to Labor Code §2802.1(d) which establishes the irreparable harm/injury standard. *Eagle Investors v. Bank of Am.* (9th Cir. 2014) 585 F.App'x 742, 742-743.

The StaRN Program is an employer-provided and/or employer-required training as it is orientation and competency validation necessary for direct patient care employees, that hospitals are required to perform, and that is expressly included in the definition found in Labor Code §§ 2802.1(a)(2); Cal. Code Regs., tit. 22, §§ 70214 (a), (b), (c) and (d); 70016.1; 70217; 70213; 70455(d) and (f); 70539(b) and (c). Defendants' specific StaRN Programs, or any certifications that are part of the same, are ***not necessary*** to meet the continuing education requirements as there are other avenues for doing so.

Finally, it is illogical for the defense to argue that providing Notice to the debtors of Defendants' debt collection cessation will mislead the TRAP Debt Class – how does telling debtors that debt collection efforts have ceased mislead the debtors? Under this reasoning, telling the same to this Court is misleading.

Simply put, Plaintiff's Motion should be GRANTED.

# I. ARGUMENT

## A. Plaintiff Has Standing

### 1. Executing the Promissory Note Incurs Economic Loss

Even when no payment on the debt is ever made, an employee incurs an "economic loss" under Labor Code §2802(a) upon executing a promissory note, at the direction of and for the benefit of the employer, requiring the employee to pay

the employer's necessary business expenses when the promissory note obligates and subjects the employee to debt collection efforts and possible exposure to civil liability if the employees does/did not pay. *Gallano*, 67 Cal.App.5th at 960-964.

In this case, it does not matter that Plaintiff has not made a payment on the StaRN Promissory Note because the evidence establishes that (i) she signed the promissory note, (ii) at the direction of and for the benefit of Defendants, (iii) the promissory note obligates Plaintiff to pay Defendants' necessary business expenses for the orientation and training validations necessary for Defendants to employ her in a direct patient care position, and (iv) the promissory note subjected Plaintiff to debt collection efforts and possible civil liability.

The Opposition's arguments that an actual payment are required were categorically rejected by the Court in *Gallano.* [Dkt. 32 at Ecf p. 20:18-21:9; 21:8-12]. The defendant employer in *Gallano* argued that the plaintiff "ha[d] not 'incurred' any expenditure or loss because she never paid anything pursuant to the promissory note or the civil demand letters." *Gallano,* 67 Cal.App.5th at 962. The California Court of Appeal rejected this and held:

> [w]hen [plaintiff] allegedly executed the promissory note at the direction and for the benefit of her employer, she incurred an economic loss. She became legally obligated under the promissory note and subject to debt collection efforts and possible exposure to civil liability if she did not pay. Under these circumstances, we conclude that an employee may incur a "loss" for purposes of a section 2802, subdivision (a) claim when the employer causes or directs the employee to become personally liable for a necessary business-related expense.

*Gallano,* 67 Cal.App.5th at 963. Thus, Plaintiff incurred an economic loss for Labor Code §2802(a) and arguments to the contrary fail without merit.

**2. Plaintiff Has Standing as a Former Employee**

Defendants' Opposition fails to rebut Plaintiff's standing as a "former employee." Again, it is her status as a *former* employee that is subjecting her to

Defendants' unlawful debt collection efforts pursuant to the StaRN Program Agreement and Promissory Note. (Decl. Rum at Ex. I-2, Secs. 4.b and 4.c., RUM22); (Decl. Rum at Ex. I-3, RUM34); (Decl. Rum at Exs. K, L, M, N, O, P, Q, R); *see also Bayer v. Neiman Marcus Grp.* (9th Cir. 2017) 861 F.3d 853, 865.

The present harm remains as Defendants (1) have not informed the TRAP Debt Class that it is no longer seeking debt collection efforts and (2) have not waived, in a writing executed by Defendants, any and all debt under the StaRN Promissory Notes for the TRAP Debt Class. Given this, and the mandatory injunctive relief required by Labor Code §2802.1(d), Plaintiff has sufficiently established standing.

Without Notice the TRAP Debt Class members may still make payments and financial decisions related to debt—and the now untrue threats of litigation and related costs—that Defendants have ceased attempting to collect.

Defendants' unilateral conduct is incomplete to rectify Defendants' entire unlawful conduct. *Gallano,* 67 Cal.App.5th at 964 (involuntary receipt of partial relief does not moot an action). Further, "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Butler v. WinCo Foods, LLC* (9th Cir. 2015) 613 F.App'x 584, 585.

Moreover, Plaintiff's interest, as the putative class representative, is to (1) obtain Declaratory Judgment that any and all debt under the StaRN Promissory Notes are null and void pursuant to Labor Code §§ 2802, 2802.1 and 2804 (or a written waiver of the same executed by the Holders); and (2) in this Motion to inform the TRAP Debt Class that Defendants' debt collection efforts are in abeyance. Defendants' Opposition highlighted a typographical error in Plaintiff's Declaration at Paragraph 25, which Plaintiff has now clarified, as because she consistently *received* letters from Defendants, threatening litigation and attorney's fees if she does not repay the debt under the StaRN Promissory Note, she felt and continues to feel unsettled by the threat of legal action. (Reply Decl. Rum at 2).

This feeling is imputed to the TRAP Debt Class, who deserve Notice that the threat of civil action, costs, and attorneys' fees have ceased and thus are no longer true. Notably, this fear will not be completely disposed of until the debt is rendered null and void or waived, as until that point there is nothing to stop Defendants from resuming its prior conduct.

Finally, the Opposition's "ascertainability" argument here is non-sensical. Defendants know that its employment records – as exemplified by the StaRN Promissory Note and debt collection efforts related to Plaintiff – are sufficient to ascertain their non-exempt, registered nurse, employees in the state of California from April 19, 2019 to the present who were subject to (i) to the StaRN Promissory Note, (ii) StaRN Program Agreement, and (iii) Defendants' debt collection efforts. *See* (Dkt. 26 at ECF p. 9:7-14).

**B. Highly Likely to Succeed on the Merits of Section 2802 Claim**

**1. Executing the Promissory Note Incurs Economic Loss**

As shown supra, Plaintiff's execution of the promissory note, even without payment against that alleged debt, establishes that she "incurred an economic loss" pursuant to Labor Code §2802(a). *Gallano,* 67 Cal.App.5th at 960-964. The cases cited in Defendants' Opposition are factually distinct and not persuasive—except for the fact that Defendants' curiously cited *Gallano* that holds the exact opposite to the defense's arguments. [Dkt. 32 at ECF p. 20:12-21:15].

**2. The StaRN Program Debt Violates Section 2802.1**

**a) Section 2802.1(a)(1) Covers StaRN Program**

Section 2802.1(a)(2) expressly provides that "'employer-provided or employer-required educational program or training' includes, but is not limited to, residencies, orientations, or competency validations necessary for direct patient care employment." Id.[1] The StaRN Program is an orientation and competency

[1] Defendants' meet and confer efforts never dispute that the StaRN training is an employer-provided/required training program. [Dkt. 25 at ECF p. 4:23-8:8].

validation necessary for direct patient care employment before an RN can perform direct patient care for the hospital, as established by Cal. Code Regs., tit. 22, §§ 70214 (a), (b), (c) and (d), 70016.1, 70217, 70213. This is consistent with all the evidence regarding the StaRN Program.

Title 22 of the California Code of Regulations for hospital licensing requires Defendants' hospitals to provide the StaRN Program (or a similar program) for their hospital license as "[n]o hospital shall assign a licensed nurse to a nursing unit or clinical area unless that hospital determines that the licensed nurse has demonstrated current competence in providing care in that area, and has also received orientation to that hospital's clinical area sufficient to provide competent care to patients in that area. Cal. Code Regs., tit. 22, §70217.This is the StaRN Program. [Dkt. 26-2 at RUM 1] (Offer Letter describes the StaRN Program as "training, education, and preceptor time to prepare you with skills & confidence to adapt well to your assigned facility"); [Dkt. 32 at ECF p. 12:21-13:13]; [Dkt. 32-5 at ¶¶ 3, 5, 6]. "The StaRN program is . . . designed to provide intense post-graduate training to newly licensed nurses" and "[u]pon completion, the newly licensed nurses are equipped with the knowledge and skill set typically found in a more experienced staff nurse." [Dkt. 26-6 at RUM 11]. The StaRN provides clinical area specific training. [Id].

Section 70214 sets the hospital's requirements for the competency validation necessary for direct patient care employment. This includes "a written, organized in-service education program for all patient care personnel". Cal. Code Regs., tit. 22, § 70214. Most importantly, the hospital, through its administrator of nursing services, "***shall be responsible for seeing that all nursing staff receive mandated education*** as specified in subsection (a) of" Section 70214. Id. at §70214(c).

***First***, Section 70214(a)(1) requires that RNs "receive and complete orientation to the hospital and their assigned patient care unit before receiving patient care assignments". Cal. Code Regs., tit. 22, § 70214(a)(1).

The StaRN Program provided (i) general employment orientation for the

hospital, (ii) tours in order to become familiar with the facility, (iii) lectures specific to clinical areas as well as hospital specific clinical area based procedures and training, and (iv) simulation for mock patient scenarios. [Dkt. 26 at ECF p. 15:16-22]; [Dkt. 26-1 at ¶24]; [Dkt. 26-13]; [Dkt. 26-8]; [Dkt. 26-9]; [Dkt. 26-6 at RUM 12] ("The first phase, didactic, runs for several weeks and includes a combination of didactic education and skills, eLearning, facility days and simulation.").

***Second***, Section 70214(a)(2) requires that RNs "be subject to the process of competency validation for their assigned patient care unit or units" and that prior to patient care assignments the RNs are subject to two limitations: (1) the unvalidated RN shall only perform duties and responsibilities for which competency has been validated, [Cal. Code Regs., tit. 22, § 70214(a)(2)(A)]; and (2) the unvalidated RN must be subject to a preceptor as a validated RN shall be assigned as a resource nurse for those RNs who have not completed competency validation for that unit and the unvalidated RN shall not be assigned total responsibility for patient care until all standards of competency for that unit have been validated. Cal. Code Regs., tit. 22, § 70214(a)(2)(B) and (C).

This is covered by the preceptor time of the StaRN Program. "The second phase, Clinical Preceptorship, runs through the remainder of the program, spent at the sponsoring facility working with a clinical preceptor from the hiring facility." [Dkt. 26-6 at RUM 12]; [Dkt. 26-2 at RUM 1] (the StaRN Program "covers . . . preceptor time to prepare you with skills & confidence to adapt well to your assigned facility).

***Third***, "[t]he staff education and training program shall be based on current standards of nursing practice, established standards of staff performance as specified in subsection 70213(c)" (the hospital's competency standards), and individual staff needs and needs identified in the quality assurance process. Cal. Code Regs., tit. 22, § 70214(b).

"The StaRN Program was developed utilizing national standards and

evidenced-based curriculums." [Dkt. 26-6 at RUM 11] (Listing the national standards for the different clinical areas). Further, the StaRN Program provides that "[m]any of the division and/or facility specific training initiatives will be incorporated." [Id.]. "Residents will also be introduced and trained on the facility" medical records software. [Id.].

***Fourth***, "the Orientation and competency validation shall be documented in the employee's file and shall be retained for the duration of the individual's employment" that includes detailed information related to the education programs. Cal. Code Regs., tit. 22, § 70214(a)(4) and (d). The StaRN meets this requirement. [Dkt. 26-6]; [Dkt. 26-8]; [Dkt. 26-9]; [Dkt. 32-3 at ¶¶ 2, 6].

***Further***, Section 70455(d) provides that "[a]ll registered nurses shall have training and experience in emergency lifesaving and life support procedures." Cal. Code Regs., tit. 22, § 70455(d). "There shall be sufficient licensed nurses and other skilled personnel on duty as required to support the services." Id. at §70455(f). Hence, the StaRN Program's Advanced Life Support certification or Certified Emergency Nurse certifications. [Dkt. 26-6 at RUM 13] ("All residents are required to attend certification training during the program" even if they already received the certification.); [Dkt. 32-4]; [Dkt. 32-5 at ¶4]. The same applies to the Pediatric Advanced Life Support. *See also* Cal. Code Regs., tit. 22, § 70539 (b), (c) and (e).

Based on the evidence, the StaRN Program constitutes Section 2802.1(a)(1) employer-provided and employer-required educational program or training as it is employer orientation and competency validations necessary for direct patient care employment that are the hospitals' responsibility.

**b) Section 2802.1(a)(2)(A) and (B) Exceptions Do Not Apply**

First, Defendants' specific StaRN Program, and any certifications received in the same, are ***not necessary*** to meet the requirements for continuing education or licensure. Section 2802.1(a)(2)(1) only excludes requirements for an employee's license, registration or certification "***necessary to legally practice***" as an RN. Id. As

shown supra, the StaRN Program is a requirement for the hospitals' license – not an RN's license. When "training, which is not required by statute or public policy but is rather instituted purely to satisfy the needs of the [employer]," the same "is employer-mandated training and therefore an expense which the [employer] must bear." *In re Acknowledgment Cases,* 239 Cal.App.4th at 1507. The StaRN Program is a necessary business expense of the hospital – not the employee.

The specific StaRN Program, or any certification obtained in the same, are not a requirement for continuing education (even if it qualifies as continuing education) as there are a myriad of avenues to meet continuing education requirements without participation in the StaRN Program, or any certification, of which some are free of charge. [Dkt. 32-2]; *See* *www.incrediblehealth.com/ceu/california/*; *www.aacn.org/education/free-continuing-education-nurse-courses*. Thus, the same is ***not necessary*** to meet an RN's CE or licensing requirements. To this, an employer cannot require patronage of an employee or applicant. Labor Code §450.

Next, the StaRN Program is not a necessary requirement for work with an interim permit awaiting licensure results, as the requirement is that the interim permit works under the supervision of an RN. The StaRN Program is not a requirement for the interim permit. Individuals who are eligible for an interim permit are an "applicant whose application for licensure in California by examination has been approved will be eligible for an interim permit if the applicant has completed the educational requirements for licensure in nursing;" and "[i]f the applicant is taking the examination as a graduate, the interim permit may be issued upon graduation;" and "[i]f the applicant is taking the examination as a non-graduate, the interim permit may be issued upon completion of the educational requirements for licensure." Cal. Code Regs. tit. 16 § 1414. In order to be employed with an interim permit requires direct supervision of a registered nurse. (Id.) This is not the StaRN Program.

Further, that was not the intent of the StaRN Program that was "designed to provide intense post-graduate training to ***newly licensed nurses***." [Dkt. 26-6 at RUM 11]. The evidence shows that only "licensed Registered Nurses in the State of California ("RNs") are eligible to participate in StaRN Program. [Dkt. 26-11 at RUM 21]. Further, the TRAP Debt Class only applies to Registered Nurses.

Finally, the StaRN Program was a condition of Plaintiff's employment. [Dkt. 26-2 at RUM1-RUM2]. Thus, Sections 2802.1(a)(2)(A) and (B) do not apply.

#### 3. Proposed Injunction is Narrowly Tailored

As shown supra, the proposed injunction is narrowly tailored to StaRN employees who were subject to Defendants' debt collection efforts. [Dkt. 26 at ECF p. 6:11-16]. The Notice informs the debtors (TRAP Debt Class) that the creditor's (Defendants) debt collection efforts have ceased or are in abeyance. Given Defendants' representations on the same, there is no reasonable explanation for their opposition. That is, sending the abeyance Notice does not change the status quo but rather provides an update to the TRAP Debt Class of what the new status quo is based on Defendants' representations that it has ceased debt collection efforts. [Dkt. 32 at ECF p. 9:16-21]. No adjudication on the merits is required to inform the TRAP Debt Class of the foregoing. Plaintiff does not oppose notice modification to include the specific claims and adding defense counsel's contact.

#### 4. No Predominance Element Required for Rule 23(b)

There is no "predominate" factor for Rule 23(b)(2) certification that Plaintiff seeks. [Dkt. 26 at ECF p. 28:19-22]; *Lucas R. v. Azar* (C.D. Cal. Dec. 27, 2018) 2018 U.S.Dist.LEXIS 220971, at *47-48.

### C. Labor Code §2802.1(d) Mandates Injunctive Relief

"[I]n some circumstances, a statute will prescribe that a showing of a violation of the statute alone warrants the issuance of a preliminary injunction." *BNSF Ry. Co. v. Cty. of Alameda* (9th Cir. 2021) 7 F.4th 874, 884. "Where, as here, a right of action arises under state law, state law must also govern the extent to

which damages are available to vindicate that right." *Eagle Investors v. Bank of Am.* (9th Cir. 2014) 585 F.App'x 742, 742-743 (district court erred in concluding that moving party had not shown a likelihood of irreparable harm because the action arose under state law which provided irreparable harm as a damage for preliminary injunction); *Allen v. Campbell* (D. Idaho Feb. 25, 2021) 2021 U.S.Dist.LEXIS 36597, at *27 (same); *see also First Western Capital Mgmt. Co. v. Malamed* (10th Cir. 2017) 874 F.3d 1136, 1142-1143 (analyzing state law claim for presumption of irreparably injury but applying a standard that the statute must clearly mandate injunctive relief); *Engility Corp. v. Daniels* (D.Colo. Dec. 2, 2016) 2016 U.S.Dist.LEXIS 166737, at *33-34 (applying the presumption of irreparable injury standard to state law claim the provided injunctive relief under the pre-*First Western Capital Mgmt. Co.* standard).

Labor Code §2802.1(d) clearly mandates injunctive relief by stating, "[i]n addition to injunctive relief and any other remedies available, a court shall award, in any action brought pursuant to this section, a prevailing plaintiff reasonable attorney's fees and costs." Id. Section 2802.1 was enacted for the specific purpose of preventing California hospitals from using TRAP agreements for competency validation requirement trainings and orientations. Labor Code §2802.1(a)(2).

The vindication of a Section 2802.1 right is injunctive relief. The entitlement to a preliminary injunction is established if the "evidence demonstrates reasonable cause to believe" that the statute with injunctive relief "has been violated, or is about to be violated." *BNSF Ry. Co. v. Cty. of Alameda* (9th Cir. 2021) 7 F.4th 874, 884; *FTC v. Consumer Def., LLC* (9th Cir. 2019) 926 F.3d 1208, 1214. Plaintiff has made this showing under the Likelihood of Success factor.

In the alternative, under the traditional standard Plaintiff shows that the TRAP Debt Class are likely to suffer irreparable harm without the preliminary injunction because (i) Defendants have not informed the TRAP Debt Class that they are no longer seeking repayment and (ii) Defendants' current voluntary cessation

of penalties and interest can just as equally be rescinded at a later date.

**D. Balance of Equities Favors Notice to the TRAP Debt Class**

The Opposition simply fails to show any hardship to informing debtors—who were previously threatened with civil litigation, attorneys' fees, and costs if they do not pay–that Defendants have ceased debt collection efforts. Next, Defendants are not only entities in one of the largest hospital conglomerates in the nation, but costs associated with notices to putative class members and class members are common practice in class litigation.

**E. A Preliminary Injunction is in the Public's Interest**

The Opposition fails to rebut Plaintiff's showing that enforcing wage and hour laws such as Labor Code §§ 2802 and 2802.1 is not in the public's interest as repeatedly found by multiple courts. [Dkt. 26 at ECF p. 29:20-30:13].

**F. A Bond Should Not Be Required**

The bond value here is $0.00. Defendants cannot establish future damages from informing the TRAP Debt Class that Defendants' debt collection efforts are in abeyance because Defendants voluntarily ceased the same – including Defendants' cessation of penalties and interest. If it is a matter of the cost of the mailer, Plaintiff is not opposed of carrying that litigation expense.

## II. CONCLUSION

Accordingly, the Court should GRANT Plaintiff's Motion for a Preliminary Injunction.

Dated: 10/2/2023

**THE MYERS LAW GROUP, APC**

By: /s/Jason Hatcher
Jason Hatcher, Esq.
Attorneys for Plaintiff Jacqui Rum
and all others similarly situated.