SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
RICHARD J. SIMMONS, Cal. Bar No. 72666
rsimmons@sheppardmullin.com
JASON W. KEARNAGHAN, Cal. Bar No. 207707
jkearnaghan@sheppardmullin.com
BRYANNE J. LEWIS, Cal Bar No. 311763
blewis@sheppardmullin.com
IAN A. MICHALAK, Cal. Bar No. 335425
imichalak@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213-620-1780
Facsimile: 213-620-1398

MELANIE M. HAMILTON, Cal. Bar No. 268037
mhamilton@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

Attorneys for Defendants
HCA HEALTHCARE, INC., HEALTHTRUST WORKFORCE SOLUTIONS, LLC, and LOS ROBLES REGIONAL MEDICAL CENTER

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

JACQUI RUM, on behalf of herself and all others similarly situated

PLAINTIFF,

v.

HCA HEALTHCARE, INC., a Delaware Corporation; HEALTHTRUST WORKFORCE SOLUTIONS, LLC, a Tennessee Limited Liability Company; LOS ROBLES REGIONAL MEDICAL CENTER, a California Corporation; and DOES 1 through 100, inclusive

DEFENDANTS.

Case No. 2:23-cv-05142-JFW-BFM
Hon. John F. Walter, Courtroom 7A

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS ACTION CERTIFICATION**

[*Filed concurrently with Declarations of Dorita Sondereker, Davita Carpenter, and Ian A. Michalak; Objections to Evidence; and [Proposed] Order re Objections to Evidence*]

Date: November 27, 2023
Place: Courtroom 7A
Time: 1:30 p.m.

Complaint Filed; April 19, 2023
FAC Filed: May 10, 2023
Trial Date: October 29, 2024

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 3

A. The Defendants ..... 3

B. The StaRN Program ..... 3

C. Plaintiff Jacqui Rum ..... 5

D. Relevant Procedural History ..... 7

E. Meet And Confer Efforts For This Motion ..... 8

III. LEGAL STANDARD ..... 8

IV. ARGUMENT ..... 9

A. Plaintiff Fails to Satisfy Rule 23(a) ..... 9

1. Plaintiff Lacks Standing and is Not Typical ..... 9

2. Plaintiff's Proposed Class/Subclass Definitions Are Overbroad ..... 12

3. Any Purported Ascertainable Class/Subclass Is Not Sufficiently Numerous ..... 14

4. Plaintiff Cannot Establish Commonality ..... 14

5. Plaintiff Is Not An Adequate Representative Of The Proposed Class/Subclasses ..... 15

a. Plaintiff Has No Incentive To Prosecute This Action ..... 15

b. Plaintiff Has An Irreconcilable Conflict Of Interest ..... 16

B. Plaintiff Fails to Satisfy Rule 23(b) ..... 17

1. Certification Under Rule 23(b)(2) Is Improper Because There Is No Continuing Practice To Enjoin ..... 17

2. Certification Under Rule 23(b)(3) Is Improper Because Individualized Questions Predominate ..... 18

3. Plaintiff Has Failed To Establish Superiority ..... 21

C. The Court Should Deny Plaintiff's Request To Extend The Class Certification Deadline ..... 23

V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

Page(s)

Cases

Am. Express Co. v. Italian Colors Rest.
570 U.S. 228 (2013) .... 8

In re Asacol Antitrust Litig.
907 F.3d 42 (1st Cir. 2018) .... 18

Bishop v. Saab Automobile A.B.
1996 U.S. Dist. LEXIS 22890 (C.D. Cal. Feb. 16, 1996) .... 13

Brown v. Federal Express Corp.
249 F.R.D. 580 (C.D. Cal. 2008) .... 21

Buford v. Am. Fin. Co.
333 F. Supp. 1243 (N.D. Ga. 1971) .... 22

Chen v. Allstate Ins. Co.
819 F.3d 1136 (9th Cir. 2016) .... 12

Cholakyan v. Mercedes-Benz USA, LLC
281 F.R.D. 534 (C.D.Cal. 2012) .... 17

Comcast Corp. v. Behrend
569 U.S. 27 (2013) .... 18

In re ConAgra Foods, Inc.
302 F.R.D. 537 (C.D. Cal. 2014) .... 17

E. Tex. Motor Freight Sys., Inc. v. Rodriguez
431 U.S. 395 (1977) .... 10, 23

Ellis v. Costco Wholesale Corp.
657 F.3d 970 (9th Cir. 2011) .... 9

Evans v. U-Haul Co.
2007 U.S. Dist. LEXIS 82026 (C.D. Cal. Aug. 14, 2007) .... 20

Gallano v. Burlington Coat Factory of Cal.
67 Cal.App.5th 953 (2021) .... 11

Gau v. Hillstone Rest. Grp.
20-cv-08250-SVK (N.D. Cal. Mar. 31, 2022) .......... 16

Gen. Tel. Co. v. Eeoc
446 U.S. 318 (1980) .......... 14

General Tel. Co. of Southwest v. Falcon
457 U.S. 147 (1982) .......... 9

Gonzales v. Comcast
2012 U.S. Dist. LEXIS 196 (E.D. Cal. Jan. 3, 2012) .......... 17

Hanlon v. Chrysler Corp.
150 F.3d 1011 (9th Cir. 1998) .......... 12, 15

Hansberry v. Lee
311 U.S. 32 (1940) .......... 15

Jimenez v. Domino's Pizza
238 F.R.D. 241 (C.D. Cal. 2006) .......... 21

Jones v. Hartford Ins. Co. of the Midwest
243 F.R.D. 694 (N.D. Fla. 2006) .......... 23

Kamar v. Radio Shack Corp.
254 F.R.D. 387 (C.D. Cal. 2008) .......... 12

Kayes v. Pacific Lumber Co.
51 F.3d 1449 (9th Cir.1995) .......... 16

Lambert v. Nutraceutical Corp.
870 F.3d 1170 (9th Cir. 2017), rev'd on other grounds, 139 S. Ct. 710 (2019) .......... 19

Lanovaz v. Twinings N. Am., Inc.
726 F. App'x 590 (9th Cir. 2018) .......... 17

Lerwill v. Inflight Motion Pictures, Inc.
582 F.2d 507 (9th Cir. 1978) .......... 15

Lozano v. AT & T Wireless Servs., Inc.
504 F.3d 718 (9th Cir.2007) .......... 9

Lymburner v. U.S. Financial Funds, Inc.
263 F.R.D. 534 (N.D. Cal. 2010) .......... 9

Mazur v. eBay, Inc.
257 F.R.D. 563 (N.D. Cal. 2009) .......... 9

Mazza v. Am. Honda Motor Co.
666 F.3d 581 (9th Cir. 2012) .......... 14

Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg.)
571 F.3d 953 (9th Cir. 2009) .......... 20

Moore v. Apple Inc.
309 F.R.D. 532 (N.D. Cal. 2015) .......... 19

Morel v. HTNB Corp.
No. 22-cv-00408-AJB-AHG, 2022 U.S. Dist. LEXIS 211529 (S.D. Cal. Nov. 21, 2022) .......... 11

Moreno v. AutoZone, Inc.
251 F.R.D. 417 (N.D. Cal. 2008) .......... 16

O'Shea v. Littleton
414 U.S. 488 (1974) .......... 10

Ogaz v. Honeywell Int'l
No. ED CV 21-739-JFW(KKx), 2021 U.S. Dist. LEXIS 156686 (C.D. Cal. Aug. 18, 2021) .......... 23

Oman v. Delta Air Lines, Inc.
9 Cal. 5th 762 (2020) .......... 12

Patel v. Facebook, Inc.
932 F.3d 1264 (9th Cir. 2019) .......... 10

Peterson v. Albert M. Bender Co.
75 F.R.D. 661 (N.D. Cal. 1977) .......... 14

In re Rail Freight Fuel Surcharge Antitrust Litig.
725 F.3d 244 (D.C. Cir. 2013) .......... 18

Salazar v. Avis Budget Group, Inc.
251 F.R.D. 529 (S.D. Cal. 2008) .......... 21

Schulken v. Washington Mutual Bank
2012 U.S. Dist. LEXIS 2005 (N.D. Cal. Jan. 5, 2012) .................................... 17

Shields v. First Nat'l Bank
56 F.R.D. 442 (D. Ariz. 1972)........................................................................ 22

Shroder v. Suburban Coastal Corp.
729 F.2d 1371 (11th Cir. 1984) ...................................................................... 20

Spikings v. Cost Plus, Inc.
No. CV 06-8125-JFW, 2007 U.S. Dist. LEXIS 44214 (C.D. Cal. May 25, 2007) ........................................................................................................... 22

Spokeo, Inc. v. Robins
578 U.S. 330 (2016) ......................................................................................... 9

Stearns v. Select Comfort Retail Corp.
763 F. Supp. 2d 1128 (N.D. Cal. 2010) .......................................................... 13

Thai v. Int'l Bus. Machs. Corp.
93 Cal. App. 5th 364 (2023)....................................................................... 19, 20

TransUnion LLC v. Ramirez
141 S. Ct. 2190 (2021) ..................................................................................... 9

Valentino v. Carter-Wallace, Inc.
97 F.3d 1227 (9th Cir. 1996)............................................................................ 21

Verner v. Swiss II, LLC
2010 U.S. Dist. LEXIS 4443 (C.D. Cal. Jan. 6, 2010)...................................... 24

Vinole v. Countrywide Home Loans
246 F.R.D. 637 (S.D. Cal. 2007)...................................................................... 13

Vinole v. Countrywide Home Loans, Inc.
571 F.3d 935 (9th Cir. 2009)............................................................................ 20

In re Visa Check/Master Money Antitrust Litig.
280 F.3d 124 (2d Cir. 2001) ............................................................................. 18

Wal-Mart Stores, Inc. v. Dukes
564 U.S. 338 (2011) .................................................................................. 8, 14, 15

In re Wells Fargo Home Mortg. Overtime Pay Litig.
268 F.R.D. 604 (N.D. Cal. 2010) ........ 13

Zinser v. Accufix Research Institute, Inc..
253 F. 3d 1180, 1186 (9th Cir. 2001), as amended, 273 F.3d 1266 (9th Cir. 2001) ........ 8

Statutes

28 U.S.C.
§ 1331 ........ 7
§ 1367(c) ........ 7
§ 1441 ........ 7
§ 1446 ........ 7

California Business and Professions Code § 17200 ........ 7, 12

California Labor Code
§ 2802 ........ passim
§ 2802(a) ........ 19
§ 2802.1 ........ 18, 21
§ 2802.1(a)(1) ........ 19
§ 2802.1(a)(2) ........ 19
§ 2802.1(a)(2)(A) ........ 21
§ 2804 ........ 19

Fair Labor Standards Act ........ 7, 8, 23

Unfair Competition Law ........ 8

Other Authorities

16 C.C.R. § 1451 ........ 4

Fed. R. Civ. P. 23 ........ passim

L.R. 23-3 ........ 24

# I. INTRODUCTION

Plaintiff Jacqui Rum ("Plaintiff") seeks class certification of a California Labor Code claim even though she suffered no injury or damages, and the moot injunctive and declaratory relief she seeks is neither needed nor appropriate. Plaintiff's claims relate to the Specialty Training Apprenticeship for Registered Nurses ("RNs") Program, also known as the "StaRN Program," which pays RNs an hourly wage while receiving education and training that prepares them to work as an RN. Until April 2023, participants in the StaRN Program agreed to work full time as RNs at their assigned facility for a stipulated period of time. If their employment with the facility terminated prior to the end of the stipulated period, they would pay the facility for a prorated value of the program, up to $4,000. Plaintiff alleges that this repayment practice violated the Labor Code. But **that practice has ceased, all collection efforts have been discontinued, and all members of Plaintiff's proposed class have been or soon will be notified, in writing, that they have been released from any obligations under their repayment agreements.** Therefore, there is no current practice to enjoin, and no justification for declaratory relief. Additionally, **Plaintiff lacks standing to assert the present claims because she has never paid, and will never pay, any amounts in connection with the StaRN Program**. And even if Plaintiff had standing (which she does not), she cannot maintain a class action because calculating damages on behalf of the class would require a series of mini-trials for each proposed class member, causing individual issues to predominate and precluding class adjudication under Rule 23.

As the proponent at class certification, Plaintiff has the burden to establish, by a preponderance of the evidence, that all of the requirements of Federal Rule of Civil Procedure 23(a), and the requirements of at least one of the alternatives under Rule 23(b), are satisfied. Plaintiff has failed to carry this burden. Plaintiff cannot

establish that she is a typical (or an adequate) class representative, as required under Rule 23(a), because it is undisputed that she never paid a single penny under the StaRN Program. She cannot establish commonality because of the numerous important issues not common to the class. Also, Plaintiff's proposed class/subclasses are overbroad, and any ascertainable class/subclass she could propose would not be sufficiently numerous. For these reasons, Plaintiff fails to satisfy the requirements of Rule 23(a), and her Motion must be denied.

Even if Plaintiff could satisfy Rule 23(a), her Motion nonetheless fails to satisfy either of the provisions of Rule 23(b) upon which she relies, under Rule 23(b)(2) and Rule 23(b)(3). Certification under Rule 23(b)(2) is unavailable because all of the challenged activities have ceased, there is nothing left to enjoin, and there is no basis for declaratory relief. Certification under Rule 23(b)(3) is unavailable because the adjudication of Plaintiff's alleged Labor Code section 2802 claim requires individualized inquiries that would predominate over any issues common to the proposed class. These individualized inquiries would include: (1) the specific program each class member participated in, at which facility, and during what period of time; (2) whether the class member has completed the stipulated period of employment at the assigned facility; and (3) for class members whose employment ended before they completed their stipulated periods of employment, whether they were ever asked to pay sums under the StaRN program and did pay such sums. These variables further demonstrate that Plaintiff cannot carry her burden of establishing that a class action would be a superior method for adjudicating the alleged claims.

For all these reasons, and as further explained below, Plaintiff's Motion should be denied in its entirety.

## II. STATEMENT OF FACTS

### A. The Defendants

Los Robles Regional Medical Center ("Los Robles") is an acute care facility located in Thousand Oaks, California. Declaration of Davita Carpenter ("Carpenter Decl."), ¶ 3. It is a Level II Trauma Center, STEMI-designated heart attack center, and certified Primary Stroke Center. Id.

HealthTrust Workforce Solutions, LLC ("HealthTrust") is an indirect subsidiary of HCA Healthcare, Inc. Declaration of Dorita Sondereker ("Sondereker Decl."), ¶ 3. HealthTrust manages the curriculum and certain other aspects of the StaRN Program. Id. Until approximately January 2023, HealthTrust helped onboard StaRN participants. Id. Since January 2023, individual facilities onboard new StaRN participants directly. Id.; Carpenter Decl., ¶ 5.

HCA Healthcare, Inc. is the indirect parent of Los Robles and HealthTrust. Carpenter Decl., ¶ 4; Sondereker Decl., ¶ 3. HCA Healthcare, Inc. is the ultimate parent of four other hospitals in California, in addition to Los Robles, namely (1) Regional Medical Center of San Jose; (2) Good Samaritan Hospital; (3) Riverside Community Hospital; and (4) West Hills Hospital & Medical Center. Carpenter Decl., ¶ 4; Sondereker Decl., ¶ 3.

### B. The StaRN Program

The StaRN Program offers new RNs specialized training – and the opportunity to obtain continuing education credit that satisfies licensure requirements – through coursework and working closely with an experienced RN (the "preceptorship").[1] Sondereker Decl., ¶ 4. Each training class lasts

---

[1] Plaintiff argues "Defendants' StaRN Program documents repeatedly and consistently establish that individuals must be 'licensed Register Nurses in the State of California' to participate in the StaRN Program." Mot. at 5:3-5 [Dkt. 42-1.] This is incorrect. The StaRN Agreements cited by Plaintiff simply state that

approximately 10 to 22 weeks, depending on specialty. Id. During each program, StaRN instructors act as mentors and educators to newly licensed RNs or interim permitees. Id. Participants learn critical developmental skills, participate in simulation training, and earn valuable certifications. Id. The StaRN Program includes both a didactic training portion that may take place in classrooms or simulation training facilities, and a preceptorship that involves on-site, bedside training at a StaRN Participant's assigned facility. Id. Participants in the StaRN Program receive a wage throughout this period. Id.

Each participant's experience in the StaRN Program is different.[2] Sondereker Decl., ¶ 5. The types of training received by StaRN participants varies greatly based on their unit.[3] Id., Ex. A. Plaintiff's submitted evidence highlights the variance in Program curriculum, duration, and scheduling among the different units. [Dkt. 42-7, p. 2-3.] Additionally, RNs must satisfy continuing education requirements pursuant to the California Board of Registered Nursing (the "Board"). 16 C.C.R. section 1451. Through the StaRN Program, some participants receive certifications such as Advanced Life Support ("ALS") training that may count towards the Board's requirements. Sondereker Decl., ¶ 5.

---

individuals who are licensed Registered Nurses "are eligible to participate" in the StaRN Program, but do not state individuals "must be" licensed. Id.; [Dkt. 42-12.] Los Robles' StaRN Program has accepted individuals into the program who have an interim permit before they attain full licensure which allowed them to work under the supervision of an RN while awaiting the result of their National Council Licensure Examination ("NCLEX"). Carpenter Decl., ¶ 5.

[2] The documentation received by StaRN participants has varied over time and between participants. Sondereker ¶ 5; Carpenter Decl., ¶ 6. For example, earlier this year, the two-year commitment, payment obligations, references to licensing, and Promissory Notes were removed from the StaRN onboarding documents. Carpenter Decl., ¶ 6, Ex. C.

[3] The units vary from facility to facility, but may include Medical-Surgical, Telemetry, Critical Care, Behavioral Health, Emergency, Perioperative, Mom & Baby, Labor & Delivery, PICU, and NICU, among others. Sondereker Decl., ¶ 5.

Depending on the specialty in which they enroll, StaRN participants may also receive specialty certifications such as Pediatric Advanced Life Support ("PALS") and Certified Emergency Nurse certifications, that likewise may be used for continuing education credit. Id.; [Dkt. 43-12, p. 3-4.].

**C. Plaintiff Jacqui Rum**

On August 30, 2021, Plaintiff was hired as an RN in the StaRN Program and assigned to work at the Los Robles facility in the Medical-Surgical Unit. Carpenter Decl., ¶ 7. On approximately October 3, 2021, after completing the didactic portion of the StaRN Program, Plaintiff became a Los Robles employee. Id.

As part of the StaRN Program, Plaintiff agreed to maintain employment at her assigned facility (Los Robles) for two years under her "StaRN Agreement." [Dkt. 42-12.] In the StaRN Agreement, Plaintiff further agreed to pay a portion of the training value associated with the StaRN Program, including the costs of tuition, books, and supplies, up to $4,000, if she did not complete the two-year commitment. Id. The amount due under this agreement was subject to reduction on a pro rata basis to account for the completed portion of the commitment. Id. Plaintiff also signed a Promissory Note agreeing to such payment terms. [Dkt. 42-13.]

Plaintiff resigned from Los Robles on October 1, 2022.[4] Rum Decl., ¶ 15 [Dkt. 42-2.] At the time of her resignation, Plaintiff had completed approximately one year of her two-year commitment. Carpenter Decl., ¶ 7. Therefore, pursuant to Plaintiff's StaRN Agreement and Promissory Note, there was a pro-rated amount of $2,000 remaining. Id. Plaintiff was thereafter sent letters from third

[4] In her Motion for Preliminary Injunction, Plaintiff incorrectly represented that Los Robles terminated her employment. Rum Decl., ¶ 15 [Dkt. 42-2.]; [Dkt. 26-1, ¶ 15.]

party collection agency Benefit Recovery Group ("BRG") requesting payment, until such requests ended on or around March 8, 2023. Id. **Plaintiff never made any payments or "incurred" any expenditures related to her Promissory Note, and the recovery efforts have ceased**. Id., at ¶ 8, Ex. E; Sondereker Decl., ¶ 6; [Dkt. 40, p. 2 ("To date, Plaintiff has not made any payments.").] As of April 2023, Defendants directed that all collection efforts related to the StaRN Program be discontinued. Id., ¶ 6; Sondereker Decl., ¶ 6; [Dkt. 40, p. 2 ("As of April 2023, Defendants stopped their collection efforts related to the StaRN Program..").]

There is no possibility Plaintiff will pay any sums under the StaRN Program in the future. On October 19, 2023, Plaintiff was informed in a letter from Los Robles Human Resources that she has been released from any StaRN Program payment obligations.[5] Rum Decl., ¶ 29, Ex. S [Dkt. 42-23.]; Carpenter Decl., ¶ 8, Ex. E. On October 30, 2023, a total of 1,392 similar notifications were sent by the five California facilities to every identifiable person who entered the StaRN Program in California between January 1, 2018 and December 31, 2022 and could conceivably still be under a payment obligation. Carpenter Decl., ¶ 8, Ex. F; Sondereker Decl., ¶ 6, Ex. B. 200 notifications were sent by Los Robles, 278 notifications were sent by Regional Medical Center of San Jose, 545 notifications were sent by Riverside Community Hospital, and 242 notifications were sent by Good Samaritan Hospital. Sondereker Decl., ¶ 6. Substantively identical letters will soon be sent to the 131 individuals who entered the StaRN Program in California between January 1, 2023 and the date the repayment obligation was

---

[5] This was not the first time Plaintiff was informed she was no longer under any obligation to pay a portion of her StaRN training value. See, e.g., Dkt. 32 at p. 1 (September 25, 2023 filing noting that Defendants directed that all payment recovery efforts cease as of April 2023).

discontinued. Carpenter Decl., ¶ 8; Sondereker Decl., ¶ 6.[6]

**D. <u>Relevant Procedural History</u>**

On April 19, 2023, Plaintiff filed her complaint in Ventura County Superior Court, alleging proposed class claims for: (1) failure to indemnify business expenses under Labor Code section 2802; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to pay all wages due upon separation from employment; (5) failure to provide accurate itemized wage statements; and (6) violation of California Business and Professions Code section 17200 ("Unfair Competition"). [Dkt. 1-1.] On May 10, 2023, Plaintiff filed an amended complaint adding a proposed collective action claim under the Fair Labor Standards Act ("FLSA"). [Dkt. 1-4.] Defendants answered the First Amended Complaint on June 27, 2023. [Dkt. 1-5.] On June 28, 2023, Defendants removed the matter to this Court pursuant to 28 U.S.C. §§ 1331, 1367(c), 1441, and 1446.[7]

---

[6] Plaintiff attempts to muddy the waters by arguing "it is (i) unclear from Carpenter's letter who is allegedly waiving the debt, and (ii) whether that unidentified entity or person is the actual 'Holder' of Plaintiff's StaRN Promissory Note." Mot. at 17:23-25 [Dkt. 42-1.] This argument misstates the record. The plain language of the promissory notes makes clear that the holder of a StaRN participant's promissory note is the facility at which the participant is assigned to work. [Dkt. 42-13, p. 3 ("Maker and Holder agree that, effective upon acceptance of employment at a Facility pursuant to Section 2.c. of the Agreement, this note shall be automatically assigned to Facility."); Dkt. 42-13 at p. 3; Dkt. 42-30, p. 8; Dkt. 44-13, p. 9.] Plaintiff worked for Los Robles, and the release letter was sent by Los Robles. <u>Id.</u> [Dkt. 42-23.] The release letter specifically states "you are no longer under an obligation to pay the facility (or any other entity) for any portion of the value of the program." Plaintiff admits this fact. Mot. at 5:23-25 [Dkt. 42-1.] It is clear Plaintiff has been released of any StaRN payment obligation.

[7] On October 10, 223, the Court denied Plaintiff's Motion for Preliminary Injunction, finding in part that Plaintiff "has not made any payments," and "[a]s of April 2023, Defendants stopped their collection efforts related to the StaRN Program." [Dkt. 40, p. 2.] In short, Plaintiff never "incurred" any expense as required under Section 2802.

[Dkt. 1.]

**E. <u>Meet And Confer Efforts For This Motion</u>**

The Parties met and conferred regarding this Motion on October 13, 2023 and October 16, 2023. [Dkt. 41, at 3:8-11.] The Joint Report regarding Plaintiff's Motion indicated she was only seeking class certification for Plaintiff's first cause of action for failure to indemnify business expenses "incurred" under Labor Code section 2802, Plaintiff's derivative sixth cause of action under the Unfair Competition Law (for the Section 2802 claim), and conditional collective certification for Plaintiff's seventh cause of action under the FLSA.[8] [Dkt. 41.] Plaintiff's Motion narrows these issues and now seeks class certification only for the Section 2802 and derivative Unfair Competition claims. [Dkt. 42.]

## III. <u>LEGAL STANDARD</u>

Before certifying a class, a court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Federal Rule of Civil Procedure 23. <u>Zinser v. Accufix Research Institute, Inc.</u>. 253 F. 3d 1180, 1186 (9th Cir. 2001), as amended, 273 F.3d 1266 (9th Cir. 2001). Rule 23 is more than "a mere pleading standard," <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011), nor does it "establish an entitlement to class proceedings for the vindication of statutory rights," <u>Am. Express Co. v. Italian Colors Rest.</u>, 570 U.S. 228, 234 (2013). Rather, the party seeking class certification bears the burden of establishing by a preponderance of the evidence that all four requirements of

---

[8] Plaintiff's Notice of Motion seeks certification of a California class (TRAP Debt Class) and two subclasses (TRAP Debt Sub-Class (California) and LRRMC TRAP Debt Sub-Class (Los Robles facility only)). [Dkt. 42.] In contravention to the Standing Order [Dkt. 11], Plaintiff failed to meet and confer or include any references to the proposed subclasses in the Joint Report. [Dkt. 41.] For this reason, the proposed subclasses should be disregarded. Notwithstanding, the proposed subclasses fail for the same reasons as the proposed California class.

Rule 23(a),[9] and at least one of the requirements of Rule 23(b), have been satisfied. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 980 (9th Cir. 2011).

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). Certification is improper if there is "no definable class." See Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 730 (9th Cir.2007).

## IV. ARGUMENT

Plaintiff's Motion must be denied because she has not carried her burden of satisfying all the requirements of Rule 23(a), or any of the requirements of Rule 23(b).

### A. Plaintiff Fails to Satisfy Rule 23(a)

#### 1. Plaintiff Lacks Standing and is Not Typical

Plaintiff is not typical and therefore she fails to satisfy the requirement of Rules 23(a)(3). In order for a class representative to be typical, he or she must "possess the same interest *and suffer the same injury* as the class members.'" Lymburner v. U.S. Financial Funds, Inc., 263 F.R.D. 534, 540 (N.D. Cal. 2010) (quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982)) (emphasis added).

As a threshold matter, Plaintiff must have standing to represent the proposed class. This means that a plaintiff must be able to prove that she personally suffered an actual injury that is "concrete and particularized," not "conjectural or hypothetical." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016); TransUnion LLC

---

[9] Under Rule 23(a), a class action is only proper if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. Proc. 23(a).

v. Ramirez, 141 S. Ct. 2190, 2205 (2021). **A claim of actual injury to other members of the proposed class, and mere potential injury to the proposed class representative, is insufficient**. *See* O'Shea v. Littleton, 414 U.S. 488, 494-96 (1974); see also E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403-04 (1977) (a plaintiff who "suffered no injury as a result of the alleged . . . practices" is "not eligible to represent a class of persons who did allegedly suffer injury"). And merely claiming a violation of a statutory right is not sufficient to establish actual injury. Patel v. Facebook, Inc., 932 F.3d 1264, 1270 (9th Cir. 2019) ("[F]or Article III purposes, it is not enough for a plaintiff to allege that a defendant has violated a right created by a statute; we must still ascertain whether the plaintiff suffered a concrete injury-in-fact due to the violation.").

Here, Plaintiff has suffered no injury and will not do so. It is undisputed that she never made any payments in connection with the StaRN Program or "incurred" any necessary expenditure or loss. Carpenter Decl., ¶ 7. The last letter Plaintiff cites requesting payment was sent on March 8, 2023. [Dkt. 42-22.] Defendants thereafter directed the discontinuation of collection efforts **as to all current or former participants in the StaRN Program** as of April 2023. Carpenter Decl., ¶ 6; Sondereker Decl., ¶ 6. And **Plaintiff and 1,392 other StaRN participants were sent written notification making clear that any repayment obligations in connection with the program have been released**. [Dkt. 42-23]; Carpenter Decl., ¶ 8, Exs. E-F; Sondereker Decl., ¶ 6, Ex. B. Therefore, Plaintiff has suffered no concrete harm, and cannot proceed as a proposed class representative.[10]

---

[10] It is also noteworthy that Plaintiff seeks to certify a proposed class of non-exempt RNs for five California facilities, but Plaintiff did not work at any facility other than Los Robles. Carpenter Decl., ¶ 7. As such, Plaintiff's experience is necessarily limited to that facility. Plaintiff submits declarations from three other RNs, two of whom also worked for Los Robles and one who worked for West Hills Hospital. [Dkt. 42-29, at ¶ 2; Dkt. 42-36, at ¶ 2; Dkt. 44-12, at ¶ 2.] Plaintiff

Plaintiff's citation to Gallano v. Burlington Coat Factory of Cal., 67 Cal.App.5th 953 (2021), in support of her standing claim is inapposite. Mot. at 13:23-23-14:3 [Dkt. 42-1.] In Gallano, the California Court of Appeal held that the plaintiff could proceed on a proposed class claim even after the defendant released her debt because the release was specific to the plaintiff only, did not release the proposed class as a whole, and therefore "appear[ed] designed to preempt th[e] lawsuit from proceeding as a class action" by mooting her individual claim and removing her from the class. Id. at 964 (noting that such "cases are sometimes referred to as 'pick off' cases, as the defendant seeks to avoid exposure to the class action by 'picking off' the named plaintiff, sometimes by picking off named plaintiffs serially"). That is not the case here: Defendants have directed collection efforts cease as of April 2023 and released *all* StaRN Program participants from any payment obligations. Carpenter Decl., ¶¶ 6-8, Exs. E-F; Sondereker Decl., ¶ 6, Ex. B; See Morel v. HTNB Corp., No. 22-cv-00408-AJB-AHG, 2022 U.S. Dist. LEXIS 211529, at *6 (S.D. Cal. Nov. 21, 2022) ("[Plaintiff] must plead facts that plausibly demonstrate he and the putative class members either (1) made payments … or (2) that he and the putative class members have been charged a certain amount for such expenditures, for which payment is still pending.") (emphasis added). Because Plaintiff establishes no concrete injury from Defendants' past practices, and because those practices have been discontinued and Plaintiff and all other members of the proposed class have been released, Plaintiff lacks standing to bring claims on either an individual or a

---

submits no declarations from RNs at Regional Medical Center of San Jose, Good Samaritan Hospital, or Riverside Community Hospital to establish typicality, which is fatal to her claims.

proposed class basis.[11] Plaintiff's lack of standing also means her claims are not typical of the proposed class members' claims.

**2. Plaintiff's Proposed Class/Subclass Definitions Are Overbroad**

Plaintiff seeks certification on behalf of all individuals who have signed StaRN Agreements and StaRN Promissory Notes whose employment ended prior to their contracted term or who are still employed and within their stipulated employment period. Mot. at 3:1-7 [Dkt. 42-1.][12] In support of Plaintiff's

---

[11] The other cases Plaintiff cites in support of typicality are similarly inapposite. For example, in Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998), typicality was found in a nationwide defective vehicle case where there was a "broad composition" of representative plaintiffs nationwide and "[t]he representative parties comprise persons from every state, representing all models of Chrysler minivans and include minivan owners whose latches remain operable." Id. at 1020. In the instant action, Plaintiff is the sole proposed representative, her experience is limited to the Los Robles facility, her training and certifications are limited to the Medical-Surgical Unit, and she has suffered no injury. Carpenter Decl., ¶ 7. Therefore, Plaintiff's citation to Kamar v. Radio Shack Corp., 254 F.R.D. 387 (C.D. Cal. 2008) is also of no value here. Further, Chen v. Allstate Ins. Co., 819 F.3d 1136 (9th Cir. 2016), is distinguishable because the statute at issue in that case provided for statutory damages, whereas statutory damages are not available under Section 2802, and damages are limited to business expenses actually "incurred."

[12] While not expressly limited in the proposed class definition itself, Plaintiff's proposed class, and any proposed subclasses, are necessarily limited to California RNs because the basis for class certification is exclusively based on Labor Code section 2802 and a derivative claim under Business & Professions Code section 17200, et seq. See Oman v. Delta Air Lines, Inc., 9 Cal. 5th 762, 773 (2020) ("we ordinarily presume the Legislature drafts laws with domestic conditions in mind, and thus requires some degree of connection between the subject matter of the statutory claim and the State of California."). Also, the entirety of Plaintiff's analyses in her Motion pertains to California employees at five California facilities. See, e.g., Mot. at 3:22-25; 4:20-21; 9:25-27; 11:20-22; 12:2-4 [Dkt. 42-1.] Of note, the proposed class definition in the Joint Report specifically references "[a]ll current and former non-exempt registered nurses for Defendants in the state of California. . ." [Dkt. 41.]

numerosity argument, she states that there were 1,604 participants in the StaRN Program between April 19, 2019 to December 31, 2022. Mot. at 9:21-24 [Dkt. 42-1.] But that number includes: (1) current employees who have never been referred to collections for StaRN payments; (2) former employees who never received a collection letter or paid any amounts associated with the StaRN Program; (3) former employees who received a collection letter but never paid any amount associated with the StaRN Program; and (4) current and former employees who have no payment obligation. Based on Defendants' data and relevant records, only 28 participants in the StaRN Program in California (and only 8 from Los Robles) during the relevant period made any payments. [Dkt. 44-6, at p. 8, SROG #6; Dkt. 44-11, at p. 9-10, SROG #6.]; Carpenter Decl., ¶ 9; Sondereker Decl., ¶ 7. And as noted above, Plaintiff was **not** one of them. Carpenter Decl., ¶ 7.

The overbreadth of Plaintiff's proposed class definition, which includes proposed class members who have not incurred any costs or been injured or damaged, is sufficient grounds to deny Plaintiff's Motion for lack of ascertainability. Courts regularly refuse to certify proposed classes that include people who suffered no injury. For example, in Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010), the court held that a proposed class of people who had used or purchased Sleep Number beds by Select Comfort during a certain time period and whose beds contained mold was not ascertainable because the class included "persons who already have received refunds or replacement parts or who have not suffered any damages at all." The courts in Bishop v. Saab Automobile A.B., 1996 U.S. Dist. LEXIS 22890, at *13 (C.D. Cal. Feb. 16, 1996), Vinole v. Countrywide Home Loans, 246 F.R.D. 637, 641 (S.D. Cal. 2007), and In re Wells Fargo Home Mortg. Overtime Pay Litig., 268 F.R.D. 604, 612 (N.D. Cal. 2010) similarly refused to certify proposed classes that

included individuals who suffered no harm.

**3. Any Purported Ascertainable Class/Subclass Is Not Sufficiently Numerous**

To satisfy the numerosity requirement of Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). If Plaintiff's proposed class/subclass(es) were limited to only those who, unlike Plaintiff herself, actually paid anything in connection with the StaRN Program, the class/subclass(es) would fail for lack of numerosity. Only 28 participants in the StaRN Program in California over the relevant period made any payments, and only 8 of those participants worked at Los Robles.[13] [Dkt. 44-6, at p. 8, SROG #6; Dkt. 44-11, at p. 9-10, SROG #6.]; Carpenter Decl., ¶ 9; Sondereker Decl., ¶ 7. Twenty-eight potential class members falls far short of the numerosity requirement set forth in Rule 23(a)(1).[14] See Gen. Tel. Co. v. Eeoc, 446 U.S. 318, 330 (1980) (finding 15 proposed class members "would be too small to meet the numerosity requirement"); see also Peterson v. Albert M. Bender Co., 75 F.R.D. 661, 667 (N.D. Cal. 1977) (35-45 proposed class members not enough to meet numerosity).

**4. Plaintiff Cannot Establish Commonality**

"The Supreme Court has emphasized that commonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (quoting Wal-Mart, 564 U.S. 338) (internal alteration

---

[13] From April 19, 2019 to December 31, 2022, recovery efforts were sought from only 142 individuals in California. [Dkt. 44-11, at p. 11-13, SROG #3.]; Sondereker Decl., ¶ 7.

[14] With respect to the LRRMC Trap Debt Subclass, only 8 participants in the StaRN Program at Los Robles over the relevant period made any payments. [Dkt. 44-6, at p. 8-9, SROG #6.]; Carpenter Decl., ¶ 9.

omitted). "What matters to class certification is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart, 564 U.S. 338 (quotations and citations omitted). Here, there are numerous important differences among members of the purported class that preclude class certification. These differences include, among others: the facility at which each nurse worked; the program in which the nurse participated (e.g., Emergency, Perioperative, NICU, etc.); any certifications or continuing education credit the nurse may have received (or was eligible to receive); whether the nurse completed his or her stipulated term of employment with the facility; if not, whether the nurse was asked to repay any portion of the value of the StaRN program; and if the nurse was asked to repay, whether he or she did so. Carpenter Decl., ¶¶ 5-9, Exs. C-F; Sondereker Decl., ¶¶ 4-7, Ex. A. Such differences demonstrate that Plaintiff cannot meet her burden under Rule 23(a)(2).

**5. Plaintiff Is Not An Adequate Representative Of The Proposed Class/Subclasses**

**a. Plaintiff Has No Incentive To Prosecute This Action**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy constitutional due process concerns, "absent class members must be afforded adequate representation before entry of a judgment which binds them." Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42-43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (citing Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978)).

Plaintiff is not an adequate representative of the proposed class/subclasses because she has suffered no injury or damages, and has no financial interest in prosecuting her case in the absence of conceivable damages. Carpenter Decl., ¶ 7. Defendants have ended active debt collection practices as of April 2023. Id., ¶ 6; Sondereker Decl., ¶ 6. Accordingly, there is also no basis for injunctive and/or declaratory relief. Mot. at 19:8-9 [Dkt. 42-1.]

**b. Plaintiff Has An Irreconcilable Conflict Of Interest**

Plaintiff is also an inadequate representative because she has a conflict with the proposed class. On October 3, 2022, Plaintiff filed a grievance via her Union, SEIU Local 121 RN, related to the StaRN Training program. Carpenter Decl., ¶ 10, Ex. G. The grievance is set for arbitration on January 10, 2024. Id. This creates a serious and irreconcilable conflict with proposed class members where Plaintiff may have a greater or separate financial interest in her individual arbitration than in the proposed class action. See Gau v. Hillstone Rest. Grp., 20-cv-08250-SVK, *22-23 (N.D. Cal. Mar. 31, 2022) (denying adequacy of class representative because he had an individual harassment claim against the defendant). As an example, Plaintiff could seek to settle her grievance to pursue personal gain, particularly given the Court's ruling denying a preliminary injunction based, in part, on Plaintiff's failure to incur any cost or suffer any injury. [Dkt. 40, p. 2.] Even the *appearance* of a conflict between Plaintiff and the proposed class can render Plaintiff an inadequate representative. Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1465 (9th Cir.1995) ("[t]he 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict."); Moreno v. AutoZone, Inc., 251 F.R.D. 417, 425 (N.D. Cal. 2008).

**B. <u>Plaintiff Fails to Satisfy Rule 23(b)</u>**

Plaintiff moves for class certification under Rule 23(b)(2), and, alternatively, under Rule 23(b)(3). She has failed to meet her burden under either provision.

**1. <u>Certification Under Rule 23(b)(2) Is Improper Because There Is No Continuing Practice To Enjoin</u>**

Rule 23(b)(2) authorizes class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In order to obtain certification under 23(b)(2), Plaintiff must establish that she "faces an imminent or actual threat of future harm" and that there is "a sufficient likelihood that she will again be wronged in a similar way." <u>Lanovaz v. Twinings N. Am., Inc.</u>, 726 F. App'x 590 (9th Cir. 2018).

Rule 23(b)(2) cannot apply in this case because any injunctive or declaratory relief has been rendered moot by the respective facilities (including Los Robles) sending written notification to Plaintiff and the proposed class members stating that the StaRN Program no longer imposes any payment obligations and that they are released from any payment obligations. Carpenter Decl., ¶ 8, Ex. F; Sondereker Decl., ¶ 6, Ex. B. Because there is no conduct for the Court to enjoin, and no declaratory judgment that would benefit the proposed class members, Rule 23(b)(2) certification must be denied. <u>See In re ConAgra Foods, Inc.,</u> 302 F.R.D. 537, 575-76 (C.D. Cal. 2014) (declining to certify classes under Rule 23(b)(2) because none of the named plaintiffs had standing to pursue injunctive relief); <u>Gonzales v. Comcast</u>, 2012 U.S. Dist. LEXIS 196 (E.D. Cal. Jan. 3, 2012); <u>Cholakyan v. Mercedes-Benz USA, LLC</u>, 281 F.R.D. 534 (C.D.Cal. 2012); <u>Schulken v. Washington Mutual Bank,</u> 2012 U.S. Dist. LEXIS 2005 (N.D. Cal. Jan. 5, 2012).

**2. Certification Under Rule 23(b)(3) Is Improper Because Individualized Questions Predominate**

A class may only be certified under Rule 23(b)(3) if a court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3). The predominance requirement requires a significantly greater showing than the commonality requirement of Rule 23(a)(2). Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013) ("Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)").

Individualized inquiries predominate over common questions of law or fact in this case. As a threshold matter, the new Labor Code section Plaintiff alleges is relevant to Defendants' activities—Section 2802.1—became effective in January 1, 2021. This means that different rules and analyses of claims may apply to class members who began the StaRN Program before and after January 1, 2021 and those who began after. Furthermore, what (if any) liability Defendants may have to any particular proposed class member would turn on, among other things, whether the proposed class member completed the stipulated period of employment at the assigned facility; and whether a proposed class member who did not complete the stipulated period of employment, was ever asked to pay, and if they were asked, whether the proposed class member did so and thus incurred a necessary business expense. If, as is the case here, a substantial number of putative class members "in fact suffered no injury" (like Plaintiff), the "need to identify those individuals will predominate." In re Asacol Antitrust Litig., 907 F.3d 42, 53-54 (1st Cir. 2018); In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001); In re Rail Freight Fuel Surcharge Antitrust Litig., 725 F.3d

244, 252 (D.C. Cir. 2013) (same).

The inclusion of uninjured individuals in the proposed class demonstrates its overbreadth and the "individualized inquiries that would be necessary to determine whether a class member has suffered any injury in the first place." Moore v. Apple Inc., 309 F.R.D. 532, 542-43 (N.D. Cal. 2015). And because Plaintiff has failed to meet her burden to propose a means to calculate damages on a class-wide basis, individual issues would necessarily predominate and certification under Rule 23(b) is improper. See Lambert v. Nutraceutical Corp., 870 F.3d 1170, 1182 (9th Cir. 2017), rev'd on other grounds, 139 S. Ct. 710 (2019).[15]

Against these numerous individualized issues of fact and law, Plaintiff points to *only two questions* purportedly common to the class—which are effectively the same question: (1) "Whether or not the provisions of the StaRN Agreement and StaRN Promissory Note violate Labor Code sections 2802(a), 2802.1(a)(1), and 2804"; and (2) "Whether or not [the] StaRN Program is an employer-provided and/or employer-required training that requires indemnification pursuant to California Labor Code sections 2802(a), 2802.1(a)(2), and 2804." Mot. at 11:1-5 [Dkt. 42-1.] These are not pure questions of law that can be decided without reference to the particular experience of each StaRN Program participant. See Thai v. Int'l Bus. Machs. Corp., 93 Cal. App. 5th 364, 371 (2023) ("The elements of a [section 2802(a)] cause of action, as delineated by the statutory

[15] To the extent Plaintiff claims that a portion of her harm consists of mental stress or other personal and amorphous harms, those allegations (a) lack any factual support in the record, and (b) are necessarily individual in nature, not subject to common proof, susceptible to quantification or resolution on a class-wide basis, and hence demonstrate why this matter is inappropriate for class treatment. See Order denying Plaintiff's Motion for Preliminary Injunction [Dkt. 40., p. 3 ("[Plaintiff's] feelings of concern regarding the threat of litigation, her credit, and finances are purely speculative and not sufficient to establish a likelihood of irreparable harm.").]

language, are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary.") (citations omitted).[16] But assuming *arguendo* that they *were* pure questions of law susceptible to easy resolution (as Plaintiff contends), that would only prove that the alleged common questions do *not* predominate over the fact-intensive individualized inquiries concerning reliance and damages. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 937-38 (9th Cir. 2009); Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg.), 571 F.3d 953, 955 (9th Cir. 2009). As Thai unambiguously points out, Plaintiff ignores the need for individualized inquiries regarding a critical element of any Section 2802 claim - did the class member *incur* any necessary expenditure or loss? It was demonstrated only through this lawsuit and individual inquiries that Plaintiff did not. Carpenter Decl., ¶ 7.

Further, mitigation efforts by a defendant regarding the alleged unlawful conduct may be considered by a court in denying a motion for class certification under Rule 23(b)(3). See Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1377 (11th Cir. 1984); Evans v. U-Haul Co., 2007 U.S. Dist. LEXIS 82026, at *18-20 (C.D. Cal. Aug. 14, 2007) (citing to Shroder with approval). Here, Defendants directed that all recovery efforts cease and Plaintiff and proposed class members were sent written notification confirming they were released from any payment obligations. [Dkt. 42-23.] Carpenter Decl., ¶ 8, Exs. E-F; Sondereker Decl., ¶ 6,

---

[16] Plaintiff cannot pursue a claim under Section 2802 because she has not "incurred" any expenditure or loss. Carpenter Decl., ¶ 7. Labor Code section 2802(a) requires that an "employer shall indemnify his or her employee for all **necessary expenditures or losses incurred** by the employee in direct consequence of the discharge of his or her duties. . ." (emphasis added.)

Ex. B.

**3. Plaintiff Has Failed To Establish Superiority**

Plaintiff has failed to meet her burden of establishing that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy," as required under Rule 23(b)(3). The superiority analysis requires plaintiffs to demonstrate how a trial of the class claims could be feasibly conducted. Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) ("There has been no showing by Plaintiffs of how the class trial could be conducted.") Plaintiff has not met that burden here. Plaintiff makes the bald assertion that "Courts have repeatedly held that class actions are a superior device to resolve wage and hour class actions." Mot. at 24:23-24 [Dkt. 42-1.] The remaining claim here, however, is not such an action and Plaintiff provides no support that the assertion applies here.[17]

While Plaintiff argues the StaRN Program, Agreement, and Promissory Notes were "uniform and standardized," that does not take into account the different experiences of the proposed class members due to differing lengths of employment, differing StaRN Offer Letters, differing certifications received by the proposed class members, and experiences in paying/not paying necessary costs or expenses.[18] Mot. at 25:3 [Dkt. 42-1]; Carpenter Decl., ¶¶ 6-9, Exs. C-F;

---

[17] See Brown v. Federal Express Corp., 249 F.R.D. 580, 584-86 (C.D. Cal. 2008) (denying motion for class certification in wage and hour case because highly individualized factual inquires predominated); Jimenez v. Domino's Pizza, 238 F.R.D. 241, 253 (C.D. Cal. 2006); Salazar v. Avis Budget Group, Inc., 251 F.R.D. 529, 534 (S.D. Cal. 2008).

[18] Section 2802.1(a)(2)(A) makes clear that training costs are not required to be reimbursed under Section 2802 for trainings pertaining to "requirements for a license, registration, or certification necessary to legally practice in a specific employee classification to provide direct patient care." Plaintiff's various citations to the legislative history of Section 2802.1 are unpersuasive because they do not shed light on issues related to class certification. Mot. at 15:14-24 [Dkt. 42-1.]

Sondereker Decl., ¶¶ 3-7, Ex. A. Since common proof cannot establish the amounts allegedly paid or owed and considering the differing StaRN Offer Letters, certifications received, and licensure status of individuals in the StaRN Program, a large number of witnesses will necessarily be called at trial regarding their respective individual experiences. Plaintiff cannot maintain a manageable litigation plan on a class-wide basis.

Furthermore, a court must consider whether certification of a class would encourage potential abuse by attorneys where there is an enormous contrast between the potential liability of the defendant compared to the lack of harm suffered by the plaintiff. Shields v. First Nat'l Bank, 56 F.R.D. 442, 445 (D. Ariz. 1972); Buford v. Am. Fin. Co., 333 F. Supp. 1243, 1251 (N.D. Ga. 1971) ("the plain truth is that in many cases Rule 23(b)(3) is being used as a device for the solicitation of litigation. This is clearly an 'undesirable result' which cannot be tolerated."); Spikings v. Cost Plus, Inc., No. CV 06-8125-JFW (AJWx), 2007 U.S. Dist. LEXIS 44214, at *16-17 (C.D. Cal. May 25, 2007) (citing Buford with approval). The instant case presents a classic example of a proposed class action designed purely to benefit counsel. Plaintiff herself has suffered no injury or harm because she has not made any payments and will never do so. Carpenter Decl., ¶¶ 7-8, Ex. E. Nonetheless, Plaintiff (without standing) continues to litigate this case on behalf of 28 individuals (8 at Los Robles) – even though there is insufficient evidence that they desire to participate in this litigation. [Dkt. 44-6, at p. 8, SROG #6; Dkt. 44-11, at p. 9-10, SROG #6.]; Carpenter Decl., ¶ 9; Sondereker Decl., ¶ 7.

Plaintiff cannot establish that questions of law or fact common to class members predominate over any questions affecting only individual members, or that a class action is a superior method to adjudicate the alleged claims.

## C. The Court Should Deny Plaintiff's Request To Extend The Class Certification Deadline

The Court's Standing Order set a 120-day deadline for Plaintiff to move for class and/or collective action certification from the date of service of the Notice of Removal. [Dkt. 11, at 13:6-13.] Defendants served their Notice of Removal on June 28, 2023 [Dkt. 1.] Therefore, Plaintiff's deadline to move for class and collective action certification was October 26, 2023. Since Plaintiff has failed to move for class and collective action certification on her second, third, fourth, fifth, and seventh causes of action (and derivative claims for her sixth cause of action), consistent with its Standing Order, the Court should strike all class and collective allegations from Plaintiff's FAC for those claims.[19] [Dkt. 11, at 13:11-13.]

The Court should also deny Plaintiff's request to extend her deadline to file a motion for class certification by 60 days related to her second through sixth causes of action (note that Plaintiff has not requested an extension for her seventh cause of action under the FLSA). Mot. at 8:23-9:2 [Dkt. 42-1.] Plaintiff's requested extension is procedurally improper because it fails to adhere to the Court's Standing Order requiring a request for an extension be accompanied by "specific, concrete reasons supporting good cause for granting the extension," prior requests for extension, and a separate proposed order. [Dkt. 11, at 14:7-28.] Plaintiff provides no evidence supporting good cause for the extension. Plaintiff has not

---

[19] This also demonstrates Plaintiff and her counsel are inadequate. See East Tex. Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 405 (1977) ("the named plaintiffs' failure to protect the interests of class members by moving for certification surely bears strongly on the adequacy of the representation that those class members might expect to receive"); Jones v. Hartford Ins. Co. of the Midwest, 243 F.R.D. 694, 696-97 (N.D. Fla. 2006) (a plaintiff's failure to timely pursue discovery and timely file a motion for class certification calls into question the plaintiff's ability to "adequately protect the interests of the class."); Ogaz v. Honeywell Int'l, No. ED CV 21-739-JFW(KKx), 2021 U.S. Dist. LEXIS 156686, at *4 (C.D. Cal. Aug. 18, 2021) (citing Jones with approval).

sought a single conference with the Magistrate regarding any purported discovery disputes in this case. Declaration of Ian A. Michalak, ¶ 3. There is also no basis for Plaintiff's contemplated "Motion to Remand for lack of Supplemental Jurisdiction" because Defendants expressly removed the case under federal question and supplemental jurisdiction. Mot. at 8:27-28 [Dkt. 42-1]; [Dkt. 1, at 3:8-11.] As such, Plaintiff should not be granted relief from the motion deadline. See Local Rule 23-3 ("At the earliest possible time after service of a pleading purporting to commence a class action…**but no later than any deadline set by the assigned judge**, the proponent of the class must file a motion for certification that the action is maintainable as a class action.") (emphasis added); Verner v. Swiss II, LLC, 2010 U.S. Dist. LEXIS 4443, at *4 (C.D. Cal. Jan. 6, 2010) ("Because Plaintiff failed to comply with Local Rule 23-3's ninety-day time limit for filing motions for class certification, the Court strikes the class allegations in Plaintiff's First Amended Complaint.")

## V. CONCLUSION

Defendants respectfully request the Court deny Plaintiff's Motion in its entirety.

Dated: November 6, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ Ian A. Michalak

RICHARD J. SIMMONS
JASON W. KEARNAGHAN
MELANIE M. HAMILTON
BRYANNE J. LEWIS
IAN A. MICHALAK

Attorneys for Defendants
HCA HEALTHCARE, INC., HEALTHTRUST WORKFORCE SOLUTIONS, LLC, and LOS ROBLES REGIONAL MEDICAL CENTER

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants HCA Healthcare, Inc., HealthTrust Workforce Solutions, LLC, and Los Robles Regional Medical Center, certifies that this brief contains 7,647 words (including headings, footnotes, and quotations but excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and indices and exhibits) within 25 pages, which complies with the page limit set by the Court's standing order dated June 30, 2023 [Dkt. 11.]

Dated: November 6, 2023

/s/ Ian A. Michalak