David P. Myers (SBN 206137)
dmyers@myerslawgroup.com
Jason Hatcher (SBN 285481)
jhatcher@myerslawgroup.com
Andriana N. Bravo (SBN 349191)
abravo@myerslawgroup.com
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Plaintiff JACQUI RUM, and all others similarly situated.

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACQUI RUM, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HCA HEALTHCARE, INC., a Delaware Corporation; HEALTHTRUST WORKFORCE SOLUTIONS, LLC, a Tennessee Limited Liability Company; LOS ROBLES REGIONAL MEDICAL CENTER, a California Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:23-CV-05142-JFW(BFMx)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: January 22, 2024<br>Time: 1:30 p.m.<br>Courtroom: 7A<br><br>Complaint filed: April 19, 2023<br>Removed: June 30, 2023<br>Trial: October 29, 2024 |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. PLAINTIFF'S ADDITIONAL MATERIAL FACTS .......... 2

A. Plaintiff and the TRAP Debt Class are/were Employees, and/or Applicants for, Direct Patient Care at General Acute Hospitals .......... 2

B. Defendants Fail to Indemnify Any Expenses or Costs of the StaRN Program and Subject Employees to Contractual Indebtedness .......... 3

1. The StaRN Agreement Contractual Indebtedness and Terms .......... 3

2. The StaRN Promissory Note Indebtedness and Terms .......... 4

C. The Debt Collection Letters Evidence HCA as the Note "Holder" .......... 5

D. October 19, 2023 Letter is Limited to "Value of the Program" .......... 6

III. ARGUMENT .......... 6

A. The StaRN Program Violates Labor Code §§ 2802.1, 2802 and 2804 .......... 7

B. Plaintiff's First Cause of Action for Failure to Reimburse Business Expenditures is Not Moot .......... 8

1. Effectual Relief Exists Notwithstanding Defendants' Alleged "Release" Letters .......... 9

2. Triable Issue of Material Fact as to Whether the Value of the Program Indebtedness has been Released .......... 13

3. Collateral Legal Consequences From Labor Code §2802(c) and Tax Implications .......... 15

4. Plaintiff Seeks Nominal Damages .......... 18

5. Class Action Inherently Transitory Exception and/or Putative Class Member Intervention Defeats Defendants' Motion .......... 20

C. Prudential Mootness Does Not Apply .......... 22

D. Plaintiff has Standing and "Incurred" a Business Expense for Her First Cause of Action .......... 23

E. Plaintiff's UCL Claim Is Not Moot and Standing Exists for the Same Reasons Established Above .......... 25

IV. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Cases**


*Already, LLC v. Nike, Inc.* (2013) 568 U.S. 85 [133 S.Ct. 721, 727, 184 L.Ed.2d 553, 561] ........ 12, 14

*Bayer v. Neiman Marcus Grp.* (9th Cir. 2017) 861 F.3d 853 ........ 8, 18, 19, 20

*Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862 (9th Cir. 2002) ........ 18

*Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013) ........ 8

*County of Riverside v. McLaughlin,* 500 U.S. 44, 52 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991) ........ 22

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124 (9th Cir. 2014) ........ 22

*Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58 ........ 8

*EEOC v. Fed. Express Corp.* (9th Cir. 2009) 558 F.3d 842 ........ 11, 16

*Estate of Molino* (2008) 165 Cal.App.4th 913, 925 ........ 10

*Fleming v. Matco Tools Corp.* (N.D. Cal. July 9, 2021) 2021 U.S.Dist.LEXIS 207080 ........ 10

*Flores v. Bennett* (9th Cir. Aug. 3, 2023) 2023 U.S. App. LEXIS 20043 ........ 12, 13

*French v. Commissioner*, 2018 Tax Ct. Summary LEXIS 38 ........ 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* (2000) 528 U.S. 167, 189 [120 S.Ct. 693, 708, 145 L.Ed.2d 610, 632] ........ 11, 14

*Gallano v. Burlington Coat Factory of Cal.*, 67 Cal.App.5th 953 (2021) ........ 2, 23, 24

*Gordon v. Abbott Vascular Inc.* (C.D.Cal. Jan. 30, 2023) 2023 U.S.Dist.LEXIS 52971, at *16-17 ........ 25

*Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52 ........ 16

*Hotle v. Miller*, 51 Cal.2d 541 (1959) ........ 14

*Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009) ........ 22

*Kennerly v. United States,* 721 F.2d 1252 (9th Cir. 1983) ........ 21

*Landreth v. Commissioner*, 50 T.C. 803 (1968) ........ 18

*Maldonado v. Lynch* (9th Cir. 2015) 786 F.3d 1155 .................................................. 23
*McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) ......................................... 8, 12
*McCreary v. Mercury Lumber Distributors* (1954) 124 Cal.App.2d 477 ................. 14
*McMaster v. Coca-Cola Bottling Co.,* 392 F.Supp.2d 1107 (N.D. Cal. 2005) ......... 18
*Moloney v. Comm'r* (T.C. Apr. 17, 2006) 2006 Tax Ct. Summary LEXIS 144…….17
*PG-USA, Inc. v. St. Andrew Prods. Co.,* 2009 U.S. Dist. LEXIS 14736 .................. 14
*Preslar v. Commissioner*, 167 F.3d 1323 (10th Cir. 1999) ....................................... 18
*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785 ............................................... 8
*United States Parole Comm'n v. Geraghty* (1980) 445 U.S. 388
[100 S.Ct. 1202, 1211-1214, 63 L.Ed.2d 479, 494-497]................................. 21
*Wade v. Kirkland* (9th Cir. 1997) 118 F.3d 667 ................................................. 21, 22
*Warbus v. Commissioner* (1998) 110 T.C. 279 ........................................................ 18
*West Virginia v. EPA* (2022) ___U.S.___
[142 S.Ct. 2587, 2607, 213 L.Ed.2d 896, 913]............................................... 12

**Statutes**

Labor Code § 2802.................................................. 1, 2, 7, 10, 17, 19, 20, 23, 24, 25
Labor Code § 2804.............................................................. 1, 2, 7, 10, 17, 19, 20, 25
Labor Code §§ 2802.1.................................................... 1, 2, 7, 10, 16, 19, 20, 24, 25
Labor Code §2802(c) ........................................................................................ 1, 16, 17
Labor Code §2802.1(d)..................................................................................... 16, 19, 20

## I. INTRODUCTION

Defendants HCA Healthcare, Inc. ("HCA"), Healthtrust Workforce Solutions, LLC ("HWS"), and Los Robles Regional Medical Center's ("LRRMC") (collectively "Defendants") Motion for Partial Summary Judgment/Partial Motion to Dismiss (collectively "Motion") should be Denied in its entirety.

First, the California Labor Code §§ 2802.1, 2802 and 2804 claims for Plaintiff Jacqui Rum ("Plaintiff"), and the putative TRAP Debt Class[1] members, against Defendants for failure to indemnify costs and expenses for the Specialty Training and Apprenticeship for Registered Nurses Program ("StaRN Program"), are not moot.[2]

Defendants' Motion is almost predominantly predicated on an alleged release letter sent to Plaintiff on October 19, 2023 ("October Letter"), in which the Motion grossly misrepresents the scope of this October Letter. (Plaintiff's Additional Material Fact ("PAMF") 62, 66, 67). The October Letter was sent by LRRMC and states that Plaintiff is "no longer under an obligation to pay the facility (or any other entity) for any portion of the value of the program". (PAMF 63). The "value of the program" is defined as $4,000 on a pro rata basis. (PAMF 36, 37, 62, 63). Although, the Specialty Training & Apprenticeship for Registered Nurses Program Agreement ("StaRN Agreement") and the StaRN Promissory Note, both, independently, subject Plaintiff to costs and expenses outside the "value of program". (PAMF 39, 40, 43, 44, 45, 46, 48, 49, 50). Thus, the October Letter does not even represent to release all costs and expenses at-issue by Plaintiff's Labor Code §§2802.1, 2802 and 2804 claims. The same applies to the putative TRAP Debt Class.

Notwithstanding this, as for the mootness arguments, the same are defeated due to the collateral legal consequences doctrine related to tax implication for the discharge of alleged debt and Labor Code §2802(c) indemnification. Further, Plaintiff

---

[1] See [Dkts. 42, 42-1]; [Dkt. 46] for TRAP Debt Class definition.

[2] Defendants' Motion only moved on Plaintiff's individual claims and not the putative class claims. *See* [Dkt. 61].

seeks nominal damages that will not moot this claim even if every other potential relief was mooted, which it is not.

Finally, there are triable issues of material fact on whether the October Letter releases Plaintiff's payment obligations for the "value of the program" because (i) the StaRN Promissory Note contains a void/voidable release and waiver provision that renders any waiver or release in the October Letter ineffective or illusory, (ii) there has been no factual modification to the payment obligations in the StaRN Agreement between Plaintiff and HWS as required by the same, and (iii) there is competing evidence as to the "Holder" of the StaRN Promissory Note was as of the date of the October Letter. (PAMF 51, 52, 53, 54, 55, 56, 57, 58, 59, 60).

In the alternative, even if Plaintiff's claims here were moot, which they are not, Plaintiff could proceed under the inherently transitory exception of mootness for a putative class action, or this Court should allow Selena Donis to intervene as a named plaintiff and class representative. Ms. Donis made an $800.00 payment in response to the debt collection letter she received from HCA via Benefits Recovery Group ("BRG"). (PAMF 61). The same is not repaid by the facility letters. (PAMF 78).

Finally, Plaintiff has standing for her Labor Code §§2802.1, 2802 and 2804 claims even though she did not make a payment on the same because contractually incurring debt to the employer for reimbursable business expenses constitutes incurring a loss and suffering an injury pursuant to Labor Code §§ 2802.1 and 2802. *Gallano v. Burlington Coat Factory of Cal.*, 67 Cal.App.5th 953, 960-964 (2021); *see also* Labor Code §2802.1(a)(1) and 2802.

Based on the foregoing, Defendants' Motion should be denied in its entirety.

## II. PLAINTIFF'S ADDITIONAL MATERIAL FACTS

### A. Plaintiff and the TRAP Debt Class are/were Employees, and/or Applicants for, Direct Patient Care at General Acute Hospitals

Defendants offered employment to Plaintiff, and the TRAP Debt Class, as registered nurses ("RNs") at HCA's California facility hospitals that was contingent

on their participation in the StaRN Program. (PAMF 31).

The StaRN Offer Letter established Plaintiff and the TRAP Debt Class as applicants to be non-exempt RNs at one of HCA's California facility hospitals subject to the StaRN training program. (PAMF 32).

The StaRN Agreement provides that "[u]pon execution of this Agreement and the Promissory Note, Employee will be employed by HealthTrust and assigned to one of the facilities set forth on Exhibit A (each, a "Facility") . . . ." (PAMF 33). HCA's California Facility hospitals are all general acute hospitals. (PAMF 34).

**B. Defendants Fail to Indemnify Any Expenses or Costs of the StaRN Program and Subject Employees to Contractual Indebtedness**

Separate and independent of each other, the StaRN Agreement and StaRN Promissory Note establish contractual indebtedness for at least the minimum estimated value of the StaRN Program. (PAMF 35).

**1. The StaRN Agreement Contractual Indebtedness and Terms**

The StaRN Agreement states, that "the Parties agree that $4,000 is an accurate estimate of the value of the training provided." (PAMF 36).

The StaRN Agreement states:

> Termination of Employment by Employee. Should Employee terminate his/her employment with Facility for any reason, Employee shall compensate Facility for the value of the Program on a pro rata basis. Employee shall pay Facility 1/24 of the total value of the Program for each month not worked during the first 24 months following the date of hire by Facility.

(PAMF 37). Section 4.c. establishes a contractual repayment obligation separate and independent to the provisions of the StaRN Promissory Note. (PAMF 38).

Section 4.d. contractually subjects Plaintiff and TRAP Debt Class members to payments outside of "any portion of the value of the program" by stating that Plaintiff and TRAP Debt Class members "will pay the costs related to any action Facility and/or HealthTrust must take to collect said amount, including reasonable attorneys' fees."

(PAMF 39).

Section 4.f. contractually requires Plaintiff and TRAP Debt Class members to "indemnify and hold harmless HealthTrust, Facility and their respective successors, assigns . . ." against any financial loss, cost, expense, and fee (including reasonable attorneys' fees, court costs) which result from or arise out of any claim asserted against or sought from HealthTrust or its affiliates in connection with the StaRN Agreement or StaRN Program. (PAMF 40).

Section 6.c provides that "[n]o amendment or other modification to this Agreement will be effective unless and until it is embodied in a written documents [sic] signed by both HealthTrust and Employee [Plaintiff]." (PAMF 41).

Section 6.g. provides that the StaRN Program may be considered taxable income and Plaintiff must determine whether federal income tax is due on the costs to complete the StaRN Program. (PAMF 42). And, that HealthTrust shall neither pay nor reimburse Plaintiff or TRAP Debt Class members for federal income tax due by Plaintiff or TRAP Debt Class members as a result of participation in the StaRN Program. (PAMF 43).

### 2. The StaRN Promissory Note Indebtedness and Terms

The Promissory Note provides that the employee promises to pay HWS or any successor and assigns the principal amount of $4,000.00, plus interest at a fixed rate of 3% per annum, for the cost of the StaRN Training. (PAMF 44). This interest shall accrue on the outstanding balance commencing 30 days following the date of any termination of employment by Plaintiff or TRAP Debt Class members and shall continue thereafter until the note is paid in full. (PAMF 45). All payments on the StaRN Promissory not shall be applied to principal, interest and/or the "Holder's" unpaid costs and expenses, in such order and in such amounts, as Holder shall determine in the reasonable exercise of the Holder's discretion. (PAMF 46). The "Holder" of the StaRN Promissory Note is "the lawful owner and holder of the indebted ness [sic] evidenced" in the note. (PAMF 47).

The StaRN Promissory Note subjects the "Maker" – i.e. Plaintiff or TRAP Debt Class members – to a "late charge" equal to 10% of the total amount of any payment required if the payment is not received by the Holder within 10 business days after the date such payment is due. (PAMF 48). This "late charge" is to "defray the expense incurred by Holder in handling and processing such delinquent payment and not as a penalty or forfeiture. (PAMF 49). The StaRN Promissory Note includes that Plaintiff and TRAP Debt Class members "agrees to pay all costs of collection, including reasonable attorney's fees" if collected by law or through an attorney-at-law, or under advice there from, whether or not suit is brought. (PAMF 50).

The StaRN Promissory Note "may not be amended, modified or supplemented without the prior written approval of the Holder and Maker." (PAMF 51).

No waiver of any term or provision of the StaRN Promissory Note shall be valid against Holder unless such waiver is in writing executed by Holder. (PAMF 52).

The StaRN Promissory Note is freely assignable by Holder without the consent of Maker. (PAMF 53). Further, the StaRN Promissory Note waives any notice of transfer of the note by the Holder or by any subsequent holder of the note, and that Plaintiff and TRAP Debt Class members agreed to remain bound by the terms of the note subsequent to any transfer, and agreed that the terms of the note may be fully enforced by any subsequent holder of the note. (PAMF 54).

Finally, the StaRN Promissory Note expressly provides that any "waiver" or "release" by the "Holder" is transient as the "Holder" of the note may "renew" the principal and/or interest and that any "release shall not in any way affect or change the obligation of any such maker [Plaintiff and TRAP Debt Class members] . . . or change the obligation of any such maker [Plaintiff and TRAP Debt Class members] . . . to this Note . . . ." (PAMF 55).

**C. The Debt Collection Letters Evidence HCA as the Note "Holder"**

A third-party debt recovery entity named Benefit Recovery Group ("BRG"), mailed Plaintiff debt collection letters from December 2, 2022 to March 8, 2023.

(PAMF 56). BRG's letters state that HCA retained BRG to collect the alleged StaRN Program debt. (PAMF 57). BRG's letters state that the letters "serves as formal notice of [Plaintiff's] obligation to repay HCA Healthcare, Inc. . . . the balance owed on [Plaintiff's StaRN Training benefit." (PAMF 58). BRG's letters warn that "[f]ailure to make payment may result in HCA Healthcare, Inc. pursuing any and all legal rights it has against [Plaintiff], including filing legal actions." (PAMF 59). BRG's letters further state that "in addition to seeking the full amount of payment" HCA Healthcare, Inc., may also . . . seek to recover interest and all costs and attorneys' fees incurred in connection with its efforts to collect on amounts due and owing." (PAMF 60).

### D. October 19, 2023 Letter is Limited to "Value of the Program"

Carpenter's October 19, 2023 letter to Plaintiff defines the "value of the program" to be "up to $4,000, on a pro rata basis". (PAMF 62).

Carpenter's October 19, 2023 letter states "you are no longer under an obligation to pay the facility (or any other entity) for any portion of the value of the program." (PAMF 63).

Carpenter's October 19, 2023 letter never states who the "Holder" of Plaintiff's StaRN Promissory Note was as of October 19, 2023. (PAMF 64). Carpenter's October 19, 2023 letter is not signed by Plaintiff. (PAMF 65). Carpenter's October 19, 2023 letter does not even attempt to release or waive Plaintiff of any payment obligations outside of the "value of the program", such as (but not limited to) (i) "late charges", (ii) interest, (iii) collection costs, (iv) attorney's fees, and/or (v) litigation costs. (PAMF 66). Carpenter's October 19, 2023 letter does not offer Plaintiff nominal damages or reimbursement for tax consequences for the discharge of the debt of the "value of the program" or an offer to indemnify Plaintiff for attorney's fees and costs necessary to enforce her rights under this lawsuit. (PAMF 67). Carpenter's declaration in support of Defendants' Motion never states who the "Holder" of Plaintiff's StaRN Promissory Note was as of October 19, 2023. (PAMF 68).

## III. ARGUMENT

### A. The StaRN Program Violates Labor Code §§ 2802.1, 2802 and 2804

Failing to indemnify Plaintiff, and the putative TRAP Debt Class members, for ***any*** expense or cost of ***any employer-provided or employer-required educational program or training*** for an employee provided direct patient care or an applicant for direct patient care employment is a violation of Labor Code §§ 2802.1 and 2802. *See* Id. Further, any contract, express or implied, made by any employee that waives the right of indemnification pursuant to Labor Code §§ 2802.1 and 2802 are null and void. *See* Labor Code §2804.

Plaintiff's elements for this claim are: **(i)** employers fail to indemnify **(ii)** employees providing direct patient care, or an applicant for direct patient care employment, **(iii)** at a California general acute hospital, **(iv)** for any expense or cost of any employer-provided or employer-required educational program or training. Labor Code §§ 2802.1(a)(1); 2802(a).

Here, the evidence establishes that Defendants fail to indemnify Plaintiff, and the putative TRAP Debt Class members for all expenses and costs of the StaRN Program as evidence through the indebtedness provisions of the StaRN Agreement and StaRN Promissory Note. (PAMF 31, 35, 37, 38, 44, 69).

Next, Plaintiff, and the putative TRAP Debt Class members, are/were employees providing direct patient care, or an applicant for direct patient care employment at California general acute hospitals. (PAMF 31, 32, 34, 70, 71).

Finally, Plaintiff, and the putative TRAP Debt Class incurred debt for the expense and cost of the StaRN Program, which is an employer-provided or employer-required educational program or training. (PAMF 31, 35, 37, 38 44, 72). Labor Code §2802.1(a)(1) establishes that "[t]hose expenses or costs shall constitute a necessary expenditure or loss incurred by the employee in direct consequent of the discharge of the employee's duties, as that phrase is used in Section 2802." Id. This statutorily establishes that the employer cannot shift any such costs or expenses to the employee or applicant. And, a contract of indebtedness for such costs or expenses to the

employee is further evidence of injury for such necessary expenditure or loss. *Gallano*, 67 Cal.App.5th at 960-964.

Labor Code §§2802.1(a)(2)(A) and (B) provides affirmative defenses as they constitute exemptions from the statutory mandate. *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 75-76; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795. Although, both the Labor Code §2802.1(a)(2)(A) and (a)(2)(B) exemptions do not apply.

Any alleged Labor Code §2802.1(a)(2)(A) exemption is defeated because the StaRN Program is (i) not required to be licensed as a RN, (ii) disqualified from use for continuing education (CE) credits as it is an orientation designed to familiarize the applicants/employees with policies and procedures of the specified unit at the Facility (hospital), (iii) not claimable for CE credits because newly licensed RNs are exempt from CE requirements for the first two years of licensure and the StaRN Program would have been expired by the reporting time if it was even reportable as credit in the first place, which it is not. (PAMF 73, 74, 75).

Any alleged Labor Code §2802.1(a)(2)(B) exemption is defeated because the StaRN Program is a condition of employment. (PAMF 76).

### B. Plaintiff's First Cause of Action for Failure to Reimburse Business Expenditures is Not Moot

"The party asserting mootness bears the ***heavy burden*** of establishing that there remains no effective relief a court can provide." *Bayer v. Neiman Marcus Grp.* (9th Cir. 2017) 861 F.3d 853, 862. (Emphasis added). "An action 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.*; *quoting Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013). "The question is not whether the precise relief sought at the time the case was filed is still available, but whether there can be any effective relief." *Id.; quoting McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015).

Defendants have vigorously defended the legality of the StaRN Program's

employee indebtedness provisions in this case. *See* [Dkt. 32, 45, 56]. Given Defendants substantial liability exposure here, LRRMC sent Plaintiff the October Letter in an effort to avoid liability. (PAMF 77). Nearly identical letters were sent to the putative TRAP Debt Class members. (PAMF 78).

The intent of the October Letter, and the putative class letters, was to appear as if Plaintiff's, and the putative class, claims were mooted while at the same time leaving room for Defendants to later act on the indebtedness provisions of the StaRN Agreement and StaRN Promissory Note. The October Letter demonstrates this because it (i) does not release all indebtedness payment obligations under the StaRN Agreement and StaRN Promissory Note; and (ii) lacks facts to establish that the "value of the program" indebtedness under the StaRN Agreement and StaRN Promissory Note are released. (PAMF 79, 66, 67, 62, 63); (DMF 22, 24) (DUF 23, 24).

**1. Effectual Relief Exists Notwithstanding Defendants' Alleged "Release" Letters**

Without waiving any arguments, assuming the October 19, 2023 letter from Carpenter relieved Plaintiff of the "obligation to pay the facility (or any other entity) for ***any portion of the value of the program***", the Court would still be in a position to grant effectual relief via declaratory judgment because relieving Plaintiff of her "obligation to pay . . . any portion of the value of the program" does not relieve Plaintiff of all contractual indebtedness incurred under the StaRN Promissory Note and StaRN Agreement.

**a. Incomplete Release**

The "value of the program" as stated in the October 19, 2023 letter, as well as the StaRN Agreement and StaRN Promissory Note, is $4,000 (or the pro rata amount of the same). (PAMF 62, 36, 44).

The "value of the program" does not include the (i) 3% interest that accrued pursuant to the StaRN Promissory Note, (PAMF 44, 45); (ii) 10% "late charge" for prior non-payment pursuant to the StaRN Promissory Note, (PAMF 48, 49); (iii) costs

related to any action Facility and/or HealthTrust must take to collect said amount, including reasonable attorney's fees, (PAMF 39, 40, 50); and (iv) the StaRN Agreement to indemnify and hold harmless HealthTrust, Facility and their respective successors, and assigns against any financial loss, cost, expense, and fee (including reasonable attorneys' fees, court costs) which result from or arise out of any claim asserted against HealthTrust or its affiliates in connection with the StaRN Agreement or StaRN Program or the "non-value of the program". (PAMF 40).

The evidence here clearly shows that Defendants have not even allegedly released all of the unlawful contractual indebtedness provisions in the StaRN Program and StaRN Promissory Note via the October Letter. Defendants have not shown that Plaintiff has received all the relief available to her on the merits and thus has failed to establish mootness. See [Dkt. 61-1].

Plaintiff's First Amended Complaint ("FAC") seeks declaratory judgment that the StaRN Agreement and StaRN Promissory Note are null and void pursuant to Labor Code §§ 2802.1, 2802 and 2804. [Dkt. 1-4]. The same purpose as Plaintiff's Motion to Certify Class Action. [Dkt. 42-1 at ECF p. 30:17-19] ("The remedy is uniform injunctive and declaratory relief that the StaRN Agreement and StaRN Promissory Note are null and void pursuant to Labor Code §§ 2802, 2802.1 and 2804."). Such a declaratory judgment would vitiate Plaintiff's "non-value of the program" indebtedness arising under the StaRN Agreement and StaRN Promissory Note. "A contract which purports to waive the protection of Labor Code section 2802 is void." *In re Acknowledgment Cases* (2015) 239 Cal.App.4th 1498, 1507; *citing* Lab. Code, § 2804. A void contract is "of no legal effect" and thus not enforceable. *Id.*; *Estate of Molino* (2008) 165 Cal.App.4th 913, 925; *Fleming v. Matco Tools Corp.* (N.D. Cal. July 9, 2021) 2021 U.S.Dist.LEXIS 207080, at *13.

Moreover, the non-value of the program indebtedness provisions that were not subject of the October 2023 Letter, violate Labor Code §§ 2802 and 2802.1 as the same derive from the unlawful failure to indemnify Plaintiff for employer-required

and/or employer-provided training or education programs pursuant to Labor Code §§ 2802.1 and 2802. Thus at a minimum, these non-value of the program indebtedness provisions establish collateral legal consequences that apply here because there remains "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *EEOC v. Fed. Express Corp.* (9th Cir. 2009) 558 F.3d 842, 847.

**b. Voluntary Cessation Does Not Moot this Claim**

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* (2000) 528 U.S. 167, 189 [120 S.Ct. 693, 708, 145 L.Ed.2d 610, 632] [Citations omitted]. "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* "The heavy burden of persuading" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* [Citations omitted].

The October Letter fails to meet this showing because (i) the October Letter does release non-value of the program indebtedness provisions in the StaRN Agreement and StaRN Promissory Note, and (ii) Defendants have yet to make an affirmative declaration to this Court or Plaintiff or the putative TRAP Debt Class that it will never resume collection efforts on the non-value of the program indebtedness provisions. (PAMF 66 ); (DMF 21, 22, 29). HWS and LRRMC, not HCA, have only factually represented that (i) the debt "practice has been changed" and (ii) there is "no intention of reinstituting payment provisions or seeking further collections related to the StaRN Program." (DMF 29, 22, 21); (PAMF 80). This fails to establish that "it [is] absolutely clear that the allegedly wrong behavior could not reasonably be expected to recur" as the representations are equivocal. *EEOC,* 558 F.3d at 848 ("Fedex *may* not object" is an equivocal showing of possible intent and not an affirmation, which fails to establish mootness). Even if Defendants "have no intention

to alter or abandon the" voluntary cessation of the alleged unlawful conduct, the same does not establish mootness because discretionary decisions are neither "entrenched" or "permanent". *McCormack v. Herzog* (9th Cir. 2015) 788 F.3d 1017, 1025.

The "formidable burden" standard to overcome the voluntary cessation exception cannot be met by assuming the wrongful behavior will not reasonably be expected to recur. *Already, LLC v. Nike, Inc.* (2013) 568 U.S. 85, 92 [133 S.Ct. 721, 727, 184 L.Ed.2d 553, 561]. HCA could easily re-engage Benefits Recovery Group to restart collection efforts against Plaintiff for the non-value of the program indebtedness provisions in the StaRN Agreement and StaRN Promissory Note that are not subject to the October 2023 Letter. *Flores v. Bennett* (9th Cir. Aug. 3, 2023, No. 22-16762) 2023 U.S. App. LEXIS 20043, at *3 (voluntary cessation exception not overcome when defendants refused to disavow policy and vigorously defended its legality); *citing West Virginia v. EPA* (2022) ___U.S.___ [142 S.Ct. 2587, 2607, 213 L.Ed.2d 896, 913] (voluntary cessation exception not overcome when defendant failed to establish it will not reimpose the alleged unlawful conduct and rather vigorously defended the legality of its approach). To this, Carpenter is an agent of LRRMC and Sondereker is an agent of HWS. (PAMF 81, 82). Neither establish that they are authorized to make representations on behalf of HCA. (PAMF 83, 84).

The evidence demonstrates that the only named Defendant to seek collection efforts is HCA. (PAMF 85). HCA has made no factual representation via declaration, or written evidence, that it will not seek future collection efforts. (PAMF 86); (DMF 29, 21). Nor evidence as to HCA's direction or intentions for the same. (DMF 29, 21).

Further, the timing of the October Letter, Defendants' failure to disavow the debt provisions under the StaRN Agreement/Promissory Note, and the vigorous defense of the legality of the same further defeat mootness. *Flores,* 2023 U.S. App. LEXIS 20043, at *3; *West Virginia,* 142 S.Ct. at 2607; *McCormack,* 788 F.3d at 1025.

Declaratory judgment will vitiate the indebtedness of non-value of the program provisions that were not addressed by the October Letter. Further, a permanent

injunction against the enforcement of the same would prevent reinstatement of collection efforts. *Flores,* 2023 U.S. App. LEXIS 20043, at *3. The foregoing independently requires denial of Defendants' Motion.

**2. Triable Issue of Material Fact as to Whether the Value of the Program Indebtedness has been Released**

In the alternative, and without waiving any arguments, triable issues of material fact exist as to whether or not the obligation to pay the "value of the program" has been released.

**a. StaRN Promissory Note Void/Voidable Release/Waiver**

First, the StaRN Promissory Note contains a voidable-release/waiver clause that renders any waiver or release of the Maker's obligations under the StaRN Promissory Note voidable as the Note states, in relevant part, that:

> Maker . . . hereby expressly agree[s] that the lawful owner or holder of this Note may alter its maturity, defer or postpone collection of the whole or any part thereof, either principal and/or interest, or may . . . renew the whole or any part thereof, either principal and/or interest, . . . or may release from liability on account of this Note any one or more of the makers . . . all without notice to them or any of them; and such alteration, deferment, postponement, renewal, extension, . . . and/or release shall not in any way affect or change the obligation of any such maker . . . or change the obligation of any such maker . . . to this Note . . . . (PAMF 87).

Thus, even if LRRMC was the "Holder" of the StaRN Promissory Note as of October 19, 2023, its representation that "you are no longer under an obligation to pay the facility (or any other entity) for any portion of the value of the program" does not release or change Plaintiff's obligation to pay based on the foregoing provision. Or, at the minimum, it allows the "Holder" of Plaintiff's StaRN Promissory Note to void the October 19, 2023 letter and reconvene collection efforts based on the value of the program after this suit ends. That is Defendants would be "free to return to [their] old ways" after the litigation ends, which does not establish mootness. *Friends of the*

*Earth, Inc.,* 528 U.S. at 189. This further establishes that the October 19, 2023 letter does not establish that the collection efforts on the "value of the program" could not be later resumed. *Already, LLC,* 568 U.S. at 92.

**b. No Factual Modification of StaRN Agreement**

Second, the "value of the program" repayment obligation pursuant to Section 6.c. of the StaRN Agreement may only be modified or amended through a written document signed by both HWS and Plaintiff. (PAMF 41). The Section 6.c. repayment obligation exists independent and separate from the StaRN Promissory Note. (PAMF 35). The October Letter is not signed by either HWS of Plaintiff. (PAMF 65).

There is no evidence that HWS and Plaintiff have impliedly abandoned the StaRN Agreement because Plaintiff is suing Defendants for declaratory judgment that the StaRN Agreement is null and void – i.e. of no legal effect from its inception – not to repudiate a prior valid contract. Further, there is no new contract between HWS and Plaintiff to establish abandonment of the StaRN Agreement. Accordingly, Defendants' reliance on *McCreary v. Mercury Lumber Distributors* (1954) 124 Cal.App.2d 477, 486 is inapposite and there is no factual basis to establish that Plaintiff's repayment obligations for the "value of the program" pursuant to Section 6.c. of the StaRN Agreement have been modified or amended or released.

The same applies to Defendants' reliance on *Hotle v. Miller*, 51 Cal.2d 541, 546 (1959) as there is no subsequent written or oral contract that modifies HSW and Plaintiff's StaRN Agreement. (PAMF 41, 65). Thus, the legal authority to alter a contract in writing by a subsequent contract in writing or by an executed oral agreement, only establishes that LRRMC cannot unilaterally modify or amend the StaRN Agreement, not the opposite. The same applies to Defendants' reliance on *PG-USA, Inc. v. St. Andrew Prods. Co.,* 2009 U.S. Dist. LEXIS 14736 at *10 (C.D. Cal. July 2, 2009).

Thus, there is no factual showing, or a minimum a triable issue of material fact, that the October 2023 Letter released Plaintiff's "value of the program" payment

obligations under Section 4.c. of the StaRN Agreement.

**c. "Holder" of the StaRN Promissory Note Issue of Fact**

Finally, and without waiving any foregoing arguments, who the "Holder" of Plaintiff's StaRN Promissory Note is constitutes an issue of fact for the jury to decide. The only entity that can potentially waive a provision of the StaRN Promissory Note is the "Holder". (PAMF 47, 51, 52). The relevant inquiry here is who was the "Holder" of Plaintiff's StaRN Promissory Note as of October 19, 2023 because if LRRMC was not the "Holder" at that date, its written release of the "value of the program" was without legal effect. There is disputed evidence as to the "Holder" was at the time of the October Letter.

The Benefits Recovery debt collection letters provide evidence that as of October 19, 2023, HCA was the "Holder" of the StaRN Promissory Note as the Benefits Recovery debt collection letters state that repayment is required to HCA not LRRMC, and that HCA not LRRMC retained Benefits Recovery, and that HCA had the right to seek legal action on the debt including attorney's fees and costs not LRRMC. (PAMF 56, 57, 58, 59, 60); (DMF 28). This effectively disputes Defendants' evidence that the StaRN Promissory Note was automatically assigned to LRRMC when Plaintiff began her employment at LRRMC.

Further, Carpenter's testimony that LRRMC "never assigned Plaintiff's payment obligations to another party" is factual evidence to establish that HCA was the "Holder" of the Plaintiff's StaRN Promissory Note as of October 2023 because Carpenter's testimony implies a partial assignment of a contractual benefit and not a complete assignment of a contract. Moreover, if LRRMC never assigned Plaintiff's payment obligations to another party than the representations in the Benefits Recovery letter (representing HCA as the "Holder") would only be lawful if HCA was the "Holder" of Plaintiff's StaRN Promissory Note under a complete assignment.

The foregoing independently requires denial of Defendants' Motion.

**3. Collateral Legal Consequences From Labor Code §2802(c)**

**and Tax Implications**

In addition, or the alternative and without waiving the foregoing, "a 'collateral' injury survives that can be remedied by this court even though the primary injury may have been resolved." *EEOC v. Fed. Express Corp.* (9th Cir. 2009) 558 F.3d 842, 847. Here, there are two collateral legal consequences (i) Plaintiff's request for indemnification pursuant to Labor Code §2802(c); and (ii) tax implications from the alleged discharge of the "value of the program" debt.

First, Labor Code §2802(c) provides that:

> For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

The FAC seeks such indemnification. [Dkt. 1-4]. Labor Code §2802(a) provides that an employer shall indemnify its employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of her duties or her obedience to the directions of the employer, even though unlawful.

Labor Code §2802(c) establishes a statutory right to indemnification of attorney's fees and costs for enforcing the employee's rights pursuant to Labor Code §2802(a). Labor Code §2802.1(d) provides attorney's fees and costs to a prevailing plaintiff for an action pursuant to Labor Code §2802.1. There is a difference as Labor Code §2802(c) is not merely a prevailing party statute for attorney's fee and costs. Rather, a substantive right to be indemnified for enforcing the employee's rights pursuant to Labor Code §2802(a).

Labor Code §2802(c) is not limited to indemnification for an employees' defense but also includes indemnification for enforcement of rights under Labor Code §2802. The statute requires the employer to *indemnify* the employee for all that the *employee necessarily expends* in direct consequence of the discharge of the employee's duties. *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 57. If *that* expenditure is necessarily in direct consequence of the discharge of the

employee's duties, then the employer must "indemnify" (i.e., reimburse) the employee. *Id.* at 58

Here, the relevant inquiry is whether the attorney's fees and costs of Plaintiff's action were necessary to enforce her rights under Labor Code §2802. *Id.* This inquiry is based on what was reasonable under the circumstances and is a factual question. *Id.* The FAC clearly establishes, and it is undisputed, that at the time she filed the complaint she was subject to the indebtedness for the "value of the program" pursuant to the StaRN Agreement and StaRN Promissory Note. (PAMF 63). LRRMC only allegedly released the payment obligation for the "value of the program" after Plaintiff filed her class action complaint, a motion for preliminary injunction, and the day of Plaintiff filing the joint report for the motion to certify class action. (PAMF 63, 66).

A factual determination must be made here given Plaintiff's Labor Code §2802(c) claim seeking indemnification for attorney's fees and costs.

Second, the discharge of the "value of the program" debt establishes tax implications. "Income from the discharge of indebtedness is includible in gross income" pursuant to 26 U.S.C. §61(a)(11)). *See Moloney v. Comm'r* (T.C. Apr. 17, 2006, No. 21859-04S) 2006 Tax Ct. Summary LEXIS 144, at *13 ("Income from the discharge of indebtedness is includible in gross income" pursuant to 26 U.S.C. §61(a)(11)). Declaratory judgment that the StaRN Agreement and StaRN Promissory Note are "null and void" – including the debt provisions – establishes res judicata that the costs of the StaRN Program are reimbursable business expenses. Such a declaratory judgment is predicated on a finding that Plaintiff's debt constitutes a reimbursable business-related expense. See Labor Code §§ 2802.1(a), 2802, 2804. Under Section 62(a)(2)(A) an employee can deduct certain reimbursed business expenses. 26 U.S.C.S. §62. Section 108(e)(2) provides: No income shall be realized from the discharge of indebtedness to the extent that payment of the liability would have given rise to a deduction. 26 U.S. Code § 108(e)(2).

The defense offers the same failed arguments here as made in their

supplemental brief in opposition to the motion to certify class action. Plaintiff need not plead a claim for tax refund status pursuant to Labor Code §2802 in order to invoke the collateral legal consequences doctrine that declaratory judgment rendering the StaRN Agreement and StaRN Promissory Note null and void would grant effective relief vis-a-vie the alleged discharge of debt. Defendants' citation to the *McMaster v. Coca-Cola Bottling Co.,* 392 F.Supp.2d 1107, 1112 (N.D. Cal. 2005) order is thus inapplicable as that case did not deal with the legal consequences doctrine.

There is no guarantor in this case with contingent liability for Plaintiff's failure to pay the "value of the program" debt pursuant to the StaRN Agreement and StaRN Promissory Note. (PAMF 88). Thus, the *Landreth v. Commissioner*, 50 T.C. 803, 813 (1968) case is inapplicable here as that case dealt with a guarantor to the debtor.

The same applies to Defendants' "disputed debt" cases which are inapplicable here because the "disputed debt" exception arises when there is a settlement for the discharge of debt. Plaintiff and Defendants have not reached a settlement in this case. Notably, the court in *French v. Commissioner*, No. 14777-15S, 2018 Tax Ct. Summary LEXIS 38, at *22 (T.C. July 12, 2018) ruled that the disputed debt doctrine did not apply to exclude the discharge of debt from taxable income because there was no settlement for the same. *Id.; citing Warbus v. Commissioner* (1998) 110 T.C. 279, 284. Further, the "disputed debt" or "contested liability doctrine" only applies when the original amount of the debt is unliquidated (not established as a specific amount). *Preslar v. Commissioner*, 167 F.3d 1323, 1328 (10th Cir. 1999). Here, the original amount of the debt was established as $4,000 as well as the interest at 3%. (PAMF 36, 44). Plus, there has been no settlement.

**4. Plaintiff Seeks Nominal Damages**

In addition, or the alternative and without waiving the foregoing, "[a] live claim for nominal damages will prevent dismissal for mootness." *Bayer v. Neiman Marcus Grp.* (9th Cir. 2017) 861 F.3d 853, 872-875; *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002). Nominal damages may be legal or equitable. *Id.*

Nominal damages, which are damages "in name only" and by nature minimal in amount, serve two distinct purposes: (i) awarded to vindicate rights, the infringement of which has not cause actual provable loss; or (ii) clarify the identity of the prevailing party for the purpose of awarding attorney's fees and costs in appropriate cases – particularly when the statute provides for the award of court costs and the prevailing party, a court may award nominal damages to avoid ordering the plaintiff to pay the court costs and ensure the cost burden is on the defendant. *Id.*

Plaintiff seeks nominal damages as a civil rights plaintiff seeking to vindicate important civil rights pursuant to Labor Code §§ 2802.1, 2802 and 2804. An award of nominal damages is evident through Labor Code §2802.1(d) that provides, "[i]n addition to injunctive relief and ***any other remedies available, a court shall award, in any action brought pursuant to this section, a prevailing plaintiff reasonable attorney's fees and costs***." Id. (Emphasis added). When determining whether a statute authorizes nominal damages awards, it is necessary to consider whether the legislature intended to provide a statutory nominal damages remedy when it enacted the law. *Bayer,* 861 F.3d at 872-875.

The "other remedies available" indicates clear intention that the California Legislature authorized nominal damages as the Legislature enacted Labor Code §2802.1 in order to "end [the] practice" of health care employers requiring or coercing applicants to incur or pay for employer-mandated training programs as a condition of full time employment. (PAMF 89).

TRAP agreements pose the infringement of a right that might not cause compensatory damages because the employer, when sued for declaratory judgment to render the indebtedness provisions of the TRAP agreement null and void pursuant to Labor Code §§ 2802.1, 2802, and 2804, could merely waive the indebtedness provisions in the same in an attempt to avoid adjudication. (DMF 22, 24); (PAMF 62, 63, 66). What Defendants have attempted to do here. Without nominal damages, employers, like Defendants, may thwart the Legislature's intent for enacting Labor

Code §2802.1 to end these practices.

Hence, nominal damages are "other remedies available" under Labor Code §2802.1(d). This is further evidence from the Legislature's intent, and enactment, that the expense and costs of employer-required or employer-provided training or educational programs constitute a necessary expenditure or loss incurred by the employee in direct consequence of the discharge of the employee's duties as that phrase is used in Section 2802. (PAMF 89, 93); Labor Code §2802.1(a)(1).

Defendants' conduct herein represents the Legislature's foresight as Defendants have (i) attempted (albeit unsuccessfully) to voluntarily render the indebtedness provisions moot – hence the potential need for nominal damages and (ii) argued that Plaintiff did not incur a "necessary expenditure or loss" because she never paid any of Defendants for the indebtedness provisions. Anticipating the same, the Legislature authorized nominal damages via Labor Code §2802.1(d) and deemed the costs of employer-required/provided training or educational programs to be a "necessary expenditure or loss" pursuant to Labor Code §2802.1(a)(1).

Further, without nominal damages, an employer could argue itself the prevailing party by mooting the claim prior to adjudication and then use the unlawful attorney fees and costs provisions of the TRAP agreement against the employee because there had been no adjudication that the same were null and void pursuant to Labor Code §§ 2802.1, 2802 and 2804. The defense already has planted such seeds by claiming they will be the prevailing party should this court grant its Motion. [Dkt. 61-1 at ECF p. 26:6-9]. Here, if the Court ignores the factual evidence that the StaRN Agreement and StaRN Promissory Note's fees and costs provisions have not been waived by Defendants, then nominal damages are further awardable and authorized to clarify the identity of the prevailing party for the purposes of awarding court costs and fees. *Bayer,* 861 F.3d at 872.

The foregoing independently requires denial of Defendants' Motion.

**5. Class Action Inherently Transitory Exception and/or Putative**

**Class Member Intervention Defeats Defendants' Motion**

In the alternative, and without waiving any arguments, despite Plaintiff's showing supra that this Court can issue effective relief, mootness would not apply here under the inherently transitory exception or by way of intervention from a putative class member with an unchallenged "live claim". *Wade v. Kirkland* (9th Cir. 1997) 118 F.3d 667, 669-670; *see also Kennerly v. United States,* 721 F.2d 1252, 1260 (9th Cir. 1983) (named plaintiff's claim became moot while motion for certification was outstanding; panel remanded to district court to consider possible intervention by other class members); *see also United States Parole Comm'n v. Geraghty* (1980) 445 U.S. 388, 401-407 [100 S.Ct. 1202, 1211-1214, 63 L.Ed.2d 479, 494-497].

Two putative class members have declared their intention and request to be name co-class representatives: (1) Selena Donis and (2) Hunter Cerone. (PAMF 90). On February 9, 2023, Ms. Donis made an $800.00 payment on the StaRN Promissory Note and StaRN Agreement debt pursuant to HCA's debt collection letter sent via Benefits Recovery Group. (PAMF 61). Plaintiff initiated the meet and confer efforts for stipulation, or in the alternative a motion for leave, to amend the FAC to add Ms. Donis as an additional co-class representative. (PAMF 91). The alleged release letters to the putative TRAP Debt Class do not establish that Defendants issued restitution or repayment of the alleged unlawful receipt of payments they received pursuant to the StaRN Promissory Note and StaRN Agreement. (PAMF 92); (DMF 22, 24).

That is, the alleged release letters are without merit to argue mootness against Ms. Donis' claim or the other putative TRAP Debt Class members who made payments. Declaratory judgment that the StaRN Agreements and StaRN Promissory Notes are null and void would establish collateral estoppel for monetary damages to these putative TRAP Debt Class members if Ms. Donis did not seek to amend the certification motion or order to obtain the same prior to such judgment.

Or, the inherently transitory exception applies. Notably, this Motion only attacks mootness as to Plaintiff, and given the nature of the claims it is foreseeable

that upon amendment of the FAC to name Cerone and Donis as plaintiffs and putative co-class representatives, Defendants will merely seek to moot their claims in the same or similar fashion. This renders a constant stream of putative class members still subject the unlawful provision – most specifically the putative TRAP Debt Class members who made payments. If transitory, the court could validly certify a class even if Plaintiff's claims are already moot (which they are demonstrably not), since the relation back doctrine would relate to Plaintiff's standing at the outset of the case in order to preserve the merits of the case for judicial resolution. *Wade,* 118 F.3d at 670; *County of Riverside v. McLaughlin,* 500 U.S. 44, 52, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991). Because there are putative TRAP Debt Class members who made payments, a declaratory judgment that the StaRN Agreements and StaRN Promissory Notes are null and void, after certifying a class, would grant effectual relief by way of collateral estoppel for these putative TRAP Debt Class members to seek monetary damages for those payments if only Plaintiff carried the proverbial class representative torch (i.e. if this Court were to deny Donis the opportunity to intervene as a named plaintiff and putative class representative). (PAMF 94).

This independently warrants denial of Defendants' Motion.

**C. Prudential Mootness Does Not Apply**

"The doctrine of prudential mootness permits a court to 'dismiss an [action] not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion ***for meaningful relief***. . ." *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014) *quoting Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (Emphasis Added). The Ninth Circuit has applied the doctrine when no assets remained for distribution in a bankruptcy proceeding. *See Deutsche Bank Nat. Tr. Co.*, 744 F.3d 1124 at 1135.

As shown supra, even if the alleged waiver of payment obligations for the "value of the program" are effective, meaningful relief still exists as Plaintiff is still subject to (i) "late charges", (ii) interest, (iii) collection costs, (iv) attorney's fees,

and/or (v) litigation costs. (PAMF 65). Thus, declaratory relief that the StaRN Program and StaRN Promissory Note are null and void would render these provisions without legal effect and thus provide Plaintiff meaningful relief. The same applies to the other relief outlined supra.

In *Maldonado v. Lynch* (9th Cir. 2015) 786 F.3d 1155, 1161 the Ninth Circuit denied prudential mootness in an immigration case because obtaining deferral of removal would allow the petitioner to remain in the United States, which is meaningful relief and there was evidence that he currently was present in the United States. The same applies here. *Id.*

**D. Plaintiff has Standing and "Incurred" a Business Expense for Her First Cause of Action**

Pursuant to Labor Code §2802.1(a)(1) and §2802, signing a contract for repayment and/or a promissory note to repay indemnifiable business expenses constitutes "incurring" a necessary business expenditure or loss and an injury in fact. *See Gallano v. Burlington Coat Factory of Cal.*, 67 Cal.App.5th 953, 960-964 (2021); *see also* Labor Code §2802.1(a)(1) and 2802.

This is because, even when no payment on the debt is ever made, an employee incurs an "economic loss" under Labor Code §2802(a) and §2802.1(a)(1) upon executing a promissory note, at the direction of and for the benefit of the employer, requiring the employee to pay the employer's necessary business expenses when the promissory note obligates and subjects the employee to debt collection efforts and possible exposure to civil liability if the employees does/did not pay. *Id.* The "injury in fact" is the unlawful indebtedness to the employer.

Defendants' argument that Plaintiff lacks standing because she never made any payments related to the StaRN Program is legally incorrect. Defendants' argument that Plaintiff never suffered an "injury in fact" is factually and legally incorrect.

In addition to the *Gallano* opinion, the second sentence of Labor Code §2802.1(a)(1) statutorily deems that the "expenses or costs" of the employer-

required/provided training/education "shall constitute a necessary expenditure or loss incurred by the employee in direct consequence of the discharge of the employee's duties, as that phrase is used in Section 2802. (Id.). Labor Code §2802 requires that necessary expenditures or losses incurred be indemnified – i.e. the expenses or costs associated with the StaRN Program. To this, once Plaintiff (and the other putative TRAP Debt Class Members) signed the StaRN Agreement and Promissory Note requiring them to pay Defendants for even a portion of these training/educational costs, they incurred a loss for purposes of Labor Code §§ 2802.1 and 2802. Or, as more aptly put in the legislative history, the statute clarifies that an employer may not coerce a job applicant or require an employee to pay for an employer-mandated training program. (PAMF 93).

In this case, for standing purposes, it does not matter that Plaintiff has not made a payment as the evidence establishes that: (i) Plaintiff signed both the StaRN Agreement and StaRN Promissory Note, (ii) at the direction of and for the benefit of the employer, and (iii) the StaRN Agreement and StaRN Promissory Note each independently require Plaintiff to pay the employer's necessary business expense and subjects Plaintiff to debt collection efforts and/or possible legal exposure to civil liability if Plaintiff does/did not pay said necessary business expenses on behalf of the employer. (PAMF 31-66); *Gallano,* 67 Cal.App.5th at 960-964.

Moreover, there is no factual basis for Defendants allegations that Defendants "ended the payment obligations as to all current or former participants in the StaRN Program in April 2023." (DMF 24). The only representations made to Plaintiff, and the putative TRAP Debt Class, were made by the "Facilities" and only represented that there they "no longer have an obligation to pay the facility (or any other entity) for ***any portion of the value of the program***". (PAMF 95). The "value of the program" is limited in the letters as well as the StaRN Agreement and StaRN Promissory Note, to the agreed upon $4,000, on a pro rata basis. (PAMF 62, 63, 66). The "value of the program" does not include (i) "late charges", (ii) interest, (iii) collection costs, (iv)

attorney's fees, and/or (v) litigation costs. (PAMF 66).

Defendants' Motion fails to establish the absence of triable issues of material fact that Plaintiff lacks standing here. And, accordingly, this issue must be denied.

### E. Plaintiff's UCL Claim Is Not Moot and Standing Exists for the Same Reasons Established Above

Plaintiff's UCL claim, in part, is derivative of her First Cause of Action for violations of Labor Code §§ 2802.1, 2802 and 2804. [Dkt. 1-4]. Because her First Cause of Action is not moot and Plaintiff has standing, as shown supra, her UCL claim is not moot and has standing. *Gordon v. Abbott Vascular Inc.* (C.D. Cal. Jan. 30, 2023, No. 5:22-cv-01438-NICS-SHK) 2023 U.S.Dist.LEXIS 52971, at *16-17 (where the underlying claim survives a dismissal challenge from the Defendants the derivative UCL claim survives to the same degree).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Partially Dismiss, or in the alternative, Motion for Partial Summary Judgement must be Denied in its entirety.

Date: December 29, 2023

**THE MYERS LAW GROUP, A.P.C.**

By: /s/Jason Hatcher

David P. Myers,
Jason Hatcher,
Andriana N. Bravo,
Attorneys for Plaintiff Jaqui Rum and all others similarly situated.