David P. Myers (SBN 206137)
dmyers@myerslawgroup.com
Jason Hatcher (SBN 285481)
jhatcher@myerslawgroup.com
Andriana N. Bravo (SBN 349191)
abravo@myerslawgroup.com
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Plaintiff JACQUI RUM, and
all others similarly situated.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUI RUM, on behalf of herself and all others similarly situated<br><br>PLAINTIFF,<br><br>v.<br><br>HCA HEALTHCARE, INC., a Delaware Corporation; HEALTHTRUST WORKFORCE SOLUTIONS, LLC, a Tennessee Limited Liability Company; LOS ROBLES REGIONAL MEDICAL CENTER, a California Corporation; and DOES 1 through 100, inclusive<br><br>DEFENDANTS. | Case No. 2:23-CV-05142-JFW(BFMx)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT**<br><br>Judge:  Hon. John F. Walter<br>Courtroom: 7A<br>Date:  June 30, 2025<br>Time:  1:30 pm<br><br><br>Complaint Filed: April 19, 2023<br>FAC Filed: May 10, 2023 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................2

III.    SUMMARY OF THE PROPOSED SETTLEMENT ......................................4

  A.    The Class Settlement ...............................................................................4

    1.    The Settlement Class ......................................................................4

    2.    PSCM Relief ...................................................................................4

      a)  Final Judgment by Consent ....................................................4

        i.    StaRN Pay Obligations are Null and Void ....................5

        ii.    Indemnification Against StaRN Pay Obligations...........6

      b)  StaRN Reimbursement Payments ...........................................7

    3.    Settlement Funds Allocation ..........................................................7

  B.    PAGA Allocation ....................................................................................8

  C.    Proposed Notices to the Settlement Class ..............................................8

    1.    Notice of Settlement ......................................................................8

    2.    Notice of Judgment and Indemnification .......................................9

  D.    Proposed Release of Claims ...................................................................9

    1.    Released Parties .............................................................................9

    2.    Release of Class Claims by Participating Class Members .....................9

    3.    Release of PAGA Claims...............................................................10

    4.    Plaintiff Jacqui Rum's Release .....................................................10

    5.    Dismissal of Putative Class Claims Without Prejudice..........................10

  E.    Second Amended Complaint ................................................................11

IV.   CERTIFICATION OF THE TRAP DEBT CLASS ...........................................11

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ...........................11

   A.   Rule 23(a) Met.............................................................................11

      1.   Numerosity is Satisfied.....................................................11

      2.   Commonality is Satisfied...................................................12

      3.   Typicality is Satisfied .......................................................12

      4.   Adequacy Requirements are Satisfied................................13

   B.   The Rule 23(b)(2) and (3) Standards Are Satisfied....................14

      1.   Rule 23(b)(2) Requirement is Met ....................................14

      2.   Rule 23(b)(3) Requirements Met........................................14

         a)  Common Issues Predominate ......................................14

         b)  Class Action Device is Superior Method of Adjudication ..........15

      3.   No Manageability Issues Preclude Certification ................15

VI.   CLASS COUNSEL SHOULD BE APPOINTED CLASS COUNSEL .........16

VII.  STANDARD FOR PRELIMINARY APPROVAL IS CLEARLY MET ...16

   A.   The Settlement Class Has Been Adequately Represented...........17

   B.   The Settlement Resulted from Arm's Length Negotiations ........17

   C.   The Proposed Settlement is a Reasonable Compromise of Claims ..........18

      1.   Costs, Risks, and Delay Favor this Settlement Agreement ...................19

      2.   The Proposed Method of Relief Distribution is Effective.....................20

      3.   Terms of Proposed Attorney's Fee Award Favor Approval...................21

      4.   Agreement Identification Requirement ..............................22

   D.   Equitable Treatment of Class Members ....................................22

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

ii

E.    Class Service Representative Award Favors Preliminary Approval ..........22

VIII.    NATURE AND METHOD OF CLASS NOTICE .....................................23

IX.    THE COURT SHOULD APPROVE THE PAGA SETTLEMENT ...............23

A.    The PAGA Settlement is Fair, Adequate, and Reasonable .........................23

B.    PAGA Settlement is Procedurally Correct.....................................................24

X.    CONCLUSION.................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Comcast Corp. v. Behrend,*

4

   133 S. Ct. 1426 (2013).........................................................................................15

5

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*

6

   (9th Cir. 2019) 926 F.3d 539..........................................................................14

7

*Grant v. Capital Mgmt. Servs., L.P.,*

8

   2013 WL 6499698, 2 (S.D. Cal. 2013)..............................................................16

9

*Hanlon v. Chrysler Corp.,*

10

   150 F.3d 1011 (9th Cir.1998)................................................................ 13, 15, 17

11

*In re Cellphone Fee Termination Cases,*

12

   186 Cal.App.4th 1380 (2010)..........................................................................22

13

*Jordan v. NCI Grp., Inc.,*

14

   No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, 5 (C.D. Cal.

15

   Jan. 5, 2018)..................................................................................................23

16

*Kaupelis v. Harbor Freight Tools*

17

   (C.D.Cal. Aug. 11, 2021) 2021 U.S.Dist.LEXIS 200690, 19.................... passim

18

*Ketchum v. Moses,*

19

   24 Cal. 4th 1122 (2001) ..................................................................................21

20

*Kim v. Reins Int'l Cal., Inc.,*

21

   9 Cal. 5th 73 (2020)........................................................................................24

22

*Lazarin v. Pro Unlimited, Inc.,*

23

   2013 WL 3541217, 5 (N.D. Cal. 2013) ...........................................................15

24

*Martinez v. Helzberg's Diamond Shops*

25

   (C.D.Cal. Apr. 12, 2021) 2021 U.S.Dist.LEXIS 198531, 19 ............................18

26

*Parrish v. Okonite Co.*

27

   (C.D.Cal. May 24, 2021) 2021 U.S.Dist.LEXIS 233032, 14.............................11

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

iv

*Parsons v. Ryan*,

    754 F.3d 657 (9th Cir. 2014) ................................................................14

*Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.*,

    No. CV 10-1777 AJB (NLSx), 2012 WL 3809123, 1 (S.D. Cal. Sept. 4, 2012)18

*Valentino v. Carter-Wallace, Inc.*,

    97 F.3d 1227 (9th Cir. 1996) ...............................................................15

**Statutes**

Cal. Business & Professions Code §§17200, *et seq.* ........................... 3, 10

Cal. Civil Code §1542 .........................................................................10

Cal. Labor Code §§201 and 203 ..........................................................11

Cal. Labor Code §226 .........................................................................11

Cal. Labor Code §§226.7, 512, and IWC Wage Order No. 5-2001 .....................11

Cal. Labor Code §§2698, et seq. ...........................................................10

Cal. Labor Code §2699(l)(2) ................................................................24

Cal. Labor Code §§2802, 2802.1 and 2804. .............................. 2, 10, 13

Cal. Labor Code §§ 2802.1, 2802, and 2804 ................................. 12, 13

Fed. R. Civ. P. 23 ...................................................................... passim

**Other Authorities**

2 *Newberg on Class Actions* §8.32 at 8-103 ........................................23

## I. **<u>INTRODUCTION</u>**

Plaintiff Jacqui Rum ("Plaintiff") seeks preliminary approval of the Joint Stipulation of Class Action and PAGA Action Settlement ("Settlement Agreement" or "Settlement"). (Decl. Hatcher at ¶9, Ex. 1).[1]

Plaintiff's action seeks to rectify alleged unlawful employee indebtedness of non-exempt registered nurses, in the state of California at HCA Healthcare, Inc.'s ("HCA") California hospital facilities under a program called the Specialty Training Apprenticeship for Registered Nurses ("StaRN Program") during the period of April 19, 2019 to February 1, 2024, ("RNs" or "Settlement Class"). *Rum v. HCA Heathcare, Inc.* (C.D. Cal. Feb. 1, 2024) 2024 U.S.Dist.LEXIS 53269, at *5.

Plaintiff's action alleges that StaRN Program was an employer required/provided training and/or education program that required the Settlement Class members ("SCM") to indemnify Defendants for the costs of the StaRN Program if the SCM did not complete a two-year employment commitment with HCA; Healthtrust Workforce Solutions, LLC ("HWS"); Los Robles Regional Medical Center ("LRRMC"); San Jose Healthcare System, LP d/b/a Regional Medical Center of San Jose ("SJHS"); Good Samaritan Hospital, LP d/b/a Good Samaritan Hospital ("GSH"); West Hills Hospital ("WHH"); and/or Columbia Riverside, Inc. d/b/a Riverside Community Hospital ("RCH") (collectively "Defendants").[2] Plaintiff's Action alleges that when this happened Defendants initiated, or may have requested, via a third party collection agency, repayment of a prorated amount of the $4,000.00 face value cost in the StaRN Promissory Note and/or StaRN Program Agreement as well as threatened potential legal action,

---

[1] This Motion incorporates by reference the definitions in the Settlement Agreement. All defined terms contained herein shall have the same meaning as set forth in the Settlement Agreement.

[2] In connection with the Settlement, the parties stipulated for Plaintiff to file a Second Amended Complaint that included the additional California Facilities for Defendant HCA and a PAGA Cause of Action.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

1

recovery of interest and costs and attorneys' fees incurred with the collection efforts. Plaintiff's action alleges that this violates Labor Code §§2802, 2802.1 and 2804.

In exchange for a narrowly tailored release of claims, pursuant to the Settlement, Participating Settlement Class Members ("PSCM") obtain permanent injunctive relief and restitution: (i) the StaRN Pay Obligations under any StaRN Program Agreement and/or StaRN Promissory Note are null and void; (ii) indemnification by Defendants against StaRN Pay Obligations under any StaRN Program Agreement and/or StaRN Promissory Note; and (iii) 100% restitution of the value of any "repayment" PSCM made for the StaRN Pay Obligations equal to approximately $88,589.25. See (Ex. 1 at ¶¶ 54, 55, 56, 57, 58).

The proposed Settlement provides extraordinary class-wide relief on par with a trial judgment in favor of Plaintiff and the PSCM. The proposed Settlement is fair, reasonable, and adequate given the known facts and circumstances. (Decl. Hatcher ¶¶ 13, 9, 12, 14), (Decl. Rum ¶¶ 14, 18).

Accordingly, the Court should (1) grant preliminary approval of the proposed Settlement; (2) appoint Phoenix Class Action Administration Solutions ("Settlement Administrator") as the Settlement Administrator; (3) provisionally certify the Settlement Class for settlement purposes only; (4) order the mailing of the proposed Notice of Settlement to the Settlement Class; (5) appoint Plaintiff Jacqui Rum, as the Settlement Class Representative; (6) appoint David P. Myers, Jason Hatcher, and Andriana N. Bravo of The Myers Law Group, A.P.C. as Class Counsel for the Settlement Class; and (7) schedule a final approval/fairness hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2023, Plaintiff filed a class action complaint in Ventura County Superior Court against HCA, HWS and LRRMC for violations of Labor Code §§2802, 2802.1 and 2804 based on the failure to indemnify for the StaRN Program and putative class claims against LRRMC for wage and hour violations. See [Dkt. 1-1]. On May 10, 2023, Plaintiff filed a First Amended Complaint to add a cause of

action for a violation of the Fair Labor Standards Act, under FLSA 29 U.S.C. §201, et seq. See [Dkt. 1-4].

In relevant part, Plaintiff's action alleges that Defendants violated California Labor Code §§2802, 2802.1 and 2804, and California Business & Professions Code §§17200, *et seq*. for subjecting the putative class members to payment obligations under the StaRN Program and failing to indemnify the putative class members for the StaRN Program. See [Dkt. 1-4].

On June 28, 2023, Defendants HCA, HWS and LRRMC removed Plaintiff's action on the basis of federal question jurisdiction. [Dkt. 1]. Afterwards, Plaintiff filed a Motion for Preliminary Injunction to Enjoin Debt Collection. [Dkt. 26].

On October 26, 2023, Plaintiff filed a Motion to Certify Class Action to certify the TRAP Debt Class. [Dkt. 42]. Plaintiff did not move to certify the putative class claims against LRRMC for causes of action 2 through 6 – notably the Settlement dismisses these putative class claims without prejudice. [Id.]; (Ex. 1 at ¶85 and 87(j)). On February 1, 2024, this Court granted Plaintiff's Motion to Certify Class Action pursuant to Fed. R. Civ. P. 23(b)(2). [Dkt. 78]; (*Rum v. HCA Heathcare, Inc.* (C.D.Cal. Feb. 1, 2024, No. CV 23-5142-JFW(BFMx)) 2024 U.S.Dist.LEXIS 53269). This action has been heavily contested and litigated—notably, Plaintiff's Motion for Preliminary Injunction [Dkt. 26]; Plaintiff's Motion to Certify Class Action [Dkt. 42]; Defendants HCA, HWS, and LRRMC's Motion for Partial Summary Judgment/Motion to Partially Dismiss [Dkt. 61].

Through this extensive motion practice, formal and informal discovery, Class Counsel were well positioned to evaluate the strengths and vulnerabilities of the claims throughout the settlement negotiations that eventually led to the Settlement Agreement. The parties engaged in private mediation with Hon. Ann I. Jones (Ret.) on April 1, 2024, and at the mediation a settlement in principle was reached through non-collusive, arm's length negotiations, which ultimately resulted in this Settlement. (Decl. Hatcher at ¶9). It is based on the substantial efforts, investigation,

and collaboration of Class Counsel and Plaintiff that the instant Settlement Agreement was reached. (Decl. Hatcher at ¶¶ 8-15).

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

All terms of the settlement are set forth in the Settlement Agreement. (Ex. 1).

### A.    The Class Settlement

#### 1.    The Settlement Class

The Settlement Class consists of:

All current and former non-exempt registered nurses for Defendants, in California, for the period of April 19, 2019 through February 1, 2024, who entered into a StaRN Promissory Note and/or StaRN Program Agreement and whose employment ended prior to the end of the term of service period stipulated in the StaRN Promissory Note and/or StaRN Program Agreement, or who was still employed by a Defendant and within the term of service period as of February 1, 2024. (Ex. 1 at ¶ 40).

#### 2.    PSCM Relief

This Settlement consists of three major relief categories for the PSCM: (i) release of all StaRN Pay Obligations any PSCM may presently have, or previously had, under any StaRN Program Agreement or StaRN Promissory Note via a consent judgment rendering the StaRN Program Agreements and/or StaRN Promissory Notes null and void; (ii) Indemnification of PSCM by Defendants for costs actually incurred under the StaRN Pay Obligations established in the StaRN Program Agreement and StaRN Promissory Note; and (iii) a monetary payment to PSCM who made StaRN Payments.

##### a)    Final Judgment by Consent

With the Entry of Judgment, the Court shall enter and include the Judgment by Consent – Exhibit C to the Settlement. (Ex. 1 at ¶ 15, 55 and Ex. C). The Judgment by Consent is a final determination that 100% of the PSCMs' StaRN Pay Obligations are null and void. (Id.). In addition, the Settlement Administrator shall mail PSCM the Notice of Judgment (Exhibit D), that includes the Judgment by

Consent. (Ex. 1 at ¶ 19, 55 and Ex. D).

### i.    StaRN Pay Obligations are Null and Void

The Settlement and the Final Judgment by Consent provides that:

> any and all repayment provisions for the value of the StaRN Program contained within StaRN Agreements and StaRN Promissory Notes entered into by Plaintiff and/or the Participating Settlement Class Members are null and void in their entirety. This includes, rendering null and void by this Final Judgment by Consent any and all claims, causes of action, any sum of money or property or the equivalent that is due and/or owed or alleged to be due or owed, any contractual sum payable upon a contingency, any repayment of costs as a condition precedent to participation in the StaRN Program, any outstanding balance of principal and interest due or owed or claimed due or claimed owed, repayment obligations, liabilities, demands, obligations, guarantees, litigation costs, litigation expenses, interest, charges, late charges, collection costs, penalties, attorney's fees, damages, fees, and/or contractual payment obligations of Plaintiff and the Participating Settlement Class Members arising under repayment provisions for the value of the StaRN Program contained within the StaRN Program Agreements and/or StaRN Promissory Notes entered into by Plaintiff and/or the Participating Settlement Class Members. (Ex. 1 at Ex. D at ¶ 38).

Defendants (as well as related companies) are permanently enjoined from asserting such claims against the PSCM. (Ex. 1 at Ex. D at ¶¶ 39).

Further, it is the express intent of the Parties that the Judgment by Consent is given preclusive effect against actual or putative entities previously asserting or currently asserting or who assert in the future any and such claims against the PSCM arising from contractual payment obligations of the StaRN Program Agreements and StaRN Promissory Notes entered into by the PSCM. (Ex. 1 at Ex. D at ¶40).

Additionally, it is the express intent of the Parties that the Judgment by Consent renders null and void and unenforceable as a matter of law,

> any and all claims, causes of action, any sum of money or property or the equivalent that is due and/or owed or alleged to be due or owed, any contractual sum payable upon a contingency, any repayment of

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

5

costs as a condition precedent to participation in the StaRN Program, any outstanding balance of principal and interest due or owed or claimed due or claimed owed, repayment obligations, liabilities, demands, obligations, guarantees, litigation costs, litigation expenses, interest, charges, late charges, collection costs, penalties, attorney's fees, damages, fees, and/or contractual payment obligations of Plaintiff and the Participating Settlement Class Members contained in and/or arising under repayment provisions for the value of the StaRN Program contained within the StaRN Program Agreements and StaRN Promissory Notes, entered into by Plaintiff and/or the Participating Settlement Class Members. (Ex. 1 at Ex. D at ¶41).

And, that the Final Judgment by Consent provides the PSCM a complete and total defense to any and all claims against the PSCM arising from contractual payment obligations of the StaRN Program Agreements and StaRN Promissory Notes entered into by the PSCM. (Ex. 1 at Ex. D at ¶42).

### ii.    Indemnification Against StaRN Pay Obligations

The Settlement and the Judgment by Consent provide indemnification of PSCM against the StaRN Pay Obligations, by providing in relevant part:

Defendants, or Defendants' present or future parent companies, shall indemnify, reimburse, defend, and hold harmless Plaintiff and each Participating Settlement Class Member and their respective successors, assigns, and heirs for any and all claims, causes of action, indebtedness, liabilities, demands, obligations, guarantees, financial loss, damage, injury, sanction, judgment, litigation costs, litigation expenses, interest, charges, late charges, collection costs, penalties, reasonable attorney's fees, expert witness fees, investigator fees, court costs, costs and fees associated with arbitration or litigation or mediation, including but not limited to the cost of defense ("Indemnification Costs") that any Participating Settlement Class Member incurs or incurred on or after February 2, 2024 (whether via renewal of prior collection effort(s) or a newly initiated collection effort(s)), directly resulting from collection efforts from Defendants, an HCA-affiliate, any third party collection agency and/or any Released Party against a Participating Settlement Class Member and/or his/her respective successors, assigns, and heirs in connection with the StaRN Payment Obligations. . . (Ex. 1 at ¶13); (Ex. 1 at Ex. D at ¶43).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

6

**b)   StaRN Reimbursement Payments**

Each PSCM, who made StaRN Payments, will receive a StaRN Reimbursement Payment equal to 100% of the value of the PSCM's StaRN Payments from the StaRN Payment Allocation, which in total is approximately $88,589.25. (Ex. 1 at ¶¶ 44, 45, 49, 56). The StaRN Reimbursement Payment to PSCM is equal to the total dollar amount of each PSCM's individual StaRN Payment. (Ex. 1 at ¶ 49, 56). For example, an individual PSCM that paid a total of $2,500.00 as an individual StaRN Payment against that individual PSCM's StaRN Pay Obligation will be paid $2,500.00 under the terms of this Settlement. (Id.).

**3.   Settlement Funds Allocation**

The Settlement allocates payments as follows: (1) StaRN Reimbursement Payment to PSCM from the StaRN Payment Allocation, (2) PAGA Employee Payments, (3) PAGA LWDA Payment, (4) Class Counsel Fees, (5) Class Counsel Expenses, (6) Settlement Administration Costs, and (7) the Representative Service Award. (Ex. 1 at ¶¶ 42, 59-64):

| Settlement Fund | |
|---|---|
| StaRN Payment Allocation (Approximate) | $88,589.25 |
| PAGA Payment to PAGA Employees | $5,000.00 |
| PAGA Payment to LWDA | $15,000.00 |
| Class Counsel Fees | $620,000.00 |
| Class Counsel Litigation Expenses | $15,000.00 |
| Settlement Administration Costs | $35,000.00 |
| Class Representative Service Award | $15,000.00 |

The first cell value is $793,589.25.

The StaRN Reimbursement Payment to PSCM and the PAGA Payment to PAGA Employees shall be allocated as a 1099 payment for business expense reimbursement. The individual PAGA Employee Payments shall be allocated 100% as 1099 payments for civil penalties. (Ex. 1 at ¶ 75). If five percent (5%) or more of the SCM opt out, then Defendants shall have the right, in their sole discretion, to void and revoke the Settlement Agreement and their stipulation to the settlement class certification. (Ex. 1 at 69(e)).

**B.    PAGA Allocation**

The Settlement allocates $20,000 to the PAGA Payment. (Ex. 1 at ¶ 21). The PAGA Payment results in 75% (or $15,000) paid to the California Labor & Workforce Development Agency ("LWDA"). (Id.). The remaining 25% (or $5,000) will be paid to the PAGA Employees. (Id.). The PAGA Employee Payment for the individual PAGA Employees will be calculated on a pro rata basis. (Id.) The PAGA Employee Payment for the individual PAGA Employees shall be calculated by dividing Five Thousand Dollars and Zeo Cents ($5,000) by the total number of PAGA Employees during the PAGA Period. (Id. at ¶¶ 21, 63, 74). The SAC contains a PAGA cause of action based on violation of Labor Code §§ 2802, 2802.1 and 2804 pursuant to Plaintiff's April 21, 2023, LWDA Notice. (Ex. 1 at Ex. B); (Decl. Hatcher ¶18 at Ex. 2).

**C.    Proposed Notices to the Settlement Class**

**1.    Notice of Settlement**

All SCM will be mailed a Notice of Settlement that includes, but is not limited to, information regarding the nature of the litigation; a summary of the terms of the Settlement Agreement; the definitions of the Settlement Class; the projected cost for administration of the settlement; information regarding the Settlement Class Member's Relief, including (i) release of all StaRN Pay Obligations the Settlement Class Member may presently have, or previously had, under any StaRN Program Agreement or StaRN Promissory Note, (ii) the Settlement Class Member's StaRN Payment amount (*applicable to SCM who made StaRN Payments*) and the formula for calculating the Settlement Class Member's StaRN Payment amount, and (iii) Indemnification of the Settlement Class Member; the Settlement Class Member's PAGA Employee Payment amount; the formula for calculating the Settlement Class Member's PAGA Employee amount; the dates of the Class Period; the dates of the PAGA Period; instructions for requesting exclusion from or objecting to the settlement, as well as the deadlines by which SCM must postmark such requests or

objections; the date, time and location of the Final Approval/Fairness Hearing; and the claims to be released by the PSCM. (Ex. 1 at Exhibit A); (Ex. 1 at ¶¶ 18, 67-74).

### 2.  Notice of Judgment and Indemnification

At the time of distribution, approximately 31 days after the Effective Date, all PSCM will receive a copy of the Notice of Judgment and Indemnification that: (1) confirms that Judgment was entered in their favor, (2) advises the PSCM to retain the notice and attached Final Judgment for their records and any future use, and (3) recapping the permanent injunctive relief obtained in the Settlement—i.e. (i) the StaRN Promissory Note and StaRN Program Agreement are null and void and (ii) indemnification against the StaRN Program. (Ex. 1 at ¶¶ 19 and Ex. D).

### D.    Proposed Release of Claims

#### 1.    Released Parties

The Settlement defines the Released Parties as:

> Defendants and each of their past, present and future agents, employees, servants, officers, directors, managing agents, members, owners (whether direct or indirect), partners, trustees, representatives, shareholders, stockholders, attorneys, parents, subsidiaries, equity sponsors, related or affiliated companies, corporations, and/or partnerships, divisions, assigns, predecessors, successors, affiliates, actual or alleged alter-egos, insurers, reinsurers, payroll agencies, joint venturers, Benefit Recovery Group ("BRG") and any affiliate or successor of BRG, third party collection agencies, actual or alleged joint employers of PSCM, actual or alleged common law employers of PSCM, actual or alleged dual employers of PSCM, actual or alleged co-employers of PSCM, any person and/or entity with potential or alleged to have joint liability based on the claims in the Second Amended Complaint, and all of their respective past, present and future employees, directors, officers, members, owners, agents, representatives, attorneys, stockholders, fiduciaries, parents, subsidiaries, and any and all persons and/or entities acting under, by, through or in concert with any of them. (Ex. 1 at ¶ 34).

#### 2.    Release of Class Claims by Participating Class Members

The PSCM will release the Released Parties of the following:

> any and all claims, causes of action, debts, liabilities, demands,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

9

obligations, guarantees, litigation costs, litigation expenses, interest, charges, costs, attorney's fees, damages, and allegations in the Second Amended Complaint for the First Cause of Action under Labor Code §§ 2802, 2802.1, and 2804 and Sixth Cause of Action under Business and Professions Code §§ 17200, et seq. by the Participating Settlement Class Members against the Released Parties and all potential claims against the Released Parties reasonably arising from or reasonably related to the facts and claims alleged in the Second Amended Complaint for the Settlement Class Period of April 19, 2019 to February 1, 2024. (Ex. 1 at ¶ 27)

### 3. Release of PAGA Claims

The PAGA Employees will release the Released Parties of the following:

any and all claims, causes of action, liabilities, demands, obligations, litigation costs, litigation expenses, interest, charges, costs, attorney's fees for civil penalties: under the California Private Attorneys General Act of 2004, Labor Code §§2698, et seq. as alleged (asserted) in the Eighth Cause of Action in the Second Amended Complaint for the PAGA Period against the Released Parties, and claims against the Released Parties reasonably arising from or reasonably related to the facts and claims alleged in the Second Amended Complaint, and the alleged violations of Labor Code §§ 2802, 2802.1, and 2804 in the LWDA Notice, or that could have been reasonably raised based on the facts and claims in the Second Amended Complaint or that could have been reasonably raised based on the facts and claims alleging violations of Labor Code §§ 2802, 2802.1 and 2804 in the LWDA Notice. (Ex. 1 at ¶ 25).

The PAGA release is narrowly tailored to the allegations based on Labor Code §§2802, 2802.1 and 2804.

### 4. Plaintiff Jacqui Rum's Release

Plaintiff, and only Plaintiff, is executing a general release of claims that includes a Civil Code §1542 release. (Ex. 1 at ¶ 66).

### 5. Dismissal of Putative Class Claims Without Prejudice

Further, any remaining putative class claims from the First Amended Complaint against Defendant LRRMC alleged in the Second Cause of Action under

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

10

Labor Code §§226.7, 512, and IWC Wage Order No. 5-2001; Third Cause of Action under Labor Code §§226.7, 512, and IWC Wage Order No. 5-2001; Fourth Cause of Action under Labor Code §226; and Fifth Cause of Action under Labor Code §§201 and 203 will be dismissed without prejudice. (Ex. 1 at ¶ 84).[3]

### E. Second Amended Complaint

Under the Settlement, the Parties have stipulated to the filing of a Second Amended Complaint ("SAC") for Settlement purposes. (Ex. 1 at ¶¶ 7, 36).

## IV. CERTIFICATION OF THE TRAP DEBT CLASS

This Court already ruled that the TRAP Debt Class met the requirements of Rule 23(a) and 23(b)(2). [Dkt. 78]. The proposed Settlement Class is substantially similar noting that the Settlement Class definition includes the other HCA California Facility hospitals: SJHS; GSH; WHH; and RCH. (Ex. 1 at ¶¶ 9, 36, 40); [Dkt. 42]; [Dkt. 78].

## V. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

All of the requirements of Rule 23(a) and Rule 23(b) are met here to certify the Settlement Class for purposes of the Settlement. Rule 23(e).

### A. Rule 23(a) Met

#### 1. Numerosity is Satisfied

Rule 23(a)(1) numerosity is met as there are approximately 1,416 SCM. (Decl. Hatcher at ¶8). This is sufficiently numerous. *Parrish v. Okonite Co.* (C.D.Cal. May 24, 2021) 2021 U.S.Dist.LEXIS 233032, at *14 (class list indicating 239 employees easily satisfied numerosity).

---

[3] Plaintiff notes there is a class action settlement from the *Dubinksi v. Los Robles Regional Medical Center, LLC, et al.* (Ventura County Superior Court Case No. 56-2021-00557490-CU-OE-VTA) and *Witt v. v. Los Robles Regional Medical Center, LLC* (Ventura County Superior Court Case No. 56-2021-00550079-CU-OE-VTA) actions that overlaps with these putative class claims against LRRMC that are to be dismissed in this Settlement without prejudice.

### 2.    Commonality is Satisfied

The commonality requirement is satisfied "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). All that Rule 23(a)(2) requires is a single significant question of law or fact. *Abdullah v. U.S. Security Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). Here, there are common questions of law and fact as to the Settlement Class which predominate over questions affecting only individual members, including, without limitation, to:

(1)    Whether or not the StaRN Program is an employer-provided or employer-required educational program or training for an employee providing direct patient care," see Cal. Labor Code § 2802.1(a)(1); and

(2)    Whether or not the StaRN Program qualifies as a "requirement[ ] for a license, registration, or certification necessary to legally practice in a specific employee classification to provide direct patient care," see Cal. Labor Code § 2802.1(a)(2)(A); and

(3)    Whether or not the provisions of the StaRN Program Agreement and StaRN Promissory Note violate California Labor Code §§ 2802(a), 2802.1(a)(1), and 2804. [Dkt. 78].

Plaintiff's claims are predicated on allegations of a uniform and common policy and practice requiring the SCM to participate in the StaRN Program as a condition of employment, which included signing the StaRN Program Agreement and StaRN Promissory Note, which uniformly required employees to compensate the facility for the "value" of the StaRN Program in a prorated amount up to $4,000 if they did not complete their two-year employment commitment. See [Dkt. 42]; [Dkt. 78]. Commonality predominates and is satisfied.

### 3.    Typicality is Satisfied

Typicality exists when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be

substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). Here, Plaintiff's claims are identical to or sufficiently co-extensive of the claims of the Settlement Class. The SCM have the same alleged injury caused by the same alleged course of conduct: incurring debt from the StaRN Promissory Note and StaRN Program Agreement as a condition of employment for employer-provided or employer-required training and education in violation of Cal. Labor Code §§ 2802.1, 2802, and 2804. See [Dkt. 42]; [Dkt. 78]; (Decl. Rum at ¶¶2-6); [Dkt. 32-2]. Accordingly, this is satisfactory to meet the typicality requirement.

### 4. Adequacy Requirements are Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020 (9th Cir. 1998).

This Court has already ruled that Class Counsel and Plaintiff are adequate. [Dkt. 78]. There are no circumstances to change that prior determination. Plaintiff Rum does not have any conflict of interest and has vigorously prosecuted this action. (Decl. Rum at ¶¶ 9-12). Class Counsel is experienced in wage and hour class litigation and has successfully litigated numerous class actions and complex cases. (Decl. Hatcher at ¶¶ 2-7). Further, there is no conflicting interest of Class Counsel. Class Counsel relied on this extensive experience when negotiating the proposed settlement, and throughout the duration of the litigation, and has vigorously prosecuted this action. (Decl. Hatcher at ¶¶ 9-10); See also [Dkts. 26, 42, 64, 78]; *Rum,* 2024 U.S.Dist.LEXIS 53269, at *20. Based on the foregoing, Class Counsel should be deemed adequate for purposes of Rule 23(a)(4). Adequacy is met.

///

///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

13

**B.    The Rule 23(b)(2) and (3) Standards Are Satisfied**

**1.  Rule 23(b)(2) Requirement is Met**

Pursuant to Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). The Court already ruled that Rule 23(b) has been met. [Dkt. 78]. The addition of the other California Facilities does not affect this ruling. These facilities were added to ensure a comprehensive Judgment by Consent that nullifies the StaRN Pay Obligations and provides indemnification of the PSCM as Defendants represent that the California Facilities are the "Holders" of the StaRN Promissory Notes. The StaRN Program, StaRN Program Agreement and StaRN Promissory Note were common across all California HCA Facilities. See [Dkt. 42]; [Dkt. 78]. Rule 23(b)(2) is satisfied.

**2.  Rule 23(b)(3) Requirements Met**

**a)  Common Issues Predominate**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Will Kaupelis v. Harbor Freight Tools* (C.D.Cal. Aug. 11, 2021) 2021 U.S.Dist.LEXIS 200690, at *19-20. The aspects of Rule 23(a) and (b) that are important to certifying a settlement class are 'those designed to protect absentees by blocking unwarranted or overbroad class definitions. *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)* (9th Cir. 2019) 926 F.3d 539, 558.

Predominance is present for the proposed Settlement Class in this case. As shown supra, under the Commonality section, the common issues of law and fact predominate over any individual questions. There are no material conflicts among

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

14

the SCM that would disrupt predominance of the Settlement Class or that the Settlement Class definition is overbroad. *Kaupelis,* 2021 U.S.Dist.LEXIS 200690, at *20. Predominance is satisfied.

### b) Class Action Device is Superior Method of Adjudication

"A class action is the superior method for managing litigation if no realistic alternative exists." *Kaupelis,* 2021 U.S.Dist.LEXIS 200690, at *21*; citing Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). This requires a comparative evaluation of alternative mechanisms of dispute resolution. *Id.* The Settlement's injunctive relief falls under Rule 23(b)(2). Superiority is met for the restitution aspect of the Settlement as the face value exposure of each StaRN Promissory Note is only $4,000.00 and the total amount of "repayments" by SCM for the StaRN Program is only approximately $88,589.25.[4] Given the individual exposure value a class action would be a superior means of resolving this action than individual suits. Certification of the Settlement Class will allow the SCM to fairly, adequately, and efficiently resolve these issues to a degree that no other mechanism or forum would provide. The alternative methods of resolution would be individual claims for a relatively small amount of damages through small claims courts or collections process. *Kaupelis,* 2021 U.S.Dist.LEXIS 200690, at *21; *citing Hanlon*, 150 F. 3d at 1019-20.

### 3. No Manageability Issues Preclude Certification

Finally, no issues of manageability preclude certification of the Settlement Class. A court faced with a request for a settlement-only class like this one need not inquire whether the case would present intractable problems of trial management, even though other requirements under Rule 23 must still be satisfied. See, e.g., *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *5 (N.D. Cal. 2013). Moreover,

---

[4] HWS' verified supplemental response to Plaintiff's Special Interrogatory No. 6 provided that only approximately 28 individuals made "repayments" on the StaRN Program which is an average of $3,163.90 per individual.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

15

the proposed plan of distribution and settlement process are efficient and manageable. Thus, the Court should certify the Settlement Class.

## VI.    CLASS COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Class Counsel meet all of the Rule 23(g) requirements. Federal Rule of Civil Procedure 23(g) requires that courts consider the following four factors when appointing settlement class counsel: (1) whether counsel has investigated the class claims; (2) whether counsel is experienced in handling class actions and complex litigation; (3) whether counsel is knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate resources to representing the class. *See Grant v. Capital Mgmt. Servs., L.P.*, 2013 WL 6499698, *2-3 (S.D. Cal. 2013).

This Court has previously appointed David P. Myers, Jason Hatcher, and Andriana Bravo of The Myers Law Group, A.P.C. as Class Counsel, in its certification order of the TRAP Debt Class as no circumstances exist to change this. [Dkt. 78]. Class Counsel have vigorously and comprehensively investigated the class claims and litigated the class claims. (Decl. Hatcher at ¶¶ 8-15); See also [Dkts. 26, 42, 64, 78]. Moreover, the breadth and strength of the Settlement in providing the PSCM permanent injunctive relief, restitution, and systemic employment changes only further supports the appointment of Class Counsel. Class Counsel have prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. (Decl. Hatcher ¶¶ 2-7, 15). Proposed Class Counsel are experienced and knowledgeable regarding complex wage and hour class actions like this one. (Decl. Hatcher ¶¶ 2-7, 15). Proposed Class Counsel have committed and will continue to commit adequate resources to representing the Settlement Class. Class Counsel is appropriate.

## VII.    STANDARD FOR PRELIMINARY APPROVAL IS CLEARLY MET

Under Rule 23(e)(2) if the proposed settlement would bind class members,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

16

the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate. *Kaupelis*, 2021 U.S.Dist.LEXIS 200690, at *21-22. The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon,* 150 F.3d at 1026. The Court must consider the following factors: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *Kaupelis*, 2021 U.S.Dist.LEXIS 200690, at *21-22; citing Rule 23(e)(2).

## A.    The Settlement Class Has Been Adequately Represented

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class. There certainly has been adequate representation by the Plaintiff and Class Counsel in this case. This action has been heavily contested and litigated. (Decl. Hatcher at ¶9); See also [Dkts. 26, 42, 64, 78]. Adequate representation is demonstrated for this Settlement. *Kaupelis*, 2021 U.S.Dist.LEXIS 200690, at *23.

## B.    The Settlement Resulted from Arm's Length Negotiations

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." *Kaupelis*, 2021 U.S.Dist.LEXIS 200690, at *23-24; citing Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

17

The Settlement derives from non-collusive, arm's length negotiations that included well known and experienced private employment law mediator – Hon. Ann I. Jones (Ret.) – after a highly contested litigation. (Decl. Hatcher ¶¶ 8-15); [Dkts. 26, 42, 64, 78]. A settlement in principle was reached at mediation with Hon. Ann I. Jones (Ret.), and the parties' post-mediation negotiations for the long form settlement agreement were non-collusive and arm's length – that even included a further secondary session with Hon. Ann I. Jones (Ret.). (Id.). Plaintiff and Class Counsel stood steadfast in negotiating this settlement for over a year to obtain a broad and comprehensive permanent injunctive relief for the Settlement Class. *See Martinez v. Helzberg's Diamond Shops* (C.D.Cal. Apr. 12, 2021) 2021 U.S.Dist.LEXIS 198531, at *19; *citing Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.*, No. CV 10-1777 AJB (NLSx), 2012 WL 3809123, at *1 (S.D. Cal. Sept. 4, 2012) (granting preliminary approval of a class action settlement where the parties engaged in extensive negotiations). The proposed Settlement derives from extensive litigation, formal and informal discovery, use of a well-known neutral mediator, and the product of non-collusive, arm's-length negotiations. (Decl. Hatcher at ¶¶ 8-15); *See Martinez*, 2021 U.S.Dist.LEXIS 198531, at *19-21.

## C. The Proposed Settlement is a Reasonable Compromise of Claims

The proposed Settlement yields results for the PSCM on par with a trial judgment in favor of the PSCM. Accordingly, the proposed Settlement is a reasonable compromise of the claims under the third factor which considers whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." *Kaupelis*, 2021 U.S.Dist.LEXIS 200690, at *23-24; citing Fed. R.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

18

Civ. P. 23(e)(2)(C), Advisory Committee Notes.

The proposed Settlement provides nearly an identical result to a trial judgment in favor of Plaintiff and the PSCM. Accordingly, alleviating the risk of a trial judgment for nearly the same result establishes that the Settlement is a reasonable compromise of the claims.

### 1. Costs, Risks, and Delay Favor this Settlement Agreement

This subfactor favors approval of this proposed Settlement as it alleviates inevitable costs, high risks, and delays for an almost identical result of a trial judgment in favor of Plaintiff and the PSCM. (Decl. Hatcher at ¶13). Proceeding in this litigation in the absence of this Settlement poses various risks such as losing at trial or on appeal. (Decl. Hatcher ¶¶ 8-15). The Settlement is an excellent result in light of the costs, risks, and delays of proceeding to trial.

Plaintiff and Class Counsel believe that the Settlement provides fair, reasonable, and adequate recovery for the Settlement Class based on the claims asserted and the evidence developed and what might be proven by Plaintiff and the Settlement Class in the Action. Plaintiff and Class Counsel further recognize and acknowledge the expense and time of prosecuting the Action through trial and appeal. Plaintiff and Class Counsel also have considered the uncertain outcome and the risk of any litigation, including the risk that, despite the class certification order of the TRAP Debt Class, no relief may be obtained in this Action, especially in a complex action such as this one, as well as the difficulties and delays inherent in any complex litigation. Plaintiff and Class Counsel secured a fair, reasonable, and adequate settlement for the Settlement Class Period. (Decl. Hatcher ¶¶ 13, 9, 12, 14), (Decl. Rum ¶¶ 14, 18).

The Settlement provides (i) 100% reimbursement to any PSCM who made "repayments" on the StaRN Pay Obligations, (ii) permanent injunctive relief against any and all claims against the PSCM based on the StaRN Program Agreement and StaRN Promissory Note in the form of making the same null and void, and (iii)

permanent injunctive relief in the form of indemnification against the same. (Ex. 1 at ¶¶ 13, 15, 19, 44, 45, 49, 55, 56); (Ex. 1 at Ex. D).

The Settlement yields a substantial outcome for the PSCM, in consideration of the costs, risks, and delay that comes with the continued litigation of alleged violations for the failure to indemnify necessary expenditures. (Decl. Hatcher at ¶¶ 8-15). Especially, when the proposed Settlement provides nearly an identical result to a trial judgment in favor of Plaintiff and the PSCM. This release is narrowly tailored, fair, reasonable and adequate compared to the significant permanent recovery for the PSCM: (i) release of all StaRN Pay Obligations the PSCM may presently have, or previously had, under any StaRN Program Agreement or StaRN Promissory Note; (ii) a monetary payment (*if applicable*) to the PSCM who made StaRN Payments; and (iii) Indemnification of the PSCM. (Ex. 1 at ¶¶ 13, 15, 19, 44, 45, 49, 55, 56); (Ex. 1 at Ex. D).

This is an excellent result in light of the costs, risks, and delays of proceeding to trial. Simply put, the Settlement yields results in favor of the PSCM that are nearly identical to a trial judgment in favor of the PSCM and Plaintiff. This is a fair, reasonable, and adequate recovery for the Settlement Class. (Decl. Hatcher ¶¶ 13, 9, 12, 14), (Decl. Rum ¶¶ 14, 18).

## 2. The Proposed Method of Relief Distribution is Effective

PSCM will receive (i) Notice of Judgment in their favor that includes a copy of the Judgment by Consent detailing the permanent injunctive relief that renders the StaRN Pay Obligations null and void and indemnification, and (ii) 100% reimbursement for an PSCM who made a StaRN Program "repayment". (Ex. 1 at ¶¶ 54, 55, 56, 57, 58); (Ex. 1 at ¶ 19, 55 and Exhibit D). The Notice of Judgment is an effective method to advise the PSCM that Judgment was entered that establishes (i) any StaRN Pay Obligations are null and void; and (ii) indemnification by Defendants for the PSCM.  And the distribution of reimbursement payments to the PSCM whom made StaRN Obligation Payments through the Administrator is an

effective way to disburse payments.

### 3. Terms of Proposed Attorney's Fee Award Favor Approval

The allocation of the attorney fee award is fair, reasonable and adequate both under the value of the injunctive relief and Class Counsel's lodestar. *First,* at half the $4,000.00 face value of the StaRN Pay Obligations (which does not take into consideration costs, penalties, interest, etc.), the estimated value of the injunctive relief is $2,832,000.00 (i.e. approx. $2,000.00 per class member, with a class size of 1,416). The proposed Settlement's $620,000.00 fee allocation is less than the 25% benchmark of the discounted estimated injunctive relief value.

*Second,* as of May 28, 2025, Class Counsel's lodestar, based on attorney recorded time and applicable rates and not including paralegal time, was $525,987.50. Thus, not taking into account the future time Class Counsel will spend on this action through the notice period and final approval motions, this is only a 1.18 multiplier for the $620,000.00 fee allocation. It is appropriate for the Court to apply a positive multiplier when the factors demonstrate (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). Plaintiff's motion for attorney fees will be supported by the lodestar method, and will seek compensation for Class Counsel's fees based on the agreed allocation under the Settlement, and a showing that any positive multiplier is justifiable. The Settlement's allocation for Class Counsel's Fees is fair, reasonable, adequate, and weighs in favor of preliminary approval. (Decl. Hatcher at ¶17); (Decl. Rum at ¶17).

Additionally, Class Counsel will also only seek reimbursement of actual litigation costs incurred up to a maximum of $15,000.00. These out-of-pocket costs allocation for the litigation of the action is fair, reasonable and adequate. Class Counsel will provide the final exact cost reimbursement as part of the final approval

process that will be supported by documentation of costs incurred. (Decl. Hatcher at ¶17); (Decl. Rum at ¶17).

### 4. Agreement Identification Requirement

This proposed Settlement Agreement is the entire proposed Settlement Agreement for the class claims at-issue in this case.

### D. Equitable Treatment of Class Members

As shown supra, the Settlement "treats class members equitably relative to each other" by providing equal relief to the SCM, in the release of all StaRN Pay Obligations the PSCM may presently have, or previously had, under any StaRN Program Agreement or StaRN Promissory Note and Indemnification of the PSCM. Fed. R. Civ. P. 23(e)(2)(D). And the appropriate tailoring of restitutionary relief as the monetary payments are apportioned to the PSCM who made "repayments" on the StaRN Program during the Settlement Class Period. (Ex. 1 at ¶¶ 54, 55, 56, 57, 58). This factor weighs in favor of approval.

### E. Class Service Representative Award Favors Preliminary Approval

Plaintiff will apply for a Representative Service Award at the time of seeking final approval of the proposed Settlement for $15,000.00. (Ex. 1 at ¶32). "[I]ncentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *In re Cellphone Fee Termination Cases,* 186 Cal.App.4th 1380, 1393-94 (2010). As will be fully briefed at the time of final approval, Plaintiff's requested Service Award is intended to recognize the time and effort Plaintiff expended on behalf of the Settlement Class, including providing substantial factual information and documents to Class Counsel, discussing the claims and theories at issue in the litigation, actively participating in the prosecution and litigation of their claims, obtaining critical pieces of evidence, as well as the significant risks Plaintiff undertook by agreeing to serve as the named

plaintiff in this case, and the fact that Plaintiffs agreed to a general release of all claims subject to a waiver of Civil Code § 1542. (Ex. 1 at ¶¶ 32, 66); (Decl. Hatcher at ¶16); (Decl. Rum at ¶16); [Dkt. 42-2].

## VIII.    NATURE AND METHOD OF CLASS NOTICE

The notice of the Settlement meets the requirement of Rule 23(c)(2). The proposed Notice of Settlement informs the Settlement Class of information regarding the nature of the litigation; a summary of the terms of the Settlement Agreement; the definitions of the Settlement Class; the projected cost for administration of the settlement; information regarding the Settlement Class Member's Relief; the dates of the Settlement Class Period; instructions for requesting exclusion from or objecting to the settlement, as well as the deadlines by which SCM must postmark such requests or objections; the date, time and location of the Final Approval/Fairness Hearing; and the claims to be released by the Settlement Class Member. (Ex. 1 at Exhibit A); (Ex. 1 at ¶¶ 18, 67-74). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Newberg, 2 *Newberg on Class Actions* §8.32 at 8-103.

## IX.    THE COURT SHOULD APPROVE THE PAGA SETTLEMENT

### A.    The PAGA Settlement is Fair, Adequate, and Reasonable

Courts will approve a PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. *Jordan v. NCI Grp., Inc.*, No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018). The proposed settlement allocates $20,000 for civil penalties pursuant to PAGA, with seventy-five percent (75%) of the allocation to be paid to the LWDA. (Ex. 1 at ¶¶ 17, 21). The $20,000 PAGA allocation is an exceptional outcome in light of all known facts and circumstances as well as the fact that civil penalties under PAGA are discretionary. "Relief under PAGA is designed primarily to benefit the general public, not the

party bringing the action." *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 81 (2020). The PAGA Settlement strikes a balance between the interest of all the parties, including the LWDA and general public, while penalizing the employers and providing relief to the aggrieved employees and the SCM.

### B.    PAGA Settlement is Procedurally Correct

Contemporaneously to the filing of this Motion, Class Counsel shall submit the proposed settlement to the LWDA pursuant to Labor Code §2699(l)(2). Also, the Notice effectively informs the SCM that even if they opt out of the class Settlement, they will not be opted out of the PAGA settlement and still be bound by the PAGA Release.

## X.    CONCLUSION

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement and enter the proposed Preliminary Approval Order submitted herewith, set the hearing for the final approval motions for October 13, 2025, and for such additional relief as this Court should deem proper.

Date: May 29, 2025                    Respectfully submitted,
                                      **THE MYERS LAW GROUP, A.P.C.**


                                      By:  /s/Jason Hatcher
                                          David P. Myers,
                                          Jason Hatcher,
                                          Andriana N. Bravo,
                                          Attorneys for Plaintiff and all others
                                          similarly situated