David P. Myers (SBN 206137)
dmyers@myerslawgroup.com
Jason Hatcher (SBN 285481)
jhatcher@myerslawgroup.com
Andriana N. Bravo (SBN 349191)
abravo@myerslawgroup.com
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Plaintiff JACQUI RUM, and all others similarly situated.

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACQUI RUM, on behalf of herself and all others similarly situated<br><br>PLAINTIFF,<br><br>v.<br><br>HCA HEALTHCARE, INC., a Delaware Corporation; HEALTHTRUST WORKFORCE SOLUTIONS, LLC, a Tennessee Limited Liability Company; LOS ROBLES REGIONAL MEDICAL CENTER, a California Corporation; and DOES 1 through 100, inclusive<br><br>DEFENDANTS. | Case No. 2:23-CV-05142-JFW(BFMx)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT**<br><br>Judge: Hon. John F. Walter<br>Courtroom: 7A<br>Date: June 30, 2025<br>Time: 1:30 pm<br><br>Complaint Filed: April 19, 2023<br>FAC Filed: May 10, 2023 |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................ 1

II. PLAINTIFF'S MOTION SHOULD BE GRANTED, THE CLASS SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ........................................ 1

A. Rule 23(e)(2)(A) Has Been Established ........................................ 2

B. Rule 23(e)(2)(B) Has Been Established ........................................ 2

C. Rule 23(e)(2)(C)(i) Has Been Established ........................................ 3

D. The Settlement Satisfies Rule 23(e)(2)(C)(ii)-(iv) ........................................ 5

1. Rule 23(e)(2)(C)(ii): Process and Distribution of Relief Effective .......... 5

2. Rule 23(e)(2)(C)(iii): Attorney Fee Provision ........................................ 6

a) Fees Authorized by Labor Code §§2802 and 2802.1 ........................................ 6

b) Fee Allocation Fair, Adequate and Reasonable ........................................ 6

i. Proportionality Analysis Does Not Weigh Against Approval of the Settlement ........................................ 8

ii. "Clear Sailing" Warning Sign Does Not Weigh Against Approval of the Settlement ........................................ 13

iii. Reversion Analysis Does Not Weigh Against Approval ................. 14

3. Rule 23(e)(2)(C)(iii): Identifiable Agreements ........................................ 15

E. Rule 23(e)(2)(D) Has Been Established ........................................ 15

F. Rule 23(e)(5) Satisfied ........................................ 15

III. PLAINTIFF'S MOTION SHOULD BE GRANTED, THE PAGA SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ........................................ 16

A. Notice Provided to the LWDA ........................................ 17

B. PAGA Settlement is Genuine and Meaningful ........................................17

IV. CONCLUSION ........................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Aarons v. BMW of N. Am.*,
2014 U.S. Dist. LEXIS 118442, 2014 WL 4090564, 12 (C.D. Cal. Apr. 29, 2014) .......... 3

*Alvarez v. City of Oxnard*
(C.D.Cal. Mar. 20, 2023, No. CV 19-8044 PSG (JCx)) 2023 U.S.Dist.LEXIS 242920, 13 .......... 3

*Brinseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) .......... 6

*Campbell v. Facebook, Inc.* (9th Cir. 2020) 951 F.3d 1106, fn. 14 .......... passim

*Delarosa v. Boiron, Inc.*
(C.D.Cal. 2011) 275 F.R.D. 582 .......... 8

*Farley v. Lincoln Ben. Life Co.*
(E.D.Cal. Apr. 18, 2023) 2023 U.S.Dist.LEXIS 68482 .......... 8

*Garcia v. Harborstone Credit Union*
(W.D.Wash. Nov. 9, 2023, No. 3:21-cv-05148-LK) 2023 U.S.Dist.LEXIS 201873, 24 .......... 9, 14

*In re Stable Rd. Acquisition Corp. Sec. Litig.*
(C.D.Cal. Apr. 23, 2024, No. 2:21-CV-5744-JFW(SHKx)) 2024 U.S.Dist.LEXIS 237260, 17 .......... 2

*Jones v. GN Netcom, Inc.*
*(In re Bluetooth)* (9th Cir. 2011) 654 F.3d 935 .......... 6, 7, 8, 13

*Jordan v. NCI Grp., Inc.*,
No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, 5 (C.D. Cal. Jan. 5, 2018) .......... 18

*Juarez v. Soc. Fin., Inc.*
(N.D.Cal. June 8, 2023, No. 20-cv-03386-HSG) 2023 U.S.Dist.LEXIS 100118 ....9

*Kim v. Reins Int'l Cal., Inc.*,
9 Cal. 5th 73 (2020) ....18

*Lee v. Great Am. Life Ins. Co.*
(C.D.Cal. 2024) 745 F. Supp. 3d 1006 ....7

*Perchlak v. Liddle & Liddle*
(C.D.Cal. July 16, 2021, No. CV 19-9461-JFW(AFMx)) 2021 U.S.Dist.LEXIS 202230, 21 ....6, 14

*Robinson v. Southern Counties Oil Co.*
(2020) 53 Cal.App.5th 476 ....16

*Toomey v. Arizona*
(D.Ariz. Sep. 28, 2023, No. CV-19-00035-TUC-RM (MAA)) 2023 U.S.Dist.LEXIS 175069, 17 ....14

*Trujillo v. Airport Terminal Servs., Inc.*
(C.D. Cal. Oct. 21, 2021) 2021 U.S.Dist.LEXIS 203569, 3 .... 16, 18

*Weinberger v. Great N. NekoosaCorp.*,
925 F.2d 518 (1st Cir. 1991) ....13

**Statutes**

Fed. R. Civ. P. 23 .... passim

Labor Code § 2804 ....11, 17, 18

Labor Code § 2802.1 .... passim

Labor Code § 2699 .... 16, 17, 18

Labor Code § 2802 .... passim

## I. INTRODUCTION

Plaintiff Jacqui Rum's ("Plaintiff") Motion for Preliminary Approval of the Joint Stipulation of Class Action and PAGA Action Settlement ("Settlement Agreement" or "Settlement"), ("Motion") is unopposed and no objection has been filed against the same. *See* [Dkt. 89 and Dkt.].

As evidenced in the moving papers, the proposed Settlement provides extraordinary relief and results that are on par with a trial judgment in favor of Plaintiff, the Participating Settlement Class Members ("PSCM"), and the PAGA Employees. The Court should GRANT Plaintiff's Motion, and issue order that the notice of settlement be distributed, as the Settlement is fair, reasonable and adequate.

## II. PLAINTIFF'S MOTION SHOULD BE GRANTED, THE CLASS SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The proposed class Settlement provides substantial relief and results in exchange for a narrowly tailored release of claims. The Settlement provides PSCM permanent injunctive relief, declaratory relief, and restitution (where applicable). [Dkt. 89-1 at ECF 10:14-13:9; 25:25-26:18]; [Dkt. 89-3 at ¶¶ 13, 15, 19, 44-49, 52-57, Ex. C, and Ex. D]. The Settlement is fair, reasonable and adequate and meets the standards for preliminary approval under Rule 23(e).

The Settlement provides PSCM nearly identical relief as a trial judgment in favor of the PSCM. *First,* the StaRN Pay Obligations under any StaRN Program Agreement and/or StaRN Promissory Note are null and void. [Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]. *Second,* the Settlement provides indemnification by Defendants against StaRN Pay Obligations under any StaRN Program Agreement and/or StaRN Promissory Note. [Dkt. 89-3 at ¶¶ 13, 57]; [Dkt. 89-3 at Ex. C ¶43 (ECF pgs. 93-94]; [89-3 at Ex. C [Proposed] Judgment ¶5 (ECF pg. 102-103)]; [Dkt. 89-3 at Ex. D]. *Third,* 100% restitution of

the value of any "repayment" PSCM made for the StaRN Pay Obligations equal to approximately $88,589.25. See [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D].

**A. Rule 23(e)(2)(A) Has Been Established**

As shown in the moving papers, Class Representative and Class Counsel adequately represented the Settlement Class both during the litigation of this action and its settlement. *See* [Dkt. 89-1 at ECF 17:15-21]; *In re Stable Rd. Acquisition Corp. Sec. Litig.* (C.D.Cal. Apr. 23, 2024, No. 2:21-CV-5744-JFW(SHKx)) 2024 U.S.Dist.LEXIS 237260, at *17-18. This includes the Settlement obtaining significant permanent injunctive and declaratory relief and 100% restitution for StaRN Payments. [Dkt. 89-3 at ¶54].[1]

**B. Rule 23(e)(2)(B) Has Been Established**

As shown in the moving papers, the Settlement is the result of arm's length negotiations through a full day of mediation with the Hon. Ann I. Jones, a wage and hour experienced retired judge (from the Los Angeles Superior Court Complex Civil Litigation Program and mediator) – as well as a second mediation session with Hon. Jones and continuous post-session discussions as the parties were negotiating and finalizing the long-form settlement agreement. [Dkt. 89-1 at ECF 23:22-24:17]; [Dkt. 89-2 at ¶9]. This supports the conclusion that the Settlement is fair and was achieved free of collusion. *In re Stable Rd. Acquisition Corp. Sec. Litig.,* 2024 U.S.Dist.LEXIS 237260, at *19.

---

[1] **(i)** Null and void StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **(ii)** Indemnification against StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **(iii)** 100% restitution of the value of any "repayments" made by PSCM [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D].

**C. Rule 23(e)(2)(C)(i) Has Been Established**

As shown in the moving papers, the Settlement is an excellent result for the Settlement Class in light of the benefits of the Settlement and the risks of continued litigation. [Dkt. 89-3 at ¶54].[2] The Settlement yields nearly identical results as a judgment at trial in favor of the PSCM. [Id.]. Class settlements under this prong are fair, reasonable and adequate when the Settlement produces a result that nearly mirrors a judgment at trial in favor of the PSCM without the additional costs, risks and delay of trial and appeal. *Alvarez v. City of Oxnard* (C.D.Cal. Mar. 20, 2023, No. CV 19-8044 PSG (JCx)) 2023 U.S.Dist.LEXIS 242920, at *13-14 (settlement which represents 67.8% of defendants reasonable damage exposure is a significant recovery); *citing Aarons v. BMW of N. Am.,* 2014 U.S. Dist. LEXIS 118442, 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members must "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation").

Notably, this Court rejected Defendants' argument that there was no possibility of future enforcement of any and all payment obligations under the StaRN Promissory Note and/or StaRN Program Agreement because of letters sent in October 2023, instead determining that Defendants' letters "do[] not appear to release all obligations under the Promissory Note, [and] the Court cannot conclude that it is absolutely clear that Defendants will not resume sending collection letters.

---

[2] **(i)** Null and void StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **(ii)** Indemnification against StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **(iii)** 100% restitution of the value of any "repayments" made by PSCM [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D].

. .". *Rum v. HCA Healthcare, Inc.* (C.D.Cal. Jan. 23, 2024, No. CV 23-5142-JFW(BFMx)) 2024 U.S.Dist.LEXIS 54356, at *13-15.

This Settlement – specifically the Judgment by Consent – does indeed foreclose any future possible legal enforcement of any and all payment obligations under the StaRN Promissory Note and/or StaRN Program Agreement against the PSCM by establishing the StaRN Pay Obligations are null and void. [Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]. Specifically here:

- ¶38 providing that any and all repayment provisions for the value StaRN Program contained within StaRN Agreements and StaRN Promissory Notes are null and void, [Dkt. 89-3 at ECF pgs. 90-91];[3]
- ¶39 providing permanent enjoinment from asserting any and all actions against PSCM regarding repayment provisions in the StaRN Agreements and StaRN Promissory Notes by Defendants (as well as other related entities), [Dkt. 89-3 at ECF pgs. 91];[4]
- ¶40 providing the Parties' express intent that the Final Judgment by Consent is given preclusive effect against any and all past, current or future claims, [Dkt. 89-3 at ECF pgs. 91-92];
- ¶41 providing the Parties' express intent that the Final Judgment by Consent that any and all repayment provisions for the value StaRN Program contained within StaRN Agreements and StaRN Promissory Notes are null and void, [Dkt. 89-3 at ECF pgs. 92] (again including the comprehensive list of liabilities that includes interest, late charges

[3] The second sentence of Paragraph 83 expressly includes interest, late charges, collection costs, penalties, attorney's fees, and/or contractual payment obligations.

[4] Paragraph 39 includes a comprehensive list of potential of PSCM liabilities subject to the enjoinment.

collection costs, penalties, attorney's fees); and

- ¶42 providing the Parties' express intent that the Final Judgment by Consent is a complete and total defense against any and all claims for the comprehensive list of liabilities arising from the StaRN Promissory Notes and StaRN Program Agreements. [Dkt. 89-3 at ECF pgs. 92-93].

*See also* [Dkt. 89-3 at Ex. D].

Moreover, the Settlement provides indemnification by Defendants against StaRN Pay Obligations under any StaRN Program Agreement and/or StaRN Promissory Note. [Id. at ¶¶ 13, 57]; [Dkt. 89-3 at Ex. C ¶43 (ECF pgs. 93-94]; [89-3 at Ex. C [Proposed] Judgment ¶5 (ECF pg. 102-103)]; [Dkt. 89-3 at Ex. D]. And, 100% restitution of the value of any "repayment" PSCM made for the StaRN Pay Obligations equal to approximately $88,589.25. See [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D].

These significant results, nearly identical to a judgment on the merits at trial in favor of the PSCM, in exchange for the narrowly tailored release establish that the proposed Settlement is a reasonable compromise of the claims. *Cf. supra* and [Dkt. 89-3 at ¶27].

**D. The Settlement Satisfies Rule 23(e)(2)(C)(ii)-(iv)**

Each Rule 23(e)(2)(C)(ii)-(iv) factor supports the Settlement approval and do not suggest any basis for concluding that the Settlement is inadequate.

**1. Rule 23(e)(2)(C)(ii): Process and Distribution of Relief Effective**

The Settlement identifies Phoenix Class Action Administration Solutions ("PSA") as the Settlement Administrator, a well-established class action and PAGA action settlement administrator. [Dkt. 89-3 at ¶38]. The Settlement details an effective method for notice of the Settlement as well as notice of the Judgment. [Id. at ¶¶ 18; 19; 67; 77]. Again, here, given the high importance of the permanent injunctive and declaratory relief, notice of the Judgment is highly relevant and provided.

**2. Rule 23(e)(2)(C)(iii): Attorney Fee Provision**

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. *Perchlak v. Liddle & Liddle* (C.D.Cal. July 16, 2021, No. CV 19-9461-JFW(AFMx)) 2021 U.S.Dist.LEXIS 202230, at *21; *citing* Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Id.; citing Jones v. GN Netcom, Inc. (In re Bluetooth)* (9th Cir. 2011) 654 F.3d 935, 941.

**a) Fees Authorized by Labor Code §§2802 and 2802.1**

The award of attorney's fees in a class action settlement are often justified by a statutory fee-shift exception to the American Rule. *Id.; citing In re Bluetooth*, 654 F.3d at 941.

In this Settlement, attorney's fees and costs are authorized by (i) Labor Code §2802(c) for employees to enforce their rights granted by Labor Code §2802 and (ii) Labor Code §2802.1(d) which provides that a court shall award in any action brought pursuant to Labor Code §2802.1(d) a prevailing plaintiff(s) reasonable attorney's fees and costs.

**b) Fee Allocation Fair, Adequate and Reasonable**

Rule 23(e) requires "that a court must examine whether the attorneys' fees arrangement shortchanges the class. In other words, the new Rule 23(e) makes clear that court must balance the 'proposed award of attorney's fees' vis-a-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Perchlak,* 2021 U.S.Dist.LEXIS 202230, at *21-22; *citing Brinseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *see also* Rule 23(e)(2)(iii).[5]

The Settlement's attorney's fees arrangement does not shortchange the class.

---

[5] The Rule 23(e)(2)(C)(iii) fee analysis is distinct from the issue of whether the district court's awarded fees and costs are reasonable under the standards of 23(h). *Campbell v. Facebook, Inc.* (9th Cir. 2020) 951 F.3d 1106, 1125, fn. 14.

The assessment of a settlement's overall reasonableness vis-a-vie the allocation of attorney's fees seeks to ensure there was not a tradeoff between merits relief and the attorney's fees. *Campbell v. Facebook, Inc.* (9th Cir. 2020) 951 F.3d 1106, 1125; *citing Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)* (9th Cir. 2011) 654 F.3d 935, 946.

There is no evidence of, and there is no, tradeoff between merits relief and the attorney's fees allocation in this Settlement. As shown in the moving papers, and supra, the Settlement provides relief nearly identical to and on par with a trial judgment in favor of the PSCM:

> First, the StaRN Pay Obligations under any StaRN Program Agreement and/or StaRN Promissory Note are null and void. Second, indemnification by Defendants against StaRN Pay Obligations under any StaRN Program Agreement and/or StaRN Promissory Note via renewed or newly initiated collection efforts. Third, 100% restitution of the value of any "repayment" PSCM made for the StaRN Pay Obligations equal to approximately $88,589.25. See [Dkt. 89-3 at ¶54].[6]

Here, the Settlement's primary relief is non-monetary in the form of permanent injunctive and declaratory relief via the Judgment by Consent. The restitution relief is incidental to the primary injunctive and declaratory relief.[7]

---

[6] **<u>(i)</u>** Null and void StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **<u>(ii)</u>** Indemnification against StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **<u>(iii)</u>** 100% restitution of the value of any "repayments" made by PSCM [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D].

[7] The Judgment by Consent renders the StaRN Pay Obligations null and void and provides indemnification, accordingly, any prior "repayments" by PSCM are incidental to the permanent injunction and declaratory relief. *Lee v. Great Am. Life Ins. Co.* (C.D.Cal. 2024) 745 F. Supp. 3d 1006, 1022 (monetary damages are merely incidental to the primary claim for injunctive and declaratory relief for Rule

None of the *Bluetooth* warning signs weigh against approval of the Settlement. The "three 'subtle' warning signs that may indicate that class counsel colluded with defense counsel to settle the case in a manner that elevated class counsel's interests over those of the class, and that the settlement is therefore not 'fair, reasonable, and adequate' under Rule 23(e)(2)" are: "(1) when counsel receive a disproportionate distribution of the settlement, or the class gets no monetary distribution but class counsel are well compensated; (2) when the parties negotiate 'clear sailing' arrangements for the payment of attorney's fees wherein the defendant agrees not to object to the fee application presented to the court; and (3) when the agreement includes a 'reversion' or 'kicker' provision under which any reduction in attorney's fees reverts to the defendant rather than being added to the class fund. *Campbell,* 951 F.3d at 1125; *citing In re Bluetooth*, 654 F.3d 935, 947

**i. Proportionality Analysis Does Not Weigh Against Approval of the Settlement**

As to disproportionality, it can be difficult to put a dollar figure on the value of the non-monetary relief obtained through the Settlement for the Class and PSCM. *Campbell,* 951 F.3d at 1125. It is reasonable for the Court under this analysis to limit the disproportionality inquiry to (i) an evaluation of the lodestar calculation compared to the fee allocation and (ii) ascertaining whether or not the nonmonetary

---

23(b)(2) when a small percent of the class will receive monetary damages from the resulting declaratory and/or injunctive relief); *citing Farley v. Lincoln Ben. Life Co.* (E.D.Cal. Apr. 18, 2023) 2023 U.S.Dist.LEXIS 68482 (same conclusion where approximately 2% of class sought monetary damages); *see also Delarosa v. Boiron, Inc.* (C.D.Cal. 2011) 275 F.R.D. 582, 592-593 (restitution damages – actual damages – are merely incidental when the same does not require additional hearings to resolve the disparate merits of each individual's case, nor does it require the introduction of new substantial legal or factual issues, nor entail complex individualized determinations). In this case, only a small percentage of the class made "repayments" and thus will receive the restitution payments. [Dkt. 89-1 at ECF 21, Fn. 4 and ECF 18:19-20].

relief is qualitative and more context-specific. *Campbell,* 951 F.3d at 1125-1127. It is not a requirement "in a case where the class primarily receives non-monetary relief, but class counsel obtain millions of dollars," for the Court "to at least attempt to approximate the value of injunctive relief and use that valuation in an assessment of disproportionality" so long as the Court (i) evaluates the lodestar calculation compared to the fee allocation and (ii) ascertains whether or not the nonmonetary relief is qualitative and more context-specific. *Id.*

Here, Class Counsel's relevant lodestar as of the moving papers for preliminary approval was near the $620,000.00 fee allocation with a slight multiplier of 1.18. [Dkt. 89-1 at ECF 27:10-24]. The lodestar method is appropriate to assess the reasonableness when valuing the settlement is difficult or impossible. *Garcia v. Harborstone Credit Union* (W.D.Wash. Nov. 9, 2023, No. 3:21-cv-05148-LK) 2023 U.S.Dist.LEXIS 201873, at *24; *citing Juarez v. Soc. Fin., Inc.* (N.D.Cal. June 8, 2023, No. 20-cv-03386-HSG) 2023 U.S.Dist.LEXIS 100118 (awarding $300,000 in attorney's fees and costs with a total of $155,000 distributed to class members the attorney's fees were reasonable under the lodestar method).

Further, the Settlement's qualitative value of the nonmonetary relief is significant. *See supra.* The Settlement eviscerates any possible legal enforcement of any and all of the StaRN Payment Obligations against the PSCM – including but not limited to interests, late fees, collection costs, attorney fees, etc. *Compare* [Dkt. 89-3 at ¶54];[8] *Rum,* 2024 U.S.Dist.LEXIS 54356, at *14-15. That is, any previously

---

[8] **(i)** Null and void StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **(ii)** Indemnification against StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **(iii)** 100% restitution of the value of any "repayments" made by PSCM [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D].

owed obligations to pay interest, late fees, collection costs, attorney's fees, etc. which appear to be owed under the plaintiff language of the StaRN Promissory Note are now null and void.

The Settlement also deters future collection efforts and provides the remedy that Defendants will provide future indemnity to the PSCM if any such future collection efforts are initiated after February 2, 2024 and incurred after Indemnification Notice.[9] *Cf.* [Id.]; *Rum,* 2024 U.S.Dist.LEXIS 54356, at *15. To this end, even if the PSCM does not initiate the indemnification rights under the Settlement, the PSCM will have notice of the Judgment by Consent that expressly provides a complete and conclusive defense against any such future collection efforts. [Dkt. 89-3 at Ex. C, ¶¶ 38-42].

The Settlement's Indemnification of PSCM is robust even though it does not cover Indemnification Costs prior to February 2, 2024 and the Indemnification Notice as it is highlighted that the Settlement (i) renders any StaRN Pay Obligations null and void; (ii) provides 100% reimbursement for any payments already made by PSCM in response to the StaRN Payment Obligations; and (iii) limits the Participating Settlement Class Members Released Claims to the Settlement Class Period of April 19, 2019 to February 1, 2024. *See* {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt.

---

[9] To obtain "Indemnification of PSCM" the PSCM must provide Indemnification Notice to Defendants. [Dkt. 89-3 at ¶¶ 13, 57]. Under the Settlement, there is no indemnification or reimbursement obligations for any Indemnification Costs that a PSCM incurs on or after February 2, 2024 and prior to providing the written Indemnification Notice. [Id.]. At the same time, PSCM are not releasing any claims starting on or after February 2, 2024 as the Participating Settlement Class Members Released Claims only covers the Settlement Class Period of April 19, 2019 to February 1, 2024. [Dkt. 89-3 at ¶¶ 27, 58]. An untimely Indemnification Notice waives contractual indemnification by Defendants of costs and expenses, reasonable attorney's fees and expert witness fess for services <u>not provided by or through</u> Defendants in response to the collection efforts incurred on or after February 2, 2024. [Id.].

89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; {[Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D]}; [Dkt. 89-3 at ¶¶ 27, 58].

The same applies even though the Settlement does not provide for Indemnification Costs incurred on or after February 2, 2024 and prior to the Indemnification Notice as the Participating Settlement Class Members Released Claims only covers the Settlement Class Period of April 19, 2019 to February 1, 2024. [Dkt. 89-3 at ¶¶ 27, 58]. Accordingly, PSCM could still pursue an action for indemnification of injuries incurred on or after February 2, 2024 as such claims are not released by the Settlement.

It is difficult to put a dollar figure on this value of the nonmonetary relief obtained by the Settlement Class and the PSCM, however it is clear that the qualitative value and context-specific value of this permanent injunctive and declaratory relief is significant as it vindicates the Labor Code §§2802, 2802.1 and 2804 interests of the Settlement Class and PSCM for the Settlement Class Period. *See Campbell,* 951 F.3d at 1125 (disproportionality analysis reasonable when District Court explained that it was difficult to put a dollar figure on the value of the non-monetary relief and the same vindicated the privacy interests of the class).

The disproportionality analysis further supports approval of the Settlement as further litigation would not result in substantial monetary relief to the Settlement Class outside of what is provided in the Settlement – i.e. each PSCM, who made StaRN Payments, will receive a StaRN Reimbursement Payment equal to 100% of the value of the PSCM's StaRN Payments from the StaRN Payment Allocation, which in total is approximately $88,589.25. [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D].

"When further litigation may result in substantial monetary relief to class members, the failure to include meaningful monetary relief in a settlement might be

(but is not necessarily) a subtle sign that class counsel bargained away something valuable to benefit themselves." *Campbell,* 951 F.3d at 1126. "In such settlements, in order to show that nothing was unfairly bargained away by counsel, it may be necessary for settling parties to show why their nonmonetary settlement is at least as good for the class as any monetary figure that would approximate what they could expect from further litigation." *Id.*

Here, the Settlement contains a 100% reimbursement of prior StaRN Payments by the PSCM – that is meaningful monetary relief as the PSCM are being made whole on prior payments. The only other reasonably possible monetary figure not covered by the Settlement would be a Settlement Class Member's attorney's fees and litigation costs incurred prior to February 1, 2024 in defense to collection efforts made against the Settlement Class Member for the StaRN Pay Obligations. This possible monetary injury has not been unfairly bargained away as: (i) the Settlement releases Defendants' collection costs and attorney's fees associated with the StaRN Pay Obligations; (ii) this is an opt-out Settlement, any individual Settlement Class Member who incurred such attorney's fees and litigation costs for which he/she does not want to release such a claim for indemnification against Defendants may opt-out and pursue the same; and (iii) the remainder of the nonmonetary Settlement (as shown supra) significantly outweighs the possible attorney's fees and litigation costs incurred by Settlement Class Members on or prior to February 1, 2024 related to the StaRN Pay Obligations. Simply put, Class Counsel has not, at the eleventh hour after litigating the case through hotly contested class certification motion and precertification motions abandoned the interest of the class in favor of their own.

Further, as shown in the moving papers a reasonable value of the injunctive and declaratory relief is $2,832,000.00 (i.e. approx. $2,000.00 per class member, with a class size of 1,416). [Dkt. 89-1 at ECF 27:3-9]. In addition, the restitution value is estimated at approximately $88,589.25. And, an estimated 3% interest

value of the injunctive relief, as identified in the StaRN Promissory Note, is $339,840.00. This derives from a 3% per annum interest on $4,000.00 for one year (approximately $120.00) and a 3% per annum interest on $2,000.00 of unpaid "value of the program" for two years (approximately $120.00) – multiplying the $240.00 by 1,416 equals $339,840.00. [Dkt. 42-13 at ECF p. 3]. An estimated 10% "late charge" of the $2,000.00 owed face value of the program would be an additional $283,200.00 ($200 * 1,416). [Dkt. 42-13 at ECF p. 4]. Collectively, these values sum $3,543,629.25. The $620,000.00 Settlement's attorney fee allocation is far less than 25% of this value.[10] The proportionality analysis does not weigh against approval of the Settlement.

**ii. "Clear Sailing" Warning Sign Does Not Weigh Against Approval of the Settlement**

The inclusion of Defendants' non-opposition for attorney's fees up to $620,000.00 does not weigh against approval of the Settlement under the circumstances of this case. "The concern with a 'clear sailing' arrangement is that class counsel may have obtained too little for the class 'in exchange for red-carpet treatment on fees.'" *Campbell,* 951 F.3d at 1127; *citing Bluetooth*, 654 F.3d at 947 (quoting *Weinberger v. Great N. NekoosaCorp.*, 925 F.2d 518, 524 (1st Cir. 1991)). No one factor is dispositive. *Id.*

The relevant inquiry here is whether there is evidence that the class would have gotten meaningfully more injunctive or declaratory relief if the defendant(s) had merely been permitted to oppose class counsel's fee application. *Id.*

No such evidence exists to establish that a significantly better outcome would have been achieved had Defendants merely been permitted the opportunity to oppose Class Counsel's fee application for the allocated amount of $620,00.00.

[10] The estimated value of the injunctive and declaratory relief does not take into account any costs incurred by Defendants for collections efforts, or attorney's fees related to the same, that are rendered null and void by the Settlement.

*Toomey v. Arizona* (D.Ariz. Sep. 28, 2023, No. CV-19-00035-TUC-RM (MAA)) 2023 U.S.Dist.LEXIS 175069, at *17-18; *citing Campbell,* 951 F.3d at 1127; *Garcia,* 2023 U.S.Dist.LEXIS 201873, at *24) (using lodestar method to evaluate the fee request further negates a finding that the clear sailing provisions weighs against approval).

The Settlement, including the Class Counsel fee provisions, is the result of months of extensive, good faith and arm's length negotiations between counsel and including the assistance of the Hon. Ann I. Jones an experienced wage and hour retired judge (from the Los Angeles Superior Court Complex Civil Litigation Program) and mediator through two sessions. [Dkt. 89-1 at ECF 23:23-24:17]; *See Perchlak,* 2021 U.S.Dist.LEXIS 202230, at *23-24. Class Counsel will justify the fee award based on the lodestar analysis, which as of May 28, 2025 was in line with the allocation based on a minimal 1.18 multiplier. [Dkt. 89-1 at ECF 27:10-24]. Moreover, the injunctive, declaratory and restitution relief in this case is on par with a trial judgment in favor of Plaintiff and the PSCM. [Dkt. 89-3 at ¶54].[11].

The "clear sailing" analysis does not weigh against approval of the Settlement.

**iii. Reversion Analysis Does Not Weigh Against Approval**

The Settlement is almost exclusively an injunctive-relief-only class settlement as there is no reasonable "class fund" as the restitution reimbursements

[11] **(i)** Null and void StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **(ii)** Indemnification against StaRN Pay Obligations {[Dkt. 89-3 at ¶¶ 55, 43-48]; [Dkt. 89-3 at Ex. C ¶¶ 38, 39, 40, 41, 42 (ECF pgs. 90-93)]; [89-3 at Ex. C [Proposed] Judgment ¶4 (ECF pg. 101)]; [Dkt. 89-3 at Ex. D]}; **(iii)** 100% restitution of the value of any "repayments" made by PSCM [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D].

are made at 100% of the value of PSCM StaRN Payments. [Dkt. 89-3 at ¶¶ 15, 56]; [Dkt. 89-3 at Ex. C [Proposed] Judgment ¶6 (ECF pg. 103)]; [Dkt. 89-3 at Ex. D]. Under the Settlement, the value of PSCM's restitution reimbursement does not fluctuate based on the amount of fees paid to Class Counsel as PSCM will receive 100% value of any StaRN Payments made by the PSCM regardless of the value of the Class Counsel fee award. There is no reversion issue when there is no class fund into which any fees not awarded by the court could possibly revert. *Campbell,* 951 F.3d at 1127. The reversion analysis does not weigh against approval of the Settlement.

The attorney fee review under Rule 23(e)(2)(C)(iii) demonstrates that the proposed Settlement is fair, adequate and reasonable.

**3. Rule 23(e)(2)(C)(iii): Identifiable Agreements**

As noted in the moving papers, the proposed Settlement Agreement is the entire proposed Settlement Agreement for the class claims at-issue in this case.

**E. Rule 23(e)(2)(D) Has Been Established**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. This Settlement easily satisfies that standard. All PSCM obtain the permanent injunctive and declaratory relief. Next, the restitution reimbursement payments are narrowly tailored to those PSCM who made payments and provides a StaRN Reimbursement Payment equal to 100% of the value of the PSCM's StaRN Payments. This factor favors preliminary approval.

**F. Rule 23(e)(5) Satisfied**

Not only does the Settlement provide the opportunity to be excluded it also provides that any PSCM may object to the same. [Dkt. 89-3 at ¶¶ 69, 70].

Accordingly, as shown in the moving papers, under Rule 23(e) the Settlement is fair, adequate and reasonable requiring preliminary approval of the same.

///

///

## III. PLAINTIFF'S MOTION SHOULD BE GRANTED, THE PAGA SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The PAGA Settlement provides fair, reasonable and adequate in light of PAGA's policies and purposes. PAGA requires court approval of a proposed settlement, with concurrent notice of that request and the terms of the settlement provided to the LWDA. Labor Code §2699(s)(2). There is no preliminary or final approval process for a PAGA settlement. "[N]either the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer as to what the appropriate standard is for approval of a PAGA settlement." *Trujillo v. Airport Terminal Servs., Inc.* (C.D. Cal. Oct. 21, 2021) 2021 U.S.Dist.LEXIS 203569, at *3-4 [Citations and quotations omitted].

In commenting on a proposed PAGA settlement, the LWDA has offered only this guidance:

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA.

*Id.* [Citations omitted]. Thus, district courts typically ask whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. *Id.*

Unlike a proposed class settlement, the PAGA statute does not outline a two-step process for a proposed PAGA settlement review – likely because there is no opt-out provision for PAGA settlements. *See Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 483. Plaintiff's final approval motion will seek approval of the PAGA Settlement. However, this Reply provides further support of the PAGA Settlement vis-a-vie the Court's overall preliminary review of the entire

Settlement.

**A. Notice Provided to the LWDA**

On May 30, 2025, Plaintiff provided notice to the Labor Workforce Development Agency ("LWDA") of the Settlement as well as Plaintiff's Motion for Preliminary Approval and the Joint Stipulation to File Second Amended Complaint. (Decl. Hatcher at Ex. 3). On June 10, 2025, in response to the LWDA's request, Plaintiff uploaded the First Amended Complaint to the LWDA. (Id.). In response, Plaintiff uploaded a copy of the Court's Order re Joint Stipulation to File Second Amended Complaint – Docket 91. (Id.).

**B. PAGA Settlement is Genuine and Meaningful**

Based on Defendants representations, the final PAGA Employee – i.e. aggrieved employees – count is approximately 976. This yields an estimated exposure of approximately $97,600.00 for PAGA civil penalties by applying the default $100.00 PAGA civil penalty (Labor Code §2699(f)(2)(A)) for each PAGA Employee based on the alleged violation of entering the StaRN Promissory Note and/or StaRN Program Agreement that failed to indemnify each PAGA Employee.

Accordingly, the $20,000.00 PAGA Payment – with 75% to the LWDA and 25% to the PAGA Employees – is approximately 20.5% of the estimated exposure.[12] The PAGA Released Claims is narrowly tailored to the alleged Labor Code §§ 2802, 2802.1, and 2804 violations alleged in the Second Amended Complaint and in the LWDA Notice. [Dkt. 89-3 at 25]; [Dkt. 89-4]; [Dkt. 89-3 at Ex. B].[13]

As shown in the moving papers, the Settlement herein was reached after

---

[12] This civil action was brough prior to June 19, 2024 so the percentage allocation for the PAGA Payment are provided for under the PAGA statute prior to the amendment effective June 19, 2024. Labor Code §2699(v)(1) and (2).

[13] The proposed PAGA Settlement does not release any of the non-Labor Code §§ 2802, 2802.1, and 2804 claims identified against Defendant Los Robles Regional Medical Center in Plaintiff's LWDA notice. Nor does this action put those claims at-issue.

extensive litigation and discovery of the Labor Code §§2802, 2802.1 and 2804 allegations and after participating in a mediation with an experienced retired judge (from the Los Angeles Superior Court Complex Civil Litigation Program and mediator) – as well as a second session as the parties were negotiating and finalizing the long-form settlement agreement. [Dkt. 89-1 at ECF 23:22-24:17]. Thus, the Settlement was the product of arm's length negotiations between parties who were well informed on the issues and the facts of the case. *Trujillo,* 2021 U.S.Dist.LEXIS 203569, at *5.

The amount of the PAGA Settlement is reasonable in light of the damages at-issue and potential defenses that could potentially bar or limit recovery of civil penalties in this act. In addition to the showing in the moving papers, potential defenses against the PAGA civil penalty damages is a reduction in the value of the civil penalty pursuant to Labor Code §2699(e)(2). The amount of the PAGA Settlement is reasonable in light of the damages at issue and potential defenses against the same. *Trujillo,* 2021 U.S.Dist.LEXIS 203569, at *5.

Finally, there is no evidence that the settlement is contrary to the purposes and policies of PAGA or of the state of California. *Id.* Courts will approve a PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. *Jordan v. NCI Grp., Inc.*, No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018). The proposed PAGA Settlement meets these standards. "Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action." *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 81 (2020).

The PAGA Settlement strikes a balance between the interest of all the parties, including the LWDA and general public, while penalizing the employers and providing relief to the PAGA Employees – i.e. the aggrieved employees.

## IV. <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court grant preliminary approval of the

proposed settlement and enter the proposed Preliminary Approval Order, set the hearing for the final approval motions for October 13, 2025, and for such additional relief as this Court should deem proper.

Date: June 16, 2025

Respectfully submitted,
**THE MYERS LAW GROUP, A.P.C.**

By: /s/Jason Hatcher

David P. Myers,
Jason Hatcher,
Andriana N. Bravo,
Attorneys for Plaintiff and all others similarly situated